UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| _____ | * | |
| BRANDON COOPER, LOUIS | * | |
| DAVENPORT, RON GATLIN, KENNY | * | |
| SWATT, STEPHEN ZERINGUE, and | * | |
| WILLIAM PITZER, | * | |
| on behalf of themselves and all other | * | |
| similarly situated individuals, | * | |
| | * | |
| | * | |
| PLAINTIFFS | * | CIVIL ACTION NO._____ |
| | * | |
| VS. | * | |
| | * | SECTION _____ |
| KATHY KLIEBERT, Secretary of the | * | |
| Louisiana Department of Health and | * | |
| Hospitals, in her official capacity; and the | * | |
| LOUISIANA DEPARTMENT OF | * | JUDGE_____ |
| HEALTH AND HOSPITALS, | * | |
| | * | |
| | * | MAGISTRATE JUDGE_____ |
| | * | |
| DEFENDANTS | * | |
| _____ | * | |

## CLASS ACTION COMPLAINT

### I.    INTRODUCTION

1.    Plaintiffs, Brandon Cooper, Louis Davenport, Ron Gatlin, Kenny Swatt, Stephen Zeringue, and William Pitzer are individuals who have been diagnosed with mental illness and found Not Guilty by Reason of Insanity (NGRI) of a criminal offense but, despite that finding, continue to be incarcerated in correctional facilities in Louisiana. They bring this civil rights action under 42 U.S.C. § 1983 and federal statutes barring discrimination on the basis of disability, on behalf of themselves and all other similarly-situated persons. Plaintiffs seek a declaratory judgment and injunctive relief to enjoin Defendants' policies, practices, and procedures, executed under color of state law, which have caused them to be deprived of their

liberty due to their disabilities, and denied necessary mental health treatment. Plaintiffs and the class they represent contend that these policies, practices, and procedures violate their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

**II.    JURISDICTION**

2.    This Court has federal question jurisdiction under 28 U.S.C. §§1331 and 1343, in that this is an action arising under the Fourteenth Amendment to the United States Constitution, Section 504, and the ADA.

3.    Venue is appropriate in this court under 28 U.S.C. §1391(b)(2) because the Defendants reside in this district.

**III.    PARTIES**

4.    Plaintiff BRANDON COOPER is a 34-year old man with mental illness. On February 14, 2014, the St. Tammany Parish District Court found Mr. Cooper not guilty by reason of insanity for two counts of unauthorized use of a motor vehicle, and committed him to Eastern Louisiana Mental Health System ("ELMHS"), which is a state mental health facility in Jackson, Louisiana. Mr. Cooper has been continuously incarcerated in the St. Tammany Parish Jail since the date of that finding. No other criminal charges have been filed against him.

5.    Plaintiff LOUIS DAVENPORT is a 25-year old man old with mental illness. On April 23, 2014, the Jefferson Parish District Court found Mr. Davenport not guilty by reason of insanity for one count of battery on a correctional facility employee, and committed him to ELMHS. Mr. Davenport has been continuously incarcerated in the Jefferson Parish Correctional Center since the date of that finding. No other criminal charges have been filed against him.

6.     Plaintiff RON GATLIN is a 25-year old man with mental illness. On March 19, 2014, the Jefferson Parish District Court found Mr. Gatlin not guilty by reason of insanity for one count of obscenity, and committed him to ELMHS. Mr. Gatlin has been continuously incarcerated in the Jefferson Parish Correctional Center since the date of that finding.  No other criminal charges have been filed against him.

7.     Plaintiff KENNY SWATT is a 25-year old man with mental illness. On April 23, 2014, the Jefferson Parish District Court found Mr. Swatt not guilty by reason of insanity for one count of aggravated battery, and committed him to ELMHS. Mr. Swatt has been continuously incarcerated in the Jefferson Parish Correctional Center since the date of that finding.  No other criminal charges have been filed against him.

8.     Plaintiff STEPHEN ZERINGUE is a 31-year old man with mental illness. On March 19, 2014, the Jefferson Parish District Court found him not guilty by reason of insanity for one count of aggravated arson, and committed him to ELMHS. Mr. Zeringue has been continuously incarcerated in the Jefferson Parish Correctional Center since the date of that finding. No other criminal charges have been filed against him.

9.     Plaintiff WILLIAM PITZER is a 57-year old man with mental illness. On April 16, 2014, the Jefferson Parish District Court found him not guilty by reason of insanity for two counts of auto theft and one count of theft, and committed him to ELMHS.  Mr. Pitzer has been continuously incarcerated in the Jefferson Parish Correctional Center since the date of that finding. No other criminal charges have been filed against him.

10.     Defendant KATHY KLIEBERT is the Secretary of the Louisiana Department of Health and Hospitals ("DHH").  Pursuant to La. R.S. 36:254, she is responsible for the oversight, supervision and control of DHH and its divisions and is ultimately responsible for ensuring that DHH's services for people with disabilities are provided in conformance with federal law. The

3

Community Forensic Coordinators program, which monitors and provides services to persons found NGRI, is located within her Department. She is being sued in her official capacity only.

11.    Defendant, LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS (DHH) is the state agency that operates Eastern Louisiana Mental Health System (ELMHS). ELMHS maintains a waiting list for the services it provides to persons with mental illness who have been ordered to ELMHS to receive mental health treatment. DHH receives federal financial assistance and is a public entity as defined by 42 U.S.C. § 12131(1) (B).

### IV.    CLASS ACTION ALLEGATIONS

12.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) on behalf of themselves and all others similarly situated. The class consists of all persons in Louisiana who are being, or who may be in the future, incarcerated in Louisiana correctional facilities after a finding of NGRI and their commitment to a mental health facility pursuant to La. Code Crim. P. art. 657.

13.    The number of persons in the class is so numerous and in such fluctuation that joinder of all of them is impractical. There are scores of individuals throughout the state of Louisiana who have been or will be found NGRI and committed to a mental health facility, but who remain or will remain incarcerated in a parish jail, often for months at a time.

14.    The questions of law and fact raised in this case are common to both the named Plaintiffs and the class as defined above. These common questions of law and fact include whether it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is unlawful discrimination on the basis of disability to incarcerate individuals after a finding of NGRI and an order that they be committed to a mental health facility, pursuant to La. Code Crim. P. art. 657, even though no other criminal charges have been filed against them.

4

15.     The claims of the Plaintiffs are typical of the claims of the proposed class. As with Plaintiffs, the class of individuals they represent have been or will be found NGRI but nevertheless remain incarcerated in parish jails, even though no other criminal charges have been filed against them.

16.     Plaintiffs will fairly and adequately represent the interests of the class, have no interests that are antagonistic to the class, and seek relief that will benefit all members of the class. Plaintiffs are represented by counsel experienced in the prosecution of class actions.

17.     The Defendants have acted and refused to act on grounds generally applicable to the class, making injunctive and declaratory relief appropriate for the class as a whole.

## V.     STATUTORY SCHEME

18.     La. R.S. 14:14 states that an individual charged with a criminal offense is exempt from criminal responsibility for his behavior when "the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question."

19.     La. R.S. 28:2(20) defines a mentally ill person as "any person with a psychiatric disorder which has substantial adverse effects on his ability to function and who requires care and treatment."

20.     When the defendant enters a plea of not guilty and NGRI, the court may appoint a Sanity Commission, as provided in La. Code Crim. P. art. 644, to examine the defendant to determine whether he or she was "insane" at the time of the offense. La. Code Crim. P. arts. 650–652.

21.     A finding of NGRI means that the defendant has committed the acts that constitute the crime; however, the defense has proven by a preponderance of the evidence that

the defendant was insane at the time the acts were committed and thus cannot be held legally responsible. La. Code Crim. P. art. 651.

22.    La. Code Crim. P. art. 654 provides that if the defendant is found not guilty by reason of insanity in a non-capital case, the court shall remand him to the parish jail or to a private mental institution approved by the court and promptly hold a hearing to determine whether the defendant can be released. When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a state or private mental institution for care, custody, and treatment.

23.    Under the United State Constitution, an insanity acquittee's liberty may be curtailed only upon a finding that he is both dangerous and mentally ill. However, implicit in the NGRI acquittal is a finding that the defendant is mentally ill. Therefore, at the initial hearing following an NGRI finding, the only issue before the court in determining whether the acquittee should be released or committed, is whether the acquittee is dangerous.

24.    Under Louisiana's statutory scheme, after a contradictory hearing, and considering the Sanity Commission's findings, the court may order the individual's release, place him on conditional release, or commit him. La. Code Crim. P. art. 657.1.

25.    If the court determines that the defendant cannot be released without danger to himself or others, the court shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. La. Code Crim. P. art. 654.

26.    Even if a defendant has been committed under La. Code Crim. P. art. 654, as a result of having been found dangerous and presumed mentally ill based on the finding of NGRI, the acquittee may later apply for discharge or conditional release.

27.     The insanity acquittee or the superintendent of the facility in which he or she is being held may petition the review panel for discharge, which can recommend to the court that the person be discharged conditionally or unconditionally or placed on conditional release, after finding that the acquittee is not a danger to himself or others or is no longer mentally ill.

VI.     **STATEMENT OF FACTS**

a.      **Plaintiff Brandon Cooper**

28.     Mr. Cooper has been diagnosed with schizophrenia and was first hospitalized for mental health problems when he was a teenager. He currently receives a monthly injection of the psychotropic medication Haldol.

29.     On or about December 12, 2012, Mr. Cooper was arrested and placed in the St. Tammany Parish Jail for two counts of unauthorized use of a motor vehicle.

30.     On April 8, 2013, Mr. Cooper's public defender filed an application with the St. Tammany Parish District Court to determine Mr. Cooper's present mental health condition, and his mental health condition at the time of the alleged offense. Mr. Cooper's public defender advised the court that he had good reason to believe that Mr. Cooper was not of sound mind and understanding and was currently insane and insane at the time of the alleged offense; and that Mr. Cooper was "mentally defective or deficient" and unable to understand his criminal proceedings. Mr. Cooper's public defender asked the court to appoint two physicians to examine Mr. Cooper with regard to his mental condition.

31.     On May 9, 2013, the circuit court appointed two physicians to examine Mr. Cooper, and scheduled a hearing for June 27, 2013 to determine Mr. Cooper's present mental condition, and his mental condition at the time of the alleged offenses.

32.     On February 14, 2014, the circuit court adjudicated Mr. Cooper NGRI and ordered him committed to ELMHS. However, as of today's date, Mr. Cooper remains in the St.

Tammany Parish Jail where his mental health treatment is limited to monthly injections of Haldol.

**b.     Plaintiff Louis Davenport**

33.     Mr. Davenport has been diagnosed with Schizoaffective Disorder, Bipolar Type, and has been hospitalized for mental health treatment on several occasions.

34.     In late 2012 or early 2013, Mr. Davenport was transferred to the Jefferson Parish Correctional Center from the Orleans Parish Prison for allegedly forfeiting a bond issued to him by the Jefferson Parish District Court in 2007. On or about March 19, 2013, while suffering from untreated psychosis, Mr. Davenport was accused of committing a battery upon a Jefferson Parish correctional officer who tried to escort Mr. Davenport out of the jail infirmary.

35.     On or about March 22, 2013, Mr. Davenport was transported to ELMHS for a competency evaluation, at which time the Department of Health and Hospitals reported that Mr. Davenport was in a "floridly psychotic state" and had a "significant psychosis and mood disturbance." It took the doctors at ELMHS five months to stabilize Mr. Davenport through medication.

36.     On or about September 19, 2013, Mr. Davenport's public defender filed a Motion for Mental Examination with the Jefferson Parish District Court to request that the court appoint physicians to evaluate Mr. Davenport to determine if he was insane at the time of his alleged offense. The district court ordered a sanity evaluation that same day.

37.     On April 23, 2014, the district court adjudicated Mr. Davenport NGRI and committed him to ELMHS. However, as of today's date, Mr. Davenport remains in the Jefferson Parish Correctional Center where his mental health treatment is limited to receiving his daily psychotropic medications.

**c.     Plaintiff Ron Gatlin**

38.     Mr. Gatlin has a history of mental illness dating back to his childhood. On or about July 15, 2013, Mr. Gatlin was charged with one count of obscenity for an incident that occurred in the Kenner City Jail. Although Mr. Gatlin had been hospitalized for mental health problems just a few months prior to this offense, he was not receiving any medication or treatment at the time that he was charged with obscenity.

39.     On or about December 17, 2013, Mr. Gatlin's public defender filed a motion with the Jefferson Parish District Court requesting the appointment of a sanity commission to determine whether Mr. Gatlin was insane at the time of the alleged obscenity offense.

40.     On March 19, 2014, the district court adjudicated Mr. Gatlin not guilty by reason of insanity and committed him to ELMHS. However, as of today's date, Mr. Gatlin remains in the Jefferson Parish Correctional Center where his mental health treatment is limited to his daily psychotropic medications.

        **d.     Plaintiff Kenny Swatt**

41.     On or about July 1, 2013, Mr. Swatt was arrested for one count of aggravated battery and placed in the Jefferson Parish Correctional Center, where he started to receive treatment for bipolar disorder and schizophrenia.

42.     On or about September 10, 2013, Mr. Swatt's public defender filed a motion with the Jefferson Parish District Court requesting the appointment of a sanity commission to determine whether Mr. Swatt was insane at the time of the alleged offense. The district court appointed a sanity commission on September 11, 2013, and ordered the commission to report its findings to the court by November 13, 2013.

43.     On April 23, 2014, the district court adjudicated Mr. Swatt not guilty by reason of insanity for one count of aggravated battery and committed him to ELMHS. However, as of today's date, Mr. Swatt remains incarcerated in the Jefferson Parish Correctional Center where

his mental health treatment is limited to receiving the medication Haldol. Due to the lack of treatment, Mr. Swatt spends nearly all of his time sleeping and worries that his condition is deteriorating in jail.

**e.    Plaintiff Stephen Zeringue**

44.    Mr. Zeringue has a lengthy history of mental health problems and psychiatric treatment dating back to his childhood. On or about January 4, 2013, Mr. Zeringue was arrested for one count of aggravated arson and placed in the Jefferson Parish Correctional Center.

45.    On or about March 27, 2013, Mr. Zeringue was found incompetent to stand trial, and was remanded to ELMHS to be restored to competency. Mr. Zeringue remained at ELMHS for over five months, and was eventually returned to the Jefferson Parish Correctional Center around September 19, 2013.

46.    On November 19, 2014, Mr. Zeringue's public defender filed a motion with the Jefferson Parish District Court to request the appointment of a sanity commission to determine whether Mr. Zeringue was insane at the time of the alleged offense. The district court appointed a sanity commission that same day, and ordered the physicians to report their findings to the court on January 8, 2014.

47.    On March 19, 2014, the district court found Mr. Zeringue not guilty by reason of insanity and committed him to ELMHS. However, despite this order, Mr. Zeringue remains incarcerated in the Jefferson Parish Correctional Center where his treatment is limited to oral psychotropic medications.

**f.    Plaintiff William Pitzer**

48.    William Pitzer was arrested on or around February 28, 2012 for two counts of auto theft and one count of theft. He was initially deemed incompetent to stand trial, and was remanded to ELMHS on or around February 20, 2013 to be restored to competency. At the time

of his admission, the physicians at ELMHS described him as psychotic and delusional, and diagnosed him with delusional disorder.

49.    Mr. Pitzer returned to the Jefferson Parish Correctional Center at the end of June 2013, and on or about July 18, 2013, Mr. Pitzer's public defender filed a motion to request a sanity commission to determine whether Mr. Pitzer was insane at the time of the alleged offenses.

50.    On April 16, 2014, the Jefferson Parish District Court adjudicated Mr. Pitzer NGRI, and committed him to ELMHS. However, Mr. Pitzer remains incarcerated in the Jefferson Parish Correctional Center where his treatment is limited to oral psychotropic medications. Mr. Pitzer does not receive any visitors, and passes his time by sleeping through the day.

**g.    Defendants' Unconstitutional Policies and Practices**

51.    The primary purpose for incarcerating individuals in Louisiana correctional facilities is punishment and pre-trial detention. Such facilities do not have the capacity to provide the mental health treatment to individuals found NGRI.

52.    Defendant Kliebert's policies, practices, and procedures, including maintaining a waiting list for placement at ELMHS, cause scores of individuals to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGRI determination and their commitment to a mental health facility.

53.    Only persons with mental illness in Louisiana are intentionally subjected to punishment by incarceration in correctional facilities in the absence of pending criminal charges or a conviction of a criminal offense.

54.    Defendants, at all times relevant to this Complaint, have acted under color of state law.

55.    Defendants, at all times relevant to this Complaint, have acted and continue to act with deliberate indifference to Plaintiffs' liberty interests.

56.    Defendants intentionally discriminate against persons found NGRI on the basis of their mental illness by confining them, or causing them to be confined, in Louisiana correctional facilities where they are subjected to punishment and unable to access appropriate mental health services.

57.    Defendants, at all times relevant to this Complaint, knowingly and intentionally violated Plaintiffs' constitutional and federal statutory rights.

58.    As a direct and proximate result of the foregoing, Plaintiffs, and the class they represent, have suffered or are likely to suffer deprivation of their liberty by incarceration in correctional facilities, discrimination based on their disabilities, and significant irreparable damage to their mental health.

## VII.    CAUSES OF ACTION

### A.    VIOLATION OF SUBSTANTIVE DUE PROCESS

59.    Under the Due Process Clause to the United States Constitution, individuals who have not been properly charged with a crime or convicted may not be punished by incarceration in prison or jail. Jones v. United States, 463 U.S. 354, 369 (1983).

60.    "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

61.    For insanity acquittees, the purpose of commitment is to provide treatment of their mental illness in a manner that is not punitive, and to protect society from dangerous behavior that may result from that mental illness.

62.    For insanity acquittees, when either dangerousness or mental illness ceases to

exist, the State has no legitimate interest in commitment.

63.    Defendants' policies, practices, and procedures, which cause individuals with mental illness who have been found NGRI and committed to mental health facilities to instead be confined in correctional facilities, violate their rights under the Due Process Clause to the United States Constitution.

64.    As set forth in this Complaint, Defendants' policies, practices, and procedures of maintaining a waiting list for placement at ELMHS that causes Plaintiffs to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGRI determination and their commitment to a mental health facility, violate their rights under the Due Process Clause to the United States Constitution.

### B.    VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

65.    As qualified persons with disabilities, Plaintiffs are entitled to the protections and benefits of Title II of the Americans with Disabilities Act, which provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

66.    Regulations implementing the ADA prohibit a public entity from providing any aid, benefit, or service, directly or through contractual licensing, or other arrangements that (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service;  (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; and (iv) Provide different or

separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. 28 C.F.R. § 35.130(b)(1)(i-iv).

67.    The ADA's implementing regulations further provide that "a public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration: (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability…." 28 C.F.R. § 35.130(b)(3).

68.    As set forth in this Complaint, Defendants' policies, practices, and procedures of maintaining a waiting list for placement at ELMHS, which cause Plaintiffs to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGRI determination and their commitment to a mental health facility, violate Title II of the ADA.

### C.    VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

69.    Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . .." 29 U.S.C. § 794(a).

70.    Section 504's regulations also prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration ... (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap …." 45 C.F.R. § 84.4(b)(4); 28 C.F.R. § 41.51(b)(3)(I).

71.    As set forth in this Complaint, Defendants' policies, practices, and procedures of maintaining a waiting list for placement at ELMHS, which cause Plaintiffs to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGRI

14

determination and their commitment to a mental health facility, violate Section 504 of the Rehabilitation Act.

WHEREFORE, Plaintiffs and the class they represent pray for judgment against the Defendants as follows:

A.     Certify this action as a class action;

B.     Issue an order granting Plaintiffs and the class they represent permanent injunctive relief prohibiting Defendants from confining persons with disabilities in correctional facilities, following their commitment to a mental health facility;

C.     Issue a declaratory judgment that Defendants' policies, practices, and procedures of continuing to confine persons with disabilities in state correctional facilities, following their commitment to a mental health facility, violate Plaintiffs' rights under the Due Process Clause of the United States Constitution, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990;

D.     Award Plaintiffs' their reasonable attorneys' fees and costs;

E.     Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this _____ day of August 2014.


*/s/ Ronald K. Lospennato* _____
Ronald K. Lospennato, Bar No. 32191
Concepcion "Koki" Otero, Bar No. 29372
(Application for admission to the Middle District pending)
Advocacy Center
8325 Oak Street
New Orleans, LA 70118
504-208-4679
504-335-2890

15

rlospennato@advocacyla.org
kotero@advocacyla.org


_/s Katie M. Schwartzmann_
Katie M. Schwartzmann, Bar No. 30295
Vanessa Carroll (Pro Hac Vice Application
Pending)
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
katie.schwartzmann@macarthurjustice.org
vanessa.carroll@macarthurjustice.org