**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRANDON COOPER, LOUIS DAVENPORT, RON GATLIN, KENNY SWATT, STEPHEN ZERINGUE, and WILLIAM PITZER, on behalf of themselves and all other similarly situated individuals** | **CIVIL ACTION** |
| **VERSUS** | |
| **KATHY KLIEBERT, Secretary of the Louisiana Department of Health and Hospitals, in her official capacity; and the LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, STATE OF LOUISIANA** | **NO. 14-507-SDD-SCR** |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

**MAY IT PLEASE THE COURT:**

**NOW INTO COURT,** through undersigned counsel, come Defendants, **KATHY KLIEBERT ("KLIEBERT"),** Secretary of the Louisiana Department of Health and Hospitals, in her official capacity**;** and the **LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS, STATE OF LOUISIANA ("DHH"),** who respectfully request that the Plaintiffs' claims against them be dismissed pursuant to Fed. R. Civ. P. Rule 12(b)(1) and/or to Fed. R. Civ. P. Rule 12(b)(6) for the following reasons:

Plaintiffs filed a Class Action Complaint naming Kliebert and DHH as defendants. At all times herein, DHH opposes the certification of the class as improper and addresses this issue in its *Opposition to the Certification of the Class* filed herewith. DHH motions this court under such premise, namely, Plaintiffs' allegations relate solely to the six named Plaintiffs.

The Complaint in the above-captioned matter alleges that Defendants, Kliebert and DHH, have violated various provisions of federal law; however, as will be shown herein:

1.) Plaintiffs have failed to state a claim upon which relief can be granted. Each named plaintiff has been placed either within DHH's Eastern Louisiana Mental Health System or in the community; thus, the issue for which Plaintiffs' Complaint is based, namely that the named plaintiffs who have been adjudicated NGRI are being detained in jail while awaiting placement, is now moot.

2.) Kliebert and DHH are entitled to sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution.

3.) This Honorable Court lacks the requisite subject matter jurisdiction over the claims asserted against Defendants, Kliebert and DHH.

## I. BACKGROUND

Pursuant to LA C.Cr.Pr. Art. 654, insanity acquittees are either ordered to an inpatient facility or released to the community. Within the Office of Behavioral Health, Eastern Louisiana Mental Health System ("ELMHS"), Kliebert and DHH administer the Community Forensic Services ("CFS") program. District Forensic Coordinators ("DFC") employed through CFS provide jail-based services to all persons adjudicated NGRI while these individuals are on a waiting list for admission to an inpatient facility. In addition to providing jail-based services, CFS offers diversion assessments to those adjudicated NGRI whose committing offense/charged offense is not violent and no history of violence is known. Diversion is a service to determine those who can be safely placed within the community in lieu of hospitalization.

## II. STANDARDS OF REVIEW:

### A. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

A challenge to subject matter jurisdiction pursuant to Federal Rule of Civil Procedure Rule 12(b)(1) may be raised at any time, by any party, or by the court.[1] The burden lies with the party invoking the jurisdiction of the court; thus, Plaintiffs bear the burden of proof that jurisdiction exists.[2] A case will be dismissed under Rule 12(b)(1) if the court lacks statutory authority to hear and decide the dispute, i.e., there is no federal question at issue, the parties are not completely diverse,[3] or the amount in controversy does not exceed $75,000.00.[4] In federal question cases, the party must demonstrate a non-frivolous claim based on federal law.[5] Substantively, the pleader may aver jurisdiction, but the actual facts may contradict that averment and show that jurisdiction is absent and that the case must be dismissed.[6]

In evaluating whether subject matter jurisdiction exists, the court accepts all uncontroverted factual allegations as true.[7] The court views allegations as a whole. If a conclusory averment of subject matter jurisdiction is negated by other allegations in the pleading, the case may be dismissed.[8]

### B. FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

To survive a Federal Rule of Civil Procedure Rule 12(b)(6) motion to dismiss, the plaintiffs

---

[1] Thompson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673 (1942).
[2] City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 62 S.Ct. 15 (1941).
[3] St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 58 S.Ct. 586 (1938).
[4] 28 U.S.C. §1332; Neitzke, 490 U.S. at 327, n. 6, 109 S.Ct. at 1832.
[5] Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725 (1939); Ohio Nat'l Life Ins. Co. v. United States, 922 .2d 320 (6th Cir. 1990).
[6] Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683 (1974).
[7] Gibbs, 307 U.S. 66.
[8] See, e.g., Sopher v. Hoben, 195 F.3d 845, 853 (6th Cir. 1999), cert. denied, 530 U.S. 1262 (2000), citing Hardin v. Straub, 954 F. 2d 1193, 1199 (6th Cir. 1992) and Wells v. Brown, 891 F.2d 591, 592-594 (6th Cir. 1989).

must plead enough facts "to state a claim to relief that is plausible on its face."[9] A claim is facially plausible when the plaintiffs plead facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] The factual allegations must "raise a reasonable expectation that discovery will reveal evidence" of liability.[11] "A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff."[12] The court is not, however, bound to accept as true legal conclusions couched as factual allegations.[13] The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.[14] Where a complainant pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[15]

The tenet that a court must accept as true all the allegations contained within a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.[16] Federal Rules of Civil Procedure, Rule 8, marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.[17]

---

[9] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 127 S.Ct 1955, 550 U.S. 544, at 547 (2007)).
[10] Iqbal, 129 S.Ct. at 1949.
[11] Twombly, 550 U.S. at 556.
[12] Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).
[13] Iqbal, 129 S.Ct. at 149-50.
[14] Id.
[15] Twombly, at 557, 127 S.Ct. 1955.
[16] Twombly, 550 U.S. at 555.
[17] Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 -1950 (2009).

Furthermore, only a complaint that provides a plausible claim for relief survives a motion to dismiss.[18] Determining whether a complaint provides a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.[19] Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the pleader has alleged - but has not "show[n]" - "that the pleader is entitled to relief."[20]

## III. <u>LAW & ARGUMENT</u>

### A. THE NAMED PLAINTIFFS HAVE BEEN PLACED; THUS, THE ISSUE OF DETENTION IN JAIL IS MOOT.

Plaintiffs' Complaint sets forth allegations that individuals who have been adjudicated as NGRI are intentionally being detained in jails while awaiting a new placement, either in the community or within ELMHS.

Pursuant to the United States Constitution, Art. III, §2, cl.1, if Plaintiffs do not have a legally cognizable interest in the outcome of the case, it has become moot for federal jurisdictional purposes. In order for Plaintiffs to have a "cognizable legal interest" in the outcome of the case, sufficient to avoid a claim of mootness, Plaintiffs must demonstrate injury traceable to Defendants that is susceptible to some judicial remedy. U.S.C.A. Const. Art. 3, § 2, cl. 1. If the Plaintiffs do not have a legally cognizable interest in the outcome of the case, then it has become moot. *Department of Justice v. Federal Labor Relations Authority*, 991 F.2d 285 (5th Cir.1993) (citing *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 1950–51, 23 L.Ed.2d 491 (1969)).

---

[18] <u>Twombley</u>, 550 U.S. at 556.
[19] <u>Iqbal v. Hasty</u>, 490 F.3d, at 157-158. (2nd Cir. 2007).
[20] Fed. Rule Civ. P. 8(a)(2).

A case becomes moot when "intervening events make it impossible to grant the prevailing party effective relief." *Lemon v. Green*, 514 F.3d 1312, 1315 (D.C. Cir. 2008). If Plaintiffs' claims are moot, the Court must dismiss the case for lack of jurisdiction because its constitutional authority extends only to actual cases and controversies. *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983).

To satisfy the Article III case or controversy requirement, Plaintiffs must have suffered some actual injury that can be redressed by a favorable judicial decision. *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). The case at hand presents an issue that is no longer "live" and Plaintiffs lack a cognizable interest in the outcome. *Baccus v. Parrish*, 45 F.3d 958 (Tex., 1995).

Moreover, the mootness doctrine is "particularly applicable in cases where injunctive relief is sought" and "where the activities sought to be enjoined have already occurred, and the court cannot undo what has already been done." *Center for Marine Conservation v. Brown*, 917 F.Supp. 1128 (Tex., 1996). In the instant case, the named Plaintiffs were adjudicated NGRI, and pursuant to LA C.Cr.Pr. Art. 654, were determined to be a danger to self or others, and thus could not be released to the community as a result. At the time Plaintiffs' Complaint was filed, each was in jail awaiting placement either at ELMHS or possibly within the community if diversion could be accomplished by CFS. Each of the Plaintiffs has subsequently been placed, either at ELMHS or within the community, and are no longer in jail. Plaintiffs are seeking a permanent injunction prohibiting their detainment in jail. This issue has been rendered moot; therefore, Plaintiffs' Complaint does not state a claim for which relief can be granted.

**B. DHH OPERATES THE COMMUNITY FORENSIC SERVICES PROGRAM PURSUANT TO LAW: PLAINTIFFS WERE NOT INTENTIONALLY DISCRIMINATED AGAINST ON THE BASIS OF DISABILITY.**

**1. The Due Process Clause of the Fourteenth Amendment to the United States Constitution**

The Community Forensic Services program is administered by DHH, ELMHS. The program is operated in accordance with C.Cr.P. Art. 654 *et seq*. Pursuant to these provisions, insanity acquittees are held in the correctional facility until transferred to ELMHS or placed in the community. Louisiana Code of Criminal Procedure Art. 654 does not specify a time frame for which insanity acquittees are to be transferred to a mental institution. Defendants, Kliebert and DHH, have not discriminated against the plaintiffs based on their disability or for any other reason. Plaintiffs allege that DHH has violated their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, but fail to state with specificity what part of the Due Process Clause was violated and how DHH has violated the same.

In furtherance of their allegation, Plaintiffs cite two cases but neither case is representative of the facts presented in the instant case. In *Jones v. United States*, the issue presented to the court was whether the duration of the commitment of an insanity acquittee could be for a longer time period than what he might have served in prison had he been convicted.[21] The court held in the affirmative stating, "A criminal defendant established by a preponderance of the evidence that he was not guilty of a crime by reason of insanity, the due process clause permitted the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he had regained his sanity or was no longer a danger to himself or society, and he could be confined to a mental hospital for a period longer than he could have been incarcerated had he been convicted."[22]

---

[21] *Jones v. U.S.*, 463 U.S. 354, 369, 103 S.Ct. 3043 (1983).
[22] *Id* at 369.

The language cited by Plaintiffs from the *Jones* case is dicta relative to the term of a commitment of a NGRI acquittee. [23] The Plaintiffs in our case are insanity acquittees: they were properly charged with a crime; however, they were subsequently acquitted due to insanity. Because of their dangerousness, they were committed to DHH pursuant to C.Cr.Pr. Art 654. The fact that Plaintiffs were awaiting placement in a correctional facility does not mean DHH was intentionally punishing them. Plaintiffs received monitoring and treatment through CFS while in the correctional facility awaiting placement. Due to the efforts of the DFCs, some of the Plaintiffs were able to be diverted into the community in lieu of hospitalization, ultimately allowing them to be placed in a lesser restrictive setting. This certainly would not be considered an act of discrimination on the part of Kliebert and DHH, but rather, an effort to ensure that Plaintiffs received the best placement available.

Plaintiffs also rely on *Jackson v. Indiana*, and cite, "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed,"[24] In the *Jackson* case, the court was presented with the issue of whether the petitioner would be deprived of substantial rights to which he would have been entitled under two other state commitment statutes.[25] The state court ordered petitioner committed until such time that the health department could certify his sanity to the court.[26] Unlike the issue in the *Jackson* case, a judicial civil commitment under Title 28 of the Louisiana Revised Statutes expires at the end of six months. At the end of the six month commitment period, the treating doctor makes a recommendation as to whether the committed individual can be safely discharged or should be re-committed. A commitment of an insanity acquittee is judicially reviewed in the same manner;

---

[23] *Id*.
[24] Jackson v. Indiana, 406 U.S. 715, 738 (1972).
[25] *Id* at 715.
[26] *Id* at 719.

however, the acquittee cannot be discharged until the criminal court approves a conditional release or discharge of the insanity acquittee. The facts in the case at present are distinguishable from those facts presented in *Jackson*.

**2. Title II of the Americans with Disabilities Act of 1990 ("ADA")**

Plaintiffs cite Title II of the ADA, providing that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of the services, program, or activities of a public entity, or be subjected to discrimination by such entity."[27] Defendants are not intentionally denying Plaintiffs any rights due to their disabilities, nor have Defendants discriminated against Plaintiffs because of Plaintiffs' disabilities. At all times herein, Plaintiffs received a bed to sleep in, clothes, meals, and more importantly, monitoring and jail-based treatment by the DFCs while awaiting placement.

**3. Section 504 of the Rehabilitation Act of 1973 ("Section 504")**

Plaintiffs cite Section 504 of the Rehabilitation Act of 1973: "no otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance…".[28] As previously stated, Plaintiffs are not being excluded, denied or subjected to discrimination solely by reason of his or her disability. Moreover, Defendants do not utilize "criteria or methods of administration" to discriminate against persons on the basis of their disability.[29]

Defendants, Kliebert and DHH, respectfully aver that, accepting all uncontroverted factual allegations made by Plaintiffs as true, Plaintiffs cannot demonstrate a claim against them over

[27] 42 U.S.C. §12132.
[28] 29 U.S.C. §794(a).
[29] 45 C.F.R. §84.4(b)(4); 28 C.F.R. §41.51(b)(3)(I).

which this Court has subject matter jurisdiction to hear and decide.[30] These factual allegations can be negated insofar as Plaintiffs have been placed in the hospital or in the community and are no longer awaiting placement.

Consequently, a federal question does not exist as to the named plaintiffs. Defendants have not discriminated against these Plaintiffs in any way due to their disabilities, and furthermore, Plaintiffs were not denied any accommodations, nor were they denied due process.

### C. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

In ruling on a Rule 12(b)(6) motion, this Court must (1) identify allegations that, because they are merely conclusions, are not entitled to an assumption of truth, and (2) consider the factual allegations to determine if they plausibly suggest a claim for relief.[31]

Here, Plaintiffs' allegations are merely conclusions and are not entitled to an assumption of the truth nor a claim for relief. First, Plaintiffs have failed to clearly identify any clear causes of action against Defendants, Kliebert and DHH. What is more, even if the Court found that a cause of action did exist against Defendants, the Complaint contains no facts that would specifically support any potential violations of the law. A general allegation that Defendants violated the Plaintiffs' rights does not comply with the Rule 8 pleading standard and should not survive a motion to dismiss under Rule 12(b)(6). Plaintiffs' Complaint has simply failed to contain "enough" to give Defendants, Kliebert and DHH, a fair notice of the claims and the grounds for those claims.[32] Secondly, Plaintiffs, by merely incanting labels, legal conclusions and the

[30] Pennhurst, State School and Hospital v. Halderman, 465 U.S. 189, 104 S.Ct. 1900 (1984); Veres v. County of Monroe, 364 F. Suppl. 1327 (E.D. Mich. 1973).
[31] Iqbal at 1950-1951.
[32] Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319, 127 S.Ct. 2499, 2507, 168 L.Ed.2d 179 (2007).

formulaic elements of a cause of action, have failed to bring a sufficient cause of action and has, thus, shown no entitlement for relief.[33]

Since Plaintiffs have done nothing more than list which laws the Defendants, Kliebert and DHH, have allegedly violated, Plaintiffs have thus failed to allege any facts that support the conclusion that their claims are entitled to an assumption of truth or entitled to relief.[34] As such, Defendants, Kliebert and DHH, respectfully request that this Honorable Court dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(6).

### D. ELEVENTH AMENDMENT IMMUNITY PRECLUDES THE CLAIMS AGAINST KLIEBERT AND DHH.

#### 1. The State of Louisiana is immune from suits in Federal Court.

It is well settled that when the Eleventh Amendment applies to bar suit against a State, Federal courts are divested of subject matter jurisdiction.[35] The Eleventh Amendment to the United States Constitution bars suit against a State agency when the State is the real substantial party in interest.[36] It provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens or Subjects of any foreign state." While the language of the Amendment does not specifically address suits against the State by its own citizens, the Supreme Court has "consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as citizens of another state."[37] The Eleventh Amendment also bars state law claims in federal court.[38] Moreover, the Eleventh Amendment only bars those suits against the state that are

---

33 Iqbal at 1949; Twombly at 555.
34 Iqbal at 1949.
35 Fairport Int'l Explorations, Inc. v. Shipwrecked Vessel Known as THE CAPTAIN LAWRENCE, 105 F.3d 1078, at 1082 (6th Cir. 1997).
36 Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099 (1985).
37 Edelman v. Jordan, 415 U.S. 651, 662-63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
38 Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 120-21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

brought in federal court, and so does not prevent analogous suits from being brought in state court.[39]

The Eleventh Amendment bars a suit against state officials when the "state is the real substantial party in interest." *Pennhurst*, at 101. "Federal claims against state employees in their official capacities are the equivalent of suits against the state." *Ganther v. Ingle*, 75 F.3d 207, 209 (5th Cir. 1996) (*quoting Monell v. New York City Dept. Of Soc. Svcs.*, 436 U.S. 658, 690, note 55, 98 S.Ct. 2018 (1978)). When the action is in essence for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed.2d 389 (1945). The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter. *Pennhurst*, at 101. Furthermore, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against the State is barred regardless of whether it seeks damages or injunctive relief. *Pennhurst*, at 101-102.

Suing a public official in his official capacity for acts performed within the scope of this authority is equivalent to suing the governmental entity. *Pennhurst*, at 908, n. 11, quoting, *Dugan v. Rank*, 372 U.S. 609, 83 S.Ct. 999, 1006 (1963). The general rule is that a suit is against a sovereign if the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act. La. R.S. 13:5108. Any judgment against Defendants, Kliebert or DHH, would be satisfied out of the state treasury. *Ash v. Corley*, 992 F.2d 540, 541, n.1 (5th Cir. 1993); *Muhammad v. Louisiana*, 2000 WL 1568210 (E.D. La. October 18, 2000).

---

[39] Gies v. Flack, 495 F.Supp.2d 854, at 861 (S.D. Ohio, 2007).

It is also well settled that, absent to consent, suits against a state of one of its instrumentalities in federal court are barred by the Eleventh Amendment.[40] The scope of the Eleventh Amendment immunity extends to any state agency or entity deemed an alter ego or "arm of the state."[41] In *Regents of the University of California*, the Supreme Court held that state immunity under the Eleventh Amendment extends to action against certain state agencies and instrumentalities that are classified as "arms of state."[42] Determining whether an entity is an arm of the state requires analysis of both the state's financial and legal liability for an adverse judgment against the entity.[43] "Thus the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment."[44] Additionally, the "jurisdictional bar applies regardless of the nature of the relief sought."[45] Hence, the Eleventh Amendment bars suit against a state entity regardless of whether money damages or injunctive relief is sought.[46]

According to the Fifth Circuit, Kliebert and DHH are alter egos of the State of Louisiana, and, accordingly, are entitled to sovereign immunity.[47] In determining whether an entity is entitled to Eleventh Amendment immunity, the Court must examine the particular entity in question and its powers and characteristics created by law.[48] One of the factors examined in determining whether an agency is an arm of the state and entitled to Eleventh Amendment immunity is whether the state statutes and case law view the agency as an arm of the state.[49] According to Louisiana

---

40 Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).
41 Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 326 (5th Cir. 2002).
42 Regents of the University of California v. John Doe, 519 U.S. 425, 429, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)
43 Id at 431.
44 Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).
45 Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984).
46 Cory v. White, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982).
47 Darlak v. Bobear, 814 F.2d 1055, 1060 (5th Cir. 1987).
48 Laje v. R.E. Thomason General Hospital, 655 F.2d 724, 727 (5th Cir. 1982).
49 Jacintoport Corp. v. Greater Baton Rouge Port Commission, 762 F.2d 435, 438-40 (5th Cir. 1985).

statutes, DHH is a part of the executive branch of the state government.[50] In its statutes, Louisiana treats all executive departments the same and provides that "[n]o suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."[51] Furthermore, the Louisiana Supreme Court has held that "if the office is created by the legislature, or is established in the first instance by the constitution, it is a state office."[52] Here, Kliebert's official capacity as Secretary and DHH were created by the legislature and, is therefore considered an arm of the state.[53]

Another factor considered is the source of funding, since an important goal of the Eleventh Amendment is the protection of state treasuries.[54] Since Kliebert and DHH are part of the executive branch of the government, the legislature has direct control over Kliebert and DHH's funding through its power to amend the executive budget.[55] Funds collected by Kliebert and DHH are paid into the State Treasury.[56] Kliebert and DHH are fiscally dependent upon the state. Furthermore, the Louisiana Constitution provides that judgments against state agencies will be paid only from funds appropriated for that purpose by the state legislature.[57] It is clear that any judgment against Kliebert and DHH will be paid from state funds and that Kliebert and DHH should be considered an arm of the state.

Viewing all the factors as a whole, it is clear that Kliebert and DHH are alter egos of the state such that the Eleventh Amendment bars suit against them in federal court.

[50] La. R.S. 36:4.
[51] La. R.S. Ann. 13:5106(A).
[52] Mullins v. Louisiana, 387 So.2d 1151, 1152 (La. 1980).
[53] La. R.S.36:4; La. R.S. 28:912.
[54] Jacinto Corp. at 438-440.
[55] La. R.S. 39:33.
[56] La. R.S. Ann. 56:10.
[57] La. Const. art. XII, §10.

**2. Kliebert and DHH have not waived their sovereign immunity.**

The concept of state sovereign immunity consists of two elements: first that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.[58] The Eleventh Amendment is not an absolute bar, therefore, because states may consent to suit.[59] Sovereign immunity cannot be indirectly waived.[60]

A state's sovereign immunity is "a personal privilege which it may waive at its pleasure."[61] The decision to waive that immunity "is altogether voluntary on the part of the sovereignty."[62] The "test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one."[63] The Court will usually find a waiver either if (1) the state voluntarily invokes federal court jurisdiction, or (2) the state makes a "clear declaration" that it intends to submit itself to federal court jurisdiction.[64]

In the instant matter, Kliebert and DHH have not voluntarily invoked federal court jurisdiction, nor have they made a "clear declaration" expressing any intent to submit themselves to the jurisdiction of this Court. Kliebert and DHH do not consent to the instant suit and respectfully decline to waive its Eleventh Amendment immunity.

---

[58] Myers v. State of Texas, 410 F.3d 236, 249 (5th Cir. 2005).
[59] Id citing Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990).
[60] College Savings Bank v. Florida Prepaid Postsecondary Educ. Exp. Bd., 527 U.S. 666, 676 (1999) (citing Clark v. Barnard, 108 U.S. 436, 477 (1883)).
[61] Id at 675.
[62] Id citing Beers v. Arkansas, 20 How. 527, 529, 15 L.Ed. 991 (1858).
[63] Id citing Atascadero State Hospital v. Scanlon, 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985).
[64] College Savings, 527 U.S. at 675-676 (citing Gunter v. Atlantic Coast Line R. Co., 200 U.S. 273, 284 (1906); Great Northern Life Ins. v. Read, 322 U.S. 47 (1944)).

## IV. CONCLUSION

For the above and foregoing reasons, the Plaintiffs' Class Action Complaint filed against Defendants, Kliebert and DHH, must be dismissed: the named Plaintiffs have been placed within ELMHS or in the community and now have no issues before this court to base an injunction. There is no claim stated for which relief can be granted. Furthermore, Kliebert and DHH are entitled to sovereign immunity pursuant to the Eleventh Amendment of the United States Constitution. This Honorable Court lacks the requisite subject matter jurisdiction over these claims and consequently, this Court must dismiss these claims with prejudice.

**WHEREFORE**, Defendants, Kliebert and DHH, respectfully pray that all federal claims against them be dismissed with prejudice pursuant to Fed. R. Civ. P. Rule 12(b)(1) and/or to Fed. R. Civ. P. Rule 12(b)(6) at Plaintiffs' cost.

Respectfully submitted:

s/**REBECCA P. DELASALLE**

JENNA GERMANY YOUNG (LA Bar Roll No. 25942)
REBECCA DELASALLE (LA Bar Roll No. 30142)
STEPHANIE BORGHARDT (LA Bar Roll No.33465)
LINDSAY L. PANTALEO (LA Bar Roll No. 32561)
Department of Health and Hospitals
Bureau of Legal Services
628 North 4th Street (70802)
P.O. Box 3836
Baton Rouge, Louisiana 70821-3836
(225) 342-1128 (Telephone); (225) 342-2232 (Facsimile)
Jenna.Young@la.gov
Rebecca.Delasalle@la.gov
Lindsay.Pantaleo@la.gov
Stephanie.Borghardt@la.gov
*Attorneys for DHH*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 26, 2014, a copy of the foregoing Motion to Dismiss Plaintiffs' Class Action Complaint as to Defendants, Kathy Kliebert and Louisiana Department of Health and Hospitals, pursuant to Fed. R. Civ. P. Rules 12(b)(1) and 12(b)(6), was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to CM/ECF participants by operation of this court's electronic filing system.

_s/**REBECCA P. DELASALLE**___________
Rebecca P. DeLaSalle