**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

BRANDON COOPER, LOUIS
DAVENPORT, RON GATLIN, KENNY
SWATT, STEPHEN ZERINGUE, and
WILLIAM PITZER,
on behalf of themselves and all other
similarly situated individuals   CIVIL ACTION NO.: 14-507-SDD-SCR

VS.

KATHY KLIEBERT, Secretary of the
Louisiana Department of Health and
Hospitals, in her official capacity; and the
LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS

## RULING ON MOTION TO DISMISS

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds of Eleventh Amendment Immunity and mootness, and Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.[1] Plaintiffs have filed an opposition.[2] Defendants' mootness and sovereign immunity defenses present threshold challenges which the Court must address before determining the propriety of class certification.[3]

### I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs, on behalf of themselves and others similarly situated, bring a civil rights action under 42 U.S.C. § 1983 and federal disability statutes against the Louisiana

---

[1] Rec. Doc. 8. Plaintiffs were subsequently granted leave to file their *First Amended Class Action Complaint* (Rec. Doc. 29).
[2] Rec. Doc. 20.
[3] *Dallas Gay Alliance, Inc. v. Dallas County Hosp. Dist.*, 719 F.Supp. 1380, 1383 (N.D. Tex. 1989)(citing Newberg, Newberg on Class Actions §§ 2.05-.08 (2nd ed. 1985)).

24341

Department of Health and Hospitals ("DHH"), and Kathy Kliebert, Secretary of DHH, in her official capacity. Plaintiffs are criminal offenders with mental illnesses who have been adjudicated "Not Guilty by Reason of Insanity" ("NGRI") and ordered committed to East Louisiana Mental Health System ("ELMHS") pursuant to Article 657 of the Louisiana Code of Criminal Procedure.[4] Plaintiffs allege that after having been adjudicated NGRI and ordered committed to ELMHS they remain incarcerated in Louisiana correctional facilities for months while awaiting bed space at ELMHS. Plaintiffs allege that their continued incarceration under these circumstances violates the Fourteenth Amendment[5]; Title II of the Americans with Disabilities Act ("ADA")[6]; and Section 504 of the Rehabilitation Act ("RA")[7]. Plaintiffs seek injunctive and declaratory relief only and move to certify a class action on behalf of:

> [A]ll persons in Louisiana who are being, or may be in the future, incarcerated in Louisiana correctional facilities after a finding of NGRI and their commitment to a mental health facility pursuant to La. Code Crim. Proc. Art. 657.[8]

---

[4] La. Code Crim. Proc. Art. Art 657 provides: "After considering the report or reports filed pursuant to Articles 655 and 656, the court may either continue the commitment or hold a contradictory hearing to determine whether the committed person is no longer mentally ill as defined by R.S. 28:2(14) and can be discharged, or can be released on probation, without danger to others or to himself as defined by R.S. 28:2(3) and (4). At the hearing the burden shall be upon the state to seek continuance of the confinement by proving by clear and convincing evidence that the committed person is currently both mentally ill and dangerous. After the hearing, and upon filing written findings of fact and conclusions of law, the court may order the committed person discharged, released on probation subject to specified conditions for a fixed or an indeterminate period, or recommitted to the state mental institution. A copy of the judgment and order containing the written findings of fact and conclusions of law shall be forwarded to the administrator of the forensic facility. Notice to the counsel for the committed person and the district attorney of the contradictory hearing shall be given at least thirty days prior to the hearing."
[5] Rec. Doc. 1, paragraphs 59-64.
[6] Rec. Doc. 1, paragraphs 65-68.
[7] Rec. Doc. 1, paragraphs 69-71.
[8] Rec. Doc. 1.

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

A 12(b)(1) motion to dismiss is analyzed under the same rubric as a 12(b)(6) motion to dismiss. The Court must accept all well pleaded facts in the Complaint as true and view them in the light most favorable to the plaintiff. While a 12(b)(6) motion is determined solely on the face of the pleadings, for purposes of a 12(b)(1) motion, the Court may look at evidence in the record.[9] A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears that the plaintiff "cannot prove any set of facts" in support of the plaintiff's claims to relief.[10] In ascertaining the likelihood of whether the plaintiff can "prove any set of facts" in support of his/her claims for relief, the Court may evaluate the Complaint, supplemented by undisputed facts, and the Court's resolution of disputed facts.[11] Furthermore, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[12]

### B. Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or subjects of any Foreign State."[13] Where there is Eleventh Amendment immunity from suit,

---

[9] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)(quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008)).
[10] *Wagstaff v. United States Department of Education*, 509 F.3d 661, 663 (5th Cir. 2007).
[11] *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)("Lack of subject matter may be found in any of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").
[12] *Id.*
[13] United States Constitution, Amendment XI.

federal courts lack subject matter jurisdiction.[14] Although not expressed by its terms, Eleventh Amendment Immunity is triggered when a citizen brings a suit against his/her own state in federal court.[15] In this case, the Plaintiffs have named a state entity, DHH, and a state official, Kathy Kliebert, secretary of DHH in her official capacity, as Defendants.

The Eleventh Amendment bars suit against State entities where the entity is an arm of the State such that the suit is in reality a suit against the State itself.[16] The Fifth Circuit has held that DHH is an arm of the State and is, therefore, entitled to Eleventh Amendment Immunity.[17] Likewise, "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest'."[18] "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."[19] "A suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."[20] Accordingly, in this case, the Court starts with the premise that the Eleventh Amendment bars claims against DHH and its Secretary, unless immunity has been

---

[14] See, *Wagstaff*, 509 F.3d at 664.
[15] *Tennessee v. Lane*, 124 S.Ct. 1978, 1985 (2004); *Blanchard v. Newton*, 865 F.Supp.2d 709, 713 (M.D.La. 2012)(quoting *Pennhurst State Sch. & Hosp. v. Halderman*,104 S.Ct. 900, 906 (1984)(citing *Hans v. Louisiana*, 94 S.Ct. 1347, 1355 (1890)).
[16] *Daigle v. Gulf State Utilities Co., Local Union Number 2286*, 794 F.2d 974, 980 (5th Cir. 1986).
[17] *Caldwell v. Bristol Myers Squibb Sanofi Pharmaceuticals Holding Partnership*, 2012 WL 3862454, at (W.D.La. June 12, 2012)(quoting *Darlak v. Bobear*, 814 F.2d 1055, 1060 (5th Cir. 1987)).
[18] *Pennhurst State School & Hosp. v. Halderman*, 104 S.Ct. 900, 908 (1984)(quoting *Ford Motor Co. v. Dept. of Treasury*, 65 S.Ct. 347, 350 (1945)).
[19] *Darlak v. Bobear*, 814 F.2d 1055, 1060 (1987)(quoting (quoting *Pennhurst State School and Hospitals v. Halderman*, 104 S.Ct. 900, 908-909 (1984)(quoting *Hawaii v. Gordon*, 83 S.Ct. 1052, 1053 (1963)(*per curium*))).
[20] *Id.* (quoting *Pennhurst State School and Hospitals*,104 S.Ct. at 908-909).

waived by the State,[21] constitutionally abrogated by Congress,[22] or immunity is lacking under the *Ex Parte Young*[23] doctrine.

## III. ANALYSIS

### A. Secretary of DHH's Sovereign Immunity Defense

The Supreme Court's holding in *Ex Parte Young* recognized an important exception to the general rule of sovereign immunity for state officials. *Ex Parte Young* holds that the Eleventh Amendment does not prohibit a federal court from issuing an injunction against a state official to enjoin unconstitutional acts rooted in federal authority.[24] In this case, the Plaintiffs allege that Kathy Kliebert, as the Secretary of DHH,[25] acting in her official capacity, has engaged in an ongoing violation of federal constitutional law by depriving persons with mental illness, who have been adjudged NGRI, to remain confined in correctional facilities as opposed to mental health facilities to which they have been ordered committed.[26] Plaintiffs allege that this continuous incarceration amounts to a deprivation of NGRI detainees' liberty interests guaranteed under the Fourteenth Amendment. The Plaintiffs seek declaratory and prospective injunctive relief only against the Secretary of DHH, whom the Plaintiffs allege has acted

---

[21] Federal Courts lack jurisdiction over suits against a State, a State agency, or a State official in his/her official capacity unless the State has waived its sovereign immunity or Congress has clearly abrogated the State's sovereign immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 55, 116 S. Ct. 114, 134 L. Ed. 2nd 252 (1996); *Moore v. Louisiana Board of Elementary and Secondary Education*, 743 F.3d 959, 963 (2014).
[22] *Id.*
[23] 209 U.S. 123, 28 S. Ct. 441 (1908).
[24] *Id.* As explained by the Fifth Circuit, "[t]o meet the Ex Parte Young exception, a plaintiff's suit alleging a violation of federal law must be brought against individual persons in their official capacities as agents of the state, and the relief sought must be declaratory or injunctive in nature and prospective in effect." *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).
[25] La. R.S. 36:254 sets forth the "powers and duties" of the Secretary of DHH. Notably, the Secretary "shall organized, plan supervise, direct, administer, execute, and be responsible for the functions and programs vested in the Department [DHH], in the manner and to the extent provided by this Title." La. R.S. 36:254(A)(4).
[26] Rec. Doc. 1.

unconstitutionally. Therefore, the *Ex Parte Young* exception to the Eleventh Amendment immunity applies and this Court has jurisdiction over the Plaintiffs' 42 U.S.C. 1983 claims against Kathy Kliebert, Secretary of DHH, in her official capacity.

The Plaintiffs' ADA Title II and RA §504 claims for injunctive against DHH Secretary Kliebert can also proceed. In *McCarthy ex rel. Travis v. Hawkins* [27] the Fifth Circuit rejected the argument *Ex Parte Young* applies only to cases against state officials that involve the violation of a federal *right,* not merely a violation of federal *law*. In rejecting this argument, the Fifth Circuit drew upon the Supreme Court's guidance in *Verizon Maryland, Inc. v. Public Service Commission* [28] that "the inquiry into whether suit lies under *Ex parte Young* does *not* include an analysis of the merits of the claim."[29] On the contrary, the Court explained that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"[30] Accordingly, the Court has jurisdiction over the Plaintiff's ongoing constitutional claims and ADA Title II and R.A. §504 claims against Kathy Kliebert, in her official capacity as Secretary of DHH. The Defendants' Rule 12(b)(1) Motion to Dismiss the Plaintiffs' claims against Kathy Kliebert in her official capacity on the defense of sovereign immunity shall be DENIED.

---

[27] 381 F.3d 407, 415 (5th Cir. 2004).
[28] 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002).
[29] *Id.* at 646, 122 S.Ct. 1753.
[30] 381 F.3d 407, 416 (5th Cir. 2004) citing, *Verizon Maryland, Inc. v. Public Service Commission,* 122 S.Ct. 1753. See also, *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 416 (2004)(explaining how the Supreme Court in Verizon Maryland, Inc., "made clear that analyzing the applicability of the *Ex Parte Young* exception should generally be a simple matter, which excludes questions regarding the validity of the plaintiff's cause of action.").

## B. DHH's Sovereign Immunity Defense

The *Ex Parte Young* exception to sovereign immunity applies only to State officials acting in their official capacities and does not apply to State agencies.[31] Thus, even though the Court has *Ex Parte Young* jurisdiction over claims for declaratory and injunctive relief as to Kathy Kliebert, Secretary of DHH, in her official capacity, the Court lacks jurisdiction to hear claims brought directly against DHH[32] unless the State has waived its sovereign immunity for those claims or Congress has clearly abrogated the State's sovereign immunity as to those claims.[33]

To determine whether Congress has abrogated the State's Eleventh Amendment Immunity, the United States Supreme Court instructs that two predicate questions must be answered; first, whether Congress expressed an unequivocal intent to abrogate State immunity and, if so, second, whether Congress "acted pursuant to a valid grant of Constitutional authority."[34]

The ADA and the RA contain unequivocal statements of intent to abrogate.[35] Thus the question becomes whether Congress' abrogation of state sovereign immunity

---

[31] *Moore v. Louisiana Board of Elementary and Secondary Education*, 743 F. 3d 959, 963 (5th Cir. 2014)(citing *Puerto Rico Aquaduct and Sewer Authority v. Metcalf and Eddy, Inc.*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L. Ed. 2nd 605 (1993)(The Ex Parte Young doctrine "has no application in suits against the States and *their* agencies, which are barred regardless of the relief sought.").

[32] In its Memorandum in Support of dismissal, DHH admits that the Community Forensic Services program is administered by DHH, ELMHS. Rec. Doc. 8-1, p. 7.

[33] *Nevada Department of Human Resources v. Hibbs*, 123 S. Ct. 1972 (2003) holding that Congress may abrogate a State's immunity from suit in federal court "if it makes its intention to abrogate unmistakably clear in the language of the statute and act pursuant to a valid exercise of its power [to enforce the Constitutional guarantee of due process] under § 5 of the Fourteenth Amendment."

[34] *Tennessee v. Lane,* 124 S. Ct. 1978, 1985 (2004)(quoting *Kimel v. Florida Bd. of Regents*, 120 S.Ct. 631, at 640 (2000)).

[35] *See* 42 U.S.C. § 12202 ("A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in [a] Federal or State court of competent jurisdiction for a violation of this chapter."); 42 U.S.C. § 2000d–7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 ...."); *see also Bd. of Trustees of Univ. of Alabama v. Garrett,* 121 S.Ct 955 (2001) (finding unequivocal statement requirement met for ADA).

is a valid exercise of its power under Section 5 of the Fourteenth Amendment to enforce the substantive guarantees of that amendment.[36]

In *Board of Trustees of Univ. of Ala. v. Garrett*, the U.S. Supreme Court held that abrogation of state sovereignty with respect to the enforcement of Title I of the ADA was not a valid exercise of Congress' §5 power to enforce the Fourteenth Amendment's prohibition on unconstitutional disability discrimination in public employment.[37] "*Garrett* **left open** the question whether Title II is a valid exercise of Congress' §5 enforcement power."[38]

Addressing sovereign immunity in the context of Title II of the ADA, in *Tennessee v. Lane* the U.S. Supreme Court held that the abrogation of sovereign immunity for purposes of Title II is a valid exercise of Congressional power, *to the extent* that "'it applies to the class of cases implicating the fundamental right of access to the courts."[39] The Court expressly did not consider whether abrogation under Title II extended to other rights considered to be fundamental under the Constitution.[40]

The unanswered question is whether the principle of *Lane* extends to cases involving other fundamental rights, such as the liberty interests implicated in this case. In *U.S. v. Georgia*, the Supreme Court addressed "whether Title II of the ADA validly abrogates state sovereign immunity with respect to the claims" of a paraplegic wheel chair confined prisoner challenging the conditions of his confinement.[41] The Court

---

[36] *Tennessee v. Lane*, 124 S.Ct. at 1985.
[37] *Board of Trustees of Univ. of Ala. v. Garrett,* 531 U.S. 356, 518, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001).
[38] *Id.* at 522.
[39] *Tennessee v. Lane,* 541 U.S. at 533-34; See also, *Bennett-Nelson v. Louisiana Bd of Regents*, 431 F.3d 448 (2005) (citing *Tennessee v. Lane*, 541 U.S. 509 at 533-34 (2004)).
[40] *Pace v. Bogalusa City School Board*, 403 F.3d 272, 287 (5th Cir. 2005)(*en banc*).
[41] *U.S. v Georgia,* 546 U.S. 151, 156, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006). Plaintiff alleged that the state prison officials failed to accommodate his disability-related needs including mobility, hygiene and

declined to hold that Title II of the ADA operates a wholesale abrogation of state sovereignty. Finding that the Plaintiffs ADA Title II claims were "based, at least in large part, on conduct that independently violated the provisions of § 1 of the Fourteenth Amendment"[42], the Court held that "Title II validly abrogates state sovereign immunity"[43] where the cause of action arises from "conduct that *actually* violates the Fourteenth Amendment."[44] The scope of Title II's abrogation of state sovereignty remains unclear.

Likewise, the Fifth Circuit has "yet to decide whether the principle of *Lane* extends to cases involving other rights."[45] For the reasons stated by the Fifth Circuit in *Pace v Bogalusa City School Bd.*[46] and *Bennett-Nelson v. Louisiana Board of Regents*[47] this Court need not address the parameters or scope of Title II's abrogation of state sovereignty.

The Fifth Circuit has held that the state's receipt of federal funds is a knowing and voluntary waiver of its sovereign immunity as to claims arising under § 504 of the RA.[48] The *Complaint* in this case alleges that "DHH receives federal financial assistance and is a public entity as defined by 42 USC Section 12131(1)(B)."[49] Defendants do not challenge this allegation. Hence, considering the pleadings the

---

medical care and that he was excluded from participation in prison activities and programs due to his disability.
[42] *Id.* 126 S.Ct. at 881.
[43] *Id.* 126 S.Ct. at 882 (emphasis original).
[44] *Id.*
[45] *Bennett-Nelson v. Louisiana Board of Regents*, 431 F.3d 448, 454 (2005).
[46] *Pace v. Bogalusa City School Board*, 403 F 3d 272 (5th Cir. 2005).
[47] In *Bennett-Nelson*, 431 F.3d 448, the Fifth Circuit reasoned that because the rights and remedies are the same under Title II of the ADA and §5 of the Rehabilitation Act, it need not reach the question of whether Congress constitutionally abrogated sovereign immunity under Title II of the ADA as applied to a public Louisiana university's alleged failure to make reasonable accommodations for hearing impaired students. The Court concluded that Louisiana had waived its sovereign immunity from actions under 504 of the Rehabilitation Act and, since the rights and remedies under § 504 of the Rehabilitation Act and under Title II of the ADA were coextensive under the facts of that case, the Court need not reach the Title II abrogation question.
[48] *Pace v. Bogalusa City School Board*, 403 F.2d 272 (2005)(*en banc*).
[49] Rec. Doc. 1, paragraph 11.

Court concludes that the State has waived it sovereign immunity from suit under §504 of the RA. The Court further finds that the rights and remedies invoked in this case under Title II of the ADA and Section 504 of the RA are virtually identical.[50] Since Louisiana has validly waived its sovereign immunity from actions under §504 of the RA, whether or not Congress has constitutionally abrogated state sovereignty under Title II of the ADA under the circumstances in this case need not be reached. The Court shall has jurisdiction over Plaintiffs' claims arising §504 of the RA, which for all intents and purposes is identical to the plaintiffs' claims under Title II of the R.A.

As for Plaintiffs' remaining claims against DHH, there has been no abrogation of the State's sovereign immunity from suit in federal court for claims arising under 42 U.S.C. §1983. The United States Supreme Court has expressly held "[t]hat Congress, in passing §1983, had no intention to disturb the States' Eleventh Amendment immunity."[51] Likewise there has been no waiver by the State of its sovereign immunity for the §1983 claims. Hence while the Court has jurisdiction over the ADA Title II and §504 RA claims, the Court lacks subject matter jurisdiction over the Plaintiffs' remaining 42 U.S.C. §1983 claims against DHH. Therefore, Plaintiffs' 42 U.S.C. § 1983 claims

---

[50] As to both of these claims, Plaintiffs seek prospective injunctive and declaratory relief barring the discriminatory practice of incarcerating persons deemed NGRI on the basis of their disability while awaiting placement in mental health facilities. In their Complaint, Plaintiffs have alleged that "Defendants' incarceration of individuals found NGRI constitutes intentional discrimination on the basis of disability because '[o]nly persons with mental illness in Louisiana are intentionally subjected to punishment by incarceration in correctional facilities in the absence of pending criminal charges or a conviction of a criminal offense." Additionally "Defendants intentionally discriminate against persons found NGRI on the basis of their mental illness by confining them, or causing them to be confined, in Louisiana correctional facilities where they are subjected to punishment and unable to access appropriate mental health services" in violation of the ADA. Similarly, Plaintiffs allege violations of the RA based on "Defendants' policies, practices, and procedures of maintaining a waiting list for placement at ELMHS, which cause Plaintiffs to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGRI determination and their commitment to a mental health facility, violates Section 504 of the Rehabilitation Act.".
[51] *Will v Michigan Dep't of State Police,* 109 S.Ct. 2304, 2309-2310 (1989).

against DHH shall be dismissed without prejudice on the grounds of sovereign immunity.

### C. Mootness

Defendants urge the case is not justiciable owing to mootness. Defendants contend that, because the named Plaintiffs have now been placed in a mental health facility, the actual controversy has been eliminated rendering the action moot. Since the mootness challenge, however, a similarly situated Plaintiff, Tyrin Perkins, who remains incarcerated, has intervened.[52] The Court finds that the present situation gives rise to an important exception to the mootness doctrine. This case remains justiciable even though the complained of conduct no longer directly affects the original named Plaintiffs, because the offending conduct is capable of repetition while at the same time evading review.[53]

Owing to the temporary nature of NGRI individuals being waitlisted for admission to a mental health facility and the possibility that release from incarceration and assignment to a mental health facility may occur before a Plaintiff's claims are fully adjudicated, coupled with the fact that there are continuous additions the class of persons who are adjudicated NGRI and placed on the waitlist for mental health hospital beds, this case presents a classic example of the mootness exception for claims which are capable of repetition, yet evade review. Accordingly, the Defendants' Rule 12(b)(1) *Motion to Dismiss* on the grounds of mootness shall be DENIED.

---

[52] Rec. Doc. 28.
[53] *Moore v. Hosemann*, 591 F.3d 741, 744 (5th Cir. 2009)(quoting *Alvarez v. Smith*, 130 S.Ct. 576, 581 (2009)(citing *Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 127 S.Ct. 2652 (1911)).

**D. Rule 12(b)(6) Motion to Dismiss**

Defendants contend that Plaintiffs have failed to allege facts showing discrimination on the part of Kliebert or DHH, or on-going violations of federal law. Defendants' argue that because article 654 of the Louisiana Code of Criminal Conduct does not specify a time period in which insanity acquittees are to be transferred to a mental institution, a claim of intentional discrimination is implausible and must be dismissed. Defendants further argue that they have not intentionally denied Plaintiffs any rights due to their disabilities and counter that the plaintiffs have been provided with all necessary accommodations. Defendants argue that "at all times herein…[plaintiffs] received a bed to sleep in, clothes, meals, and more importantly, monitoring and jail-based treatment by the District Forensic Coordinators while awaiting placement."[54]

At the motion to dismiss stage the Court must accept the well-plead factual allegations as true, Defendants' simple denial of or disagreement with the factual allegations as plead carries no weight in the Court's determination of whether Plaintiffs have stated a claim.[55] The Court views the *Complaints* in the light most favorable to Plaintiffs, resolving all doubts in their favor.[56] If the facts as plead allow the Court to conclude that it Plaintiff's claims for relief are "plausible" the Motion must be denied.[57]

After reviewing the *Complaints*, the Court finds that Plaintiffs have alleged sufficient facts to support their claims at this stage. The Supreme Court has recognized that unique considerations underlie the commitment of an insanity acquittee, including

---

[54] Rec. Doc. 8-1, p. 9.
[55] In their memorandum, Defendants argue that "Defendants, Kliebert and DHH, have not discriminated against the plaintiffs based on their disability or for any other reason;" "Defendants are not intentionally denying Plaintiffs any rights due to their disabilities, nor have Defendants discriminated against Plaintiffs because of Plaintiffs' disabilities;" and "Plaintiffs are not being excluded, denied or subjected to discrimination solely by reason of his or her disability." Rec. Doc. 8-1, pp. 7; 9-10.
[56] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[57] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

that, persons deemed NGRI may not be punished because they have not been convicted of a crime.[58] Recently, the District Court for the Eastern District of Louisiana noted how "state-imposed imprisonment without conviction is a 'massive curtailment of individual liberty.'"[59] Plaintiffs have alleged that as insanity acquittees deemed NGRI who have not been convicted of any crimes, Defendants' policies, practices, and procedures which result in the Plaintiffs' continued confinement in Louisiana correctional facilities while awaiting placement at ELMHS violates their substantive due process rights under the Fourteenth Amendment.[60] They further contend that Defendants' actions amount to deliberate indifference of the Plaintiffs' constitutional liberty interests to be free from unlawful imprisonment.[61] After reviewing the *Complaints* and accepting all well-plead facts as true, the Court finds that Plaintiffs have sufficiently pled a violation of their substantive due process rights as guaranteed by the Fourteenth Amendment.

The Fifth Circuit has also explained that "the RA and the ADA are judged under the same legal standards, and the same remedies are available under both acts."[62] For purposes of Defendants' motion to dismiss Plaintiffs' ADA and RA claims, Plaintiffs must

---

[58] In *Jones v. U.S.*, 103 S.Ct. 3043, 3052 (1983), the Court held that upon a finding of NGRI by a preponderance of the evidence, it is constitutional for the government to continue confinement until the committee has regained her sanity or is no longer a threat to herself or society. In reaching this holding, the Court explained that "insanity acquittees constitute a special class that should be treated differently from other candidates for commitment."

[59] *Advocacy Center for Elderly and Disabled v. Louisiana Dept. of Health and Hospitals*, 731 F.Supp.2d 603. 626 (E.D.La. 2010).

[60] At this stage, the Court does not reach the merits of Plaintiffs' substantive due process challenge which will require weighing "the individual's liberty interest against the State's asserted reasons for restraining individual liberty." *Youngberg v. Romero*, 102 S.Ct. 2452, 2460 (1972).

[61] In *Foucha v. Louisiana*, 112 S.Ct. 1780 (1992) the Supreme Court explained as follows: "[f]reedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. *Youngberg v. Romeo*, 102 S.Ct. 2452 2458 (1982). The Supreme Court has also repeatedly recognized "commitment for any purpose constitutes significant deprivation of liberty interest that requires due process protection." *Addington v. Texas*, 99 S.Ct. 1804, 1810 (1979).

[62] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). See also, *Bascle v. Parish*, 2013WL4434911, at *2 (E.D.La. Aug. 14, 2013)("A *prima facie* case under the RA is operationally identical to the test under the ADA. Moreover, 'the ADA and Rehabilitation Act generally are interpreted *in pari materia*.' Indeed, the language of both the ADA and the RA is similar, and the remedies, procedures and rights available under the RA are also available under the ADA."(internal citations omitted)).

have pled facts of the following three elements: (1) Plaintiffs are qualified individuals under the ADA; (2) Plaintiffs are being excluded from participation in, or, is being denied benefits, services, programs, or other activities for which a public entity is responsible or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of their disability.[63]

The Court finds that Plaintiffs have pled that they are qualified individuals due to their mental illness. Plaintiffs have further pled that in spite of their mental disabilities, they are being denied access to appropriate mental health treatment while incarcerated in correctional facilities, because such facilities cannot provide adequate mental health care to meet their needs. They have further pled that they are being denied the mental health care they should be receiving at ELMHS. In support of the third element, Plaintiffs have alleged that the Defendants policies, procedures and actions which result in continued incarceration operate to discriminate against them because of their disability.[64] The Court finds that Plaintiffs have satisfactorily pled enough facts "to state a claim to relief that is plausible on its face" arising under the ADA and RA. Accordingly, Defendants' Rule 12(b)(6) motion shall be denied.

---

[63] *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 Motion to Dismiss Plaintiffs' Class Action Complaint brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure on the grounds of Eleventh Amendment Immunity and mootness, and Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds of mootness. (5th Cir. 2004).

[64] Plaintiffs plead "intentional discrimination. However, the Fifth Circuit makes it clear that "[a] plaintiff asserting a private cause of action for violations of the ADA or the [Rehabilitation Act] may only recover compensatory damages upon a showing of intentional discrimination." Delano-Pyle, 302 F.3d at 574 (citing Carter v. Orleans Parish Pub. Sch., 725 F.2d 261, 264 (5th Cir. 1984). However, Plaintiff's seek only declaratory and injunctive relief in this action; therefore the Court reads Plaintiff's allegations of "intentional discrimination" as embellishment.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is hereby GRANTED IN PART, and DENIED IN PART.

Defendants' Motion is GRANTED as to Plaintiffs' 42 U.S.C. § 1983 claims against DHH. Plaintiffs' Fourteenth Amendment claims against DHH shall be dismissed without prejudice on the grounds of sovereign immunity. Defendants' Rule 12(b)(1) Motions are is DENIED in all remaining respects.

Defendant's Rule 12(b)(6) Motion to Dismiss is DENIED.

Signed in Baton Rouge, Louisiana on <u>December 19, 2014</u>.

*[signature]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**