**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

BRANDON COOPER, LOUIS
DAVENPORT, RON GATLIN, KENNY
SWATT, STEPHEN ZERINGUE, and
WILLIAM PITZER,
on behalf of themselves and all other
similarly situated individuals        CIVIL ACTION NO.: 14-507-SDD-SCR

VS.

KATHY KLIEBERT, Secretary of the
Louisiana Department of Health and
Hospitals, in her official capacity; and the
LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS

## RULING ON MOTION FOR CLASS CERTIFICATION

Before the Court is the Plaintiffs' *Motion for Class Certification*[1] which is opposed[2] by the Plaintiffs. A hearing on class certification was held on December 9, 2014. For the following reasons, Plaintiffs' *Motion* is hereby denied.

**I.    FACTUAL BACKGROUND**

The Plaintiffs are Louisiana residents with mental illness who have been adjudicated by various state courts "Not Guilty by Reason of Insanity" ("NGRI"). The Plaintiffs contend that, despite having been found NGRI, and subsequently ordered committed to a mental health facility, they remain incarcerated. The Plaintiffs recount and offer evidence that, after having been adjudicated NGRI and ordered committed to

---
[1] Rec. Doc. 2.
[2] Rec. Doc. 9.

1

the Eastern Louisiana Mental Health System ("ELMHS"), Plaintiffs remain incarcerated in Louisiana correctional facilities for months while awaiting bed space at ELMHS. Plaintiffs move for class certification under Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure, and propose the following as their class definition:

> [A]ll persons in Louisiana who are being, or may be in the future, incarcerated in Louisiana correctional facilities after a finding of NGRI and their commitment to a mental health facility pursuant to La. Code Crim. Proc. Art. 657.[3]

## II.  CLASS CERTIFICATION

The party seeking class certification bears the burden of proving all four requirements of Rule 23(a); namely, numerosity, commonality, typicality, and adequate representation.[4] In addition to meeting the requirements of Rule 23(a), a class must also meet at least one element of Rule 23(b). In this case, the Plaintiffs rely on Rule 23(b)(2) which provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole".

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only'."[5] Because class actions are the exception and not the rule, "[a] district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class".[6] The elements of commonality,

---
[3] Rec. Doc. 2-1, p. 2.
[4] *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479-80 (5th Cir. 2001).
[5] *Wal-mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011)(quoting *Califano v. Yamasaki*, 99 S.Ct. 2557 (1979)).
[6] *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996).

2

typicality, and adequacy of representation are not in dispute.[7] The Defendants oppose class certification on the grounds that the proposed class is not so numerous as to make joinder impractical.[8]

According to the evidence offered in support of the Plaintiffs' *Motion for Class Certification*, as of March 28, 2014, the Department of Health and Hospitals ("DHH") had eleven persons who had been adjudicated NGRI and committed to ELMHS, but who remained incarcerated while awaiting bed space.[9] The evidence further indicates that, in the twelve months ending in April of 2014, twenty-five individuals had been adjudicated NGRI and ordered committed to ELMHS but remained incarcerated for several months before being admitted to ELMHS for mental health treatment.[10] Plaintiffs contend, and the Defendants do not dispute that, the population of individuals who are adjudicated NGRI and ordered committed to a mental health facility is changing. Stated differently, the proposed class of plaintiffs is ever-changing and remains fluid.

## III. LEGAL ANALYSIS

In this case, while the putative class is a fluctuating population, according to the Plaintiffs' evidence, only thirty-six individuals meet the class definition.[11] For purposes of the numerosity requirement, "[t]he proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and

---

[7] The Court is mindful of its obligation to "conduct a rigorous analysis to determine whether the plaintiffs have met the Rule 23 requirements". *Castano*, 84 F.3rd at 740. After close examination of the pleadings and evidence, the Court is satisfied that the elements of commonality, typicality, and adequacy of representation have been met.
[8] Rec. Doc. 9.
[9] Rec. Doc. 32-1, p. 6. Plaintiffs' Exhibit 2.
[10] Rec. Doc. 32-1, pp. 4-5. Plaintiffs' Exhibit 1.
[11] Rec. Doc. 32-1, pp. 4-6. Plaintiffs' Exhibits 1 and 2.

all other relevant factors".[12] Other factors which are relevant to the "numerosity" inquiry include the geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim.[13] Not surprisingly, there are no definitive instructions or guidelines in terms of the number of purported class members required to satisfy the numerosity requirement.[14]

The Fifth Circuit instructs that: "[T]he number of members in a proposed class is not determinative of whether joinder is impracticable."[15] The Fifth Circuit has further counseled that "courts must not focus on sheer numbers alone".[16] The crux of the numerosity inquiry is the ease and practicability of joinder of party plaintiffs.[17]

In *Garcia v. Gloor,*[18] the Fifth Circuit affirmed the District Court's denial of certification of a class comprised of only thirty-one persons whose identity and addresses were readily ascertainable and who lived in a compact geographical area.[19] In this case, the evidence indicates that once an offender is adjudicated NGRI and ordered committed, DHH captures and tracks the following information: the offender's name, age, race, case number, committing Parish, committing offense, date of NGRI adjudication, and date of admission to a mental health facility.[20] Up until the point that the offender is admitted to a mental health facility, DHH places the offender on a

---

[12] *Phillips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981); *Zeidman v. J. Ray McDermott & Company*, 651 F.2d 1030, 1038 (5th Cir. 1981).
[13] *Id.*
[14] Wright and Miller 7A Fed. Prac. & Proc. Civ. Section 1762 (3rd Ed.).
[15] *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999).
[16] *Pederson v. La. State Univ.*, 213 F.3d 858, 868 n.11 (5th Cir. 2000).
[17] "The basic question is practicability of joinder, not number of interested persons per se. Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir. 1980).
[18] 618 F.2d 264 (5th Cir. 1980).
[19] *Id.* at 267.
[20] Rec. Doc. 32-1, Plaintiffs' Exhibit 1.

"waitlist."[21] There was no evidence that DHH failed to know the name and whereabouts of any offender having been adjudicated NGRI and ordered committed. In short there was no evidence that the offenders awaiting commitment were not known to DHH, or that NGRI committed offenders' whereabouts were unknown. The only evidence before the Court demonstrated that the identity and whereabouts of putative plaintiffs is readily ascertainable.

Plaintiffs cite *J.D. v. Nagin*[22] which the Court finds distinguishable. Although the proposed class contains future members, unlike the proposed class in *J.D. v Nagin*, the future Plaintiffs in this case are easily identifiable. Once adjudicated NGRI and a commitment order is entered, if the offender is not immediately placed, the offender's name goes on the DHH waitlist. Thus, future Plaintiffs are easily identified. Likewise, future Plaintiffs are easily located by virtue of the fact that the committing Parish, ie. the parish where the offender is incarcerated, is also identified on the DHH waitlist. In this case, the population of putative plaintiffs is continually changing; however, that fact alone does not, in the Court's view, present an undue obstacle to joinder. The mere fact that the population of potential plaintiffs will evolve during the pendency of litigation does not render their future joinder impractical. The Fifth Circuit cautions the need to read Rule 23(a) liberally in the context of civil rights suits where plaintiffs seek injunctive relief on behalf of past, present, and future class members.[23] The Court finds that this goal can be accomplished by crafting a process whereby DHH is required to disclose the names and locations of offenders placed on the mental health waitlist to Plaintiffs periodically for the purpose of facilitating joinder.

---

[21] Rec. Doc. 32-1, Plaintiffs' Exhibit 2.
[22] 255 F.R.D. 406 (E.D.La. 2009).
[23] *Jones v. Diamond*, 519 F.2d 1090, 1099 (5th Cir. 1975).

## IV. CONCLUSION

For the foregoing reasons, the *Motion for Class Certification* is DENIED.[24]

Baton Rouge, Louisiana the 22nd day of December, 2014.

*Shelly D. Dick*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[24] Rec. Doc. 2.