**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**
**BATON ROUGE DIVISION**

---

| | |
|---|---|
| **BRANDON COOPER, LOUIS DAVENPORT, RON GATLIN, KENNY SWATT, STEPHEN ZERINGUE,WILLIAM PITZER, and TYRIN PERKINS, On Behalf of Themselves and All Other Similarly-Situated Individuals, and ADVOCACY CENTER,** | **CIVIL ACTION NO. 14-cv-00507-SDD-SCR** <br> **JUDGE DICK** <br> **MAGISTRATE REIDLINGER** |
| **PLAINTIFFS** | |
| **VS.** | |
| **KATHY KLIEBERT, Secretary of the Louisiana Department of Health and Hospitals, in her official capacity, and the DEPARTMENT OF HEALTH AND HOSPITALS,** | |
| **DEFENDANTS** | |

---

## PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT

### I. INTRODUCTION

1.      Plaintiffs, Brandon Cooper, Louis Davenport, Ron Gatlin, Kenny Swatt, Stephen Zeringue, William Pitzer, Tyrin Perkins, Dominick Perniciaro III, Scott Frye, Ryan Kazami, and Francis Mary Watson are individuals who have been diagnosed with mental illness and found Not Guilty by Reason of Insanity (NGBRI) of a criminal offense but, despite that finding, continued to be incarcerated in correctional facilities in

1

Louisiana. Plaintiff Advocacy Center is a private, federally-funded, non-profit corporation, designated by Louisiana to serve as the State's protection and advocacy system for persons with disabilities, which has moved to intervene in the instant case as an associational plaintiff.

2.      Plaintiffs bring this civil rights action under 42 U.S.C. § 1983 and federal statutes barring discrimination on the basis of disability, on behalf of themselves and all other similarly-situated persons. Plaintiffs seek a declaratory judgment and injunctive relief to enjoin Defendants' policies, practices, and procedures, executed under color of state law, which have caused them to be deprived of their liberty due to their disabilities, and denied necessary mental health treatment. Plaintiffs and the class they represent contend that these policies, practices, and procedures violate their rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, Title II of the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504").

## II. JURISDICTION

3.      This Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343, in that this is an action arising under the Fourteenth Amendment to the United States Constitution, Section 504, and the ADA.

4.      Venue is appropriate in this court under 28 U.S.C. §1391(b)(2) because Defendants reside in this District.

## III. PARTIES

5.      Plaintiff BRANDON COOPER is a 34-year-old man with mental illness. On February 14, 2014, the St. Tammany Parish District Court found Mr. Cooper not guilty by reason of insanity for two counts of unauthorized use of a motor vehicle, and committed him to Eastern Louisiana Mental Health System ("ELMHS"), which is a state mental health facility in Jackson, Louisiana. At the time of the filing of the original Complaint, Mr. Cooper had been continuously incarcerated in the St. Tammany Parish Jail since the date of the NGBRI finding. No other criminal charges have been filed against him.

6.      Plaintiff LOUIS DAVENPORT is a 25-year-old man with mental illness. On April 23, 2014, the Jefferson Parish District Court found Mr. Davenport not guilty by reason of insanity for one count of battery on a correctional facility employee, and committed him to ELMHS.  At the time of the filing of the original Complaint, Mr. Davenport had been continuously incarcerated in the Jefferson Parish Correctional Center since the date of the NGBRI finding. No other criminal charges have been filed against him.

7.      Plaintiff RON GATLIN is a 25-year-old man with mental illness. On March 19, 2014, the Jefferson Parish District Court found Mr. Gatlin not guilty by reason of insanity for one count of obscenity, and committed him to ELMHS.  At the time of the filing of the original Complaint, Mr. Gatlin had been continuously incarcerated in the Jefferson Parish Correctional Center since the date of the NGBRI finding. No other criminal charges have been filed against him.

8.      Plaintiff KENNY SWATT is a 25-year-old man with mental illness. On April 23, 2014, the Jefferson Parish District Court found Mr. Swatt not guilty by reason of insanity for one count of aggravated battery, and committed him to ELMHS. At the time of the filing of the original Complaint, Mr. Swatt had been continuously incarcerated in the Jefferson Parish Correctional Center since the date of the NGBRI finding. No other criminal charges have been filed against him.

9.      Plaintiff STEPHEN ZERINGUE is a 31-year-old man with mental illness. On March 19, 2014, the Jefferson Parish District Court found him not guilty by reason of insanity for one count of aggravated arson, and committed him to ELMHS.  At the time of the filing of the original Complaint, Mr. Zeringue had been continuously incarcerated in the Jefferson Parish Correctional Center since the date of the NGBRI finding. No other criminal charges have been filed against him.

10.     Plaintiff WILLIAM PITZER is a 57-year-old man with mental illness. On April 16, 2014, the Jefferson Parish District Court found him not guilty by reason of insanity for two counts of auto theft and one count of theft, and committed him to ELMHS. At the time of the filing of the original Complaint, Mr. Pitzer had been continuously incarcerated in the Jefferson Parish Correctional Center since the date of the NGBRI finding. No other criminal charges have been filed against him.

11.     Plaintiff TYRIN PERKINS is a 21-year-old man with mental illness.  On March 20, 2014, the 19th Judicial District Court found him not guilty by reason of insanity for one count of armed robbery, and placed him on conditional release and in the custody of Harmony Transitional Center, a group home located in Baton Rouge, Louisiana.  On August 20, 2014, Mr. Perkins was arrested for an alleged violation of his

conditional release, and on August 25, 2014, the court committed him to ELMHS. At the time of the filing of the Second Amended Complaint, Mr. Perkins had been continuously incarcerated in the East Baton Rouge Parish Prison for over two months after being committed to ELMHS. No other criminal charges have been filed against him.

12. Plaintiff DOMINICK PERNICIARO, III, is a 30-year-old man with mental illness. On April 8, 2015, the 24th Judicial District Court found Mr. Perniciaro not guilty by reason of insanity to his pending criminal charges and committed him to ELMHS. Mr. Perniciaro has not been placed at ELMHS, but has instead remained continuously incarcerated in Jefferson Parish Correctional Center since the NGBRI finding. He is currently ninth on the waitlist for admission to ELMHS, per documentation provided by Defendants' counsel on April 10, 2015. No other criminal charges have been filed against him.

13. Plaintiff SCOTT FRYE is a 49-year-old man with a mental illness. On April 7, 2014, the Calcasieu Parish District Court found Mr. Frye not guilty by reason of insanity to the charge of simple robbery and committed him to ELMHS. Mr. Frye has been continuously incarcerated in the Calcasieu Parish Correctional Center since the date of that finding. No other criminal charges have been filed against him.

14. Plaintiff RYAN KAZAMI is a 40-year-old man with a mental illness. On March 23, 2015, the Lafayette Parish District Court found Mr. Kazami not guilty by reason of insanity to the charge of terrorizing and committed him to ELMHS. Mr. Kazami has been continuously incarcerated in the Lafayette Parish Correctional Center since the date of that finding. No other criminal charges have been filed against him.

15.     Plaintiff FRANCIS MARY WATSON is a 52-year-old woman with a mental illness.  On December 8, 2014, the Lafayette Parish District Court found Ms. Watson not guilty by reason of insanity to two counts of armed robbery and committed her to ELMHS.  Ms. Watson has been continuously incarcerated in the Lafayette Parish Correctional Center since the date of that finding. No other criminal charges have been filed against her.

16.      Plaintiff ADVOCACY CENTER is a private, federally-funded, non-profit corporation, designated by Louisiana to serve as the State's protection and advocacy system for persons with mental illness.

17.     Plaintiff Advocacy Center is part of a nationwide network of disability rights agencies created under federal law to provide legal representation and other advocacy services on behalf of persons with disabilities ("Protection and Advocacy" organizations).  *See* Protection and Advocacy of Individual Rights Program of the Rehabilitation Act of 1973, 29 U.S.C. § 794e (2009); Protection and Advocacy for Individuals with Mental Illness ("PAIMI") Act of 1986, 42 U.S.C. §§10801–10851 (2009); Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§15041–45 (2009).   Pursuant to these statutes, Protection and Advocacy organizations are authorized to investigate incidents of abuse or neglect of such persons, to enforce the federal and state constitutional and statutory rights of such persons through administrative, legal, and other appropriate remedies, and to provide information and referrals relating to programs and services addressing the needs of such persons.

18.     In addition to a governing board, Plaintiff Advocacy Center has an advisory board known as a "PAIMI Council."   At least sixty percent of these PAIMI

Council members have received or are receiving mental health services or are family members of such individuals; the PAIMI Council also includes mental health professionals and individuals from the public who are knowledgeable about mental illness.  Because so many people on the PAIMI Council have family members with mental health issues, it is not surprising that some of those family members have ended up in the criminal justice system, and inevitable that such involvement will continue.

19.    Plaintiff Advocacy Center has met with persons who have been incarcerated in Louisiana correctional facilities after a finding of NGRI and commitment to a mental health facility pursuant to La. Code Crim. P. art. 657 ("NGRI Acquittees"). NGRI Acquitees have been, or are being, held for extended periods in parish prison. Each NGRI Acquittee is a constituent of the Advocacy Center and has suffered, and/or is continuing to suffer, an injury that would allow him or her to bring suit in his or her own right.  NGRI Acquittees without either relatives or friends with whom they are in contact while in jail have no one other than the Advocacy Center to act on their behalf in civil matters.

20.    Plaintiff Advocacy Center brings this suit as an associational plaintiff on behalf of NGRI Acquittees, who allege that the actions of the Defendants in incarcerating individuals who have been found NGRI violate the Fourteenth Amendment to the United States Constitution, Section 504, and the ADA.

21.    Defendant KATHY KLIEBERT is the Secretary of the Louisiana Department of Health and Hospitals ("DHH"). Pursuant to La. R.S. 36:254, she is responsible for the oversight, supervision and control of DHH and its divisions and is ultimately responsible for ensuring that DHH's services for people with disabilities are

provided in conformance with federal law. The Community Forensic Coordinators program, which monitors and provides services to persons found NGBRI, is located within her Department. She is being sued in her official capacity only.

22.     Defendant LOUISIANA DEPARTMENT OF HEALTH AND HOSPITALS (DHH) is the state agency that operates Eastern Louisiana Mental Health System (ELMHS). ELMHS maintains a waiting list for the services it provides to persons with mental illness who have been ordered to ELMHS to receive mental health treatment. DHH receives federal financial assistance and is a public entity as defined by 42 U.S.C. § 12131(1)(B).

### IV. CLASS ACTION ALLEGATIONS

23.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) on behalf of themselves and all others similarly situated.[1]  The class consists of all persons in Louisiana who are being, or who may be in the future, incarcerated in Louisiana correctional facilities after a finding of NGBRI and their commitment to a mental health facility pursuant to La. Code Crim. P. art. 657.

24.     The number of persons in the class is so numerous and in such fluctuation that joinder of all of them is impractical. There are scores of individuals throughout the State of Louisiana who have been or will be found NGBRI and committed to a mental health facility, but who remain or will remain incarcerated in a parish jail, often for months at a time.

---

[1] Plaintiffs filed a motion for class certification at the time of the filing of the original Complaint (Rec. Doc. 2).  After a hearing on December 9, 2014, the Court denied the class certification motion based on a finding that the joinder of individual plaintiffs was practicable (Rec. Doc. 44). Plaintiffs have retained the class certification allegations in the instant Amended Complaint such that Plaintiffs retain the ability to renew a motion for class certification if the circumstances upon which the Court based its denial change. Plaintiffs are not pursuing a motion for class certification at this time.

25.     The questions of law and fact raised in this case are common to both the named Plaintiffs and the class as defined above. These common questions of law and fact include whether it violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution and is unlawful discrimination on the basis of disability to incarcerate individuals after a finding of NGBRI and an order that they be committed to a mental health facility, pursuant to La. Code Crim. P. art. 657, even though no other criminal charges have been filed against them.

26.     The claims of the named Plaintiffs are typical of the claims of the proposed class. As with Plaintiffs, the class of individuals they represent have been found NGBRI but nevertheless have been incarcerated in parish jails, even though no other criminal charges have been filed against them.

27.     Plaintiffs will fairly and adequately represent the interests of the class, have no interests that are antagonistic to the class, and seek relief that will benefit all members of the class. Plaintiffs are represented by counsel experienced in the prosecution of class actions.

28.     Defendants have acted and refused to act on grounds generally applicable to the class, making injunctive and declaratory relief appropriate for the class as a whole.

**V. STATUTORY SCHEME**

29.     La. R.S. 14:14 states that an individual charged with a criminal offense is exempt from criminal responsibility for his behavior when "the circumstances indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question."

30.    La. R.S. 28:2(20) defines a mentally ill person as "any person with a psychiatric disorder which has substantial adverse effects on his ability to function and who requires care and treatment."

31.    When the defendant enters a plea of not guilty and NGBRI, the court may appoint a Sanity Commission, as provided in La. Code Crim. P. art. 644, to examine the defendant to determine whether he or she was "insane" at the time of the offense. La. Code Crim. P. arts. 650– 652.

32.    A finding of NGBRI means that the defendant has committed the acts that constitute the crime; however, the defense has proven by a preponderance of the evidence that the defendant was insane at the time the acts were committed and thus cannot be held legally responsible. La. Code Crim. P. art. 651.

33.    La. Code Crim. P. art. 654 provides that if the defendant is found not guilty by reason of insanity in a non-capital case, the court shall remand him to the parish jail or to a private mental institution approved by the court and promptly hold a hearing to determine whether the defendant can be released. When a verdict of not guilty by reason of insanity is returned in a capital case, the court shall commit the defendant to a state or private mental institution for care, custody, and treatment.

34.    Under the United States Constitution, an insanity acquittee's liberty may be curtailed only upon a finding that he is both dangerous and mentally ill. However, implicit in the NGBRI acquittal is a finding that the defendant is mentally ill. Therefore, at the initial hearing following an NGBRI finding, the only issue before the court in determining whether the acquittee should be released or committed, is whether the acquittee is dangerous.

35.     If the court determines that the defendant cannot be released without danger to himself or others, the court shall order him committed to a proper state mental institution or to a private mental institution approved by the court for custody, care, and treatment. La. Code Crim. P. art. 654.

36.     Even if a defendant has been committed under La. Code Crim. P. art. 654, as a result of having been found dangerous and presumed mentally ill based on the finding of NGBRI, the acquittee or the superintendent of the facility in which he or she is being held may later apply for discharge or conditional release.

37.     Under Louisiana's statutory scheme, after a contradictory hearing, and considering the Sanity Commission's findings, the court may order the individual's release, place him on conditional release, or commit him. La. Code Crim. P. art. 657.1.

## VI.  STATEMENT OF FACTS

a.     **Plaintiff Brandon Cooper**

38.     Mr. Cooper has been diagnosed with schizophrenia and was first hospitalized for mental health problems when he was a teenager.  He currently receives a monthly injection of the psychotropic medication Haldol.

39.     On or about December 12, 2012, Mr. Cooper was arrested and placed in the St. Tammany Parish Jail for two counts of unauthorized use of a motor vehicle.

40.     On April 8, 2013, Mr. Cooper's public defender filed an application with the St. Tammany Parish District Court to determine Mr. Cooper's present mental health condition, and his mental health condition at the time of the alleged offense. Mr. Cooper's public defender advised the court that he had good reason to believe that Mr. Cooper was not of sound mind and understanding and was currently insane and insane at

11

the time of the alleged offense; and that Mr. Cooper was "mentally defective or deficient" and unable to understand his criminal proceedings. Mr. Cooper's public defender asked the court to appoint two physicians to examine Mr. Cooper with regard to his mental condition.

41.     On May 9, 2013, the circuit court appointed two physicians to examine Mr. Cooper, and scheduled a hearing for June 27, 2013, to determine Mr. Cooper's present mental condition, and his mental condition at the time of the alleged offenses.

42.     On February 14, 2014, the circuit court adjudicated Mr. Cooper NGBRI and ordered him committed to ELMHS. However, as of the date of the filing of the original Complaint, Mr. Cooper remained in the St. Tammany Parish Jail, where his mental health treatment was limited to monthly injections of Haldol.

b.     **Plaintiff Louis Davenport**

43.     Mr. Davenport has been diagnosed with Schizoaffective Disorder, Bipolar Type, and has been hospitalized for mental health treatment on several occasions.

44.     In late 2012 or early 2013, Mr. Davenport was transferred to the Jefferson Parish Correctional Center from the Orleans Parish Prison for allegedly forfeiting a bond issued to him by the Jefferson Parish District Court in 2007. On or about March 19, 2013, while suffering from untreated psychosis, Mr. Davenport was accused of committing a battery upon a Jefferson Parish correctional officer who tried to escort Mr. Davenport out of the jail infirmary.

45.     On or about March 22, 2013, Mr. Davenport was transported to ELMHS for a competency evaluation, at which time the Department of Health and Hospitals reported that Mr. Davenport was in a "floridly psychotic state" and had a "significant

psychosis and mood disturbance." It took the doctors at ELMHS five months to stabilize Mr. Davenport through medication.

46.     On or about September 19, 2013, Mr. Davenport's public defender filed a Motion for Mental Examination with the Jefferson Parish District Court to request that the court appoint physicians to evaluate Mr. Davenport to determine if he was insane at the time of his alleged offense. The district court ordered a sanity evaluation that same day.

47.     On April 23, 2014, the district court adjudicated Mr. Davenport NGBRI and committed him to ELMHS. However, as of the date of the filing of the original Complaint, Mr. Davenport remained in the Jefferson Parish Correctional Center, where his mental health treatment was limited to receiving his daily psychotropic medications.

    c.    **Plaintiff Ron Gatlin**

48.     Mr. Gatlin has a history of mental illness dating back to his childhood. On or about July 15, 2013, Mr. Gatlin was charged with one count of obscenity for an incident that occurred in the Kenner City Jail. Although Mr. Gatlin had been hospitalized for mental health problems just a few months prior to this offense, he was not receiving any medication or treatment in jail at the time that he was charged with obscenity.

49.     On or about December 17, 2013, Mr. Gatlin's public defender filed a motion with the Jefferson Parish District Court requesting the appointment of a sanity commission to determine whether Mr. Gatlin was insane at the time of the alleged obscenity offense.

50.     On March 19, 2014, the district court adjudicated Mr. Gatlin not guilty by reason of insanity and committed him to ELMHS. However, as of the date of the filing of

the original Complaint, Mr. Gatlin remained in the Jefferson Parish Correctional Center, where his mental health treatment was limited to his daily psychotropic medications.

        d.    **Plaintiff Kenny Swatt**

51.     On or about July 1, 2013, Mr. Swatt was arrested for one count of aggravated battery and placed in the Jefferson Parish Correctional Center, where he was given medication for bipolar disorder and schizophrenia.

52.     On or about September 10, 2013, Mr. Swatt's public defender filed a motion with the Jefferson Parish District Court requesting the appointment of a sanity commission to determine whether Mr. Swatt was insane at the time of the alleged offense. The district court appointed a sanity commission on September 11, 2013, and ordered the commission to report its findings to the court by November 13, 2013.

53.     On April 23, 2014, the district court adjudicated Mr. Swatt not guilty by reason of insanity for one count of aggravated battery and committed him to ELMHS. However, as of the date of the filing of the original Complaint, Mr. Swatt remained incarcerated in the Jefferson Parish Correctional Center, where his mental health treatment was limited to receiving the medication Haldol. Due to the lack of treatment, Mr. Swatt spent nearly all of his time incarcerated sleeping.

        e.    **Plaintiff Stephen Zeringue**

54.     Mr. Zeringue has a lengthy history of mental health problems and psychiatric treatment dating back to his childhood. On or about January 4, 2013, Mr. Zeringue was arrested for one count of aggravated arson and placed in the Jefferson Parish Correctional Center.

55.    On or about March 27, 2013, Mr. Zeringue was found incompetent to stand trial, and was remanded to ELMHS to be restored to competency. Mr. Zeringue remained at ELMHS for over five months, and was eventually returned to the Jefferson Parish Correctional Center around September 19, 2013.

56.    On November 19, 2014, Mr. Zeringue's public defender filed a motion with the Jefferson Parish District Court to request the appointment of a sanity commission to determine whether Mr. Zeringue was insane at the time of the alleged offense. The district court appointed a sanity commission that same day, and ordered the physicians to report their findings to the court on January 8, 2014.

57.    On March 19, 2014, the district court found Mr. Zeringue not guilty by reason of insanity and committed him to ELMHS. However, despite this order, at the time of the filing of the original Complaint, Mr. Zeringue remained incarcerated in the Jefferson Parish Correctional Center, where his mental health treatment was limited to oral psychotropic medications.

f.    **Plaintiff William Pitzer**

58.    William Pitzer was arrested on or around February 28, 2012, for two counts of auto theft and one count of theft and was incarcerated at Jefferson Parish Correctional Center. He was initially deemed incompetent to stand trial, and was remanded to ELMHS on or around February 20, 2013, to be restored to competency. At the time of his admission, the physicians at ELMHS described him as psychotic and delusional, and diagnosed him with delusional disorder.

59.    Mr. Pitzer returned to the Jefferson Parish Correctional Center at the end of June 2013, and on or about July 18, 2013, Mr. Pitzer's public defender filed a motion

to request a sanity commission to determine whether Mr. Pitzer was insane at the time of the alleged offenses.

60.     On April 16, 2014, the Jefferson Parish District Court adjudicated Mr. Pitzer not guilty by reason of insanity, and committed him to ELMHS. However, as of the date of the filing of the original Complaint, Mr. Pitzer remained incarcerated in the Jefferson Parish Correctional Center, where his mental health treatment was limited to oral psychotropic medications. Mr. Pitzer did not receive any visitors while incarcerated, and passed his time in Jefferson Parish Correctional Center by sleeping through the day.

g.     **Plaintiff Tyrin Perkins**

61.     Plaintiff Tyrin Perkins is a 21-year-old man with mental illness.  He has been diagnosed with bipolar disorder and has been hospitalized numerous times related to his illness.

62.     Mr. Perkins was found Not Guilty by Reason of Insanity to one charge of Armed Robbery on March 20, 2014.

63.     Upon being found NGBRI, Mr. Perkins was conditionally released and placed in the custody of Harmony Transitional Center, a group home located in Baton Rouge, pursuant to La. Code Crim. Proc. arts. 558.1 and 658.1.  He was further placed on supervised/active probation for a period of five (5) years, pursuant to La. Code Crim. Proc. arts. 657, 658, and 895.

64.     Mr. Perkins was arrested on or about August 20, 2014, after allegedly leaving the group home without permission.  He was not charged with any criminal offense, but was nonetheless incarcerated in East Baton Rouge Parish Prison pending a probation revocation hearing.

16

65. On August 25, 2014, Judge Anthony J. Marabella Jr. of the 19th Judicial District Court revoked Mr. Perkins' supervised probation based on a finding that he was "in need of indefinite hospitalization due to the presence of mental illness and/or dangerousness."

66. The court ordered that Mr. Perkins be recommitted to ELMHS pursuant to La. Code Crim. Proc. art. 658(B)(4).

67. Mr. Perkins had not been recommitted to ELMHS at the time of the filing of the Second Amended Complaint. He remained incarcerated in East Baton Rouge Parish Prison for over two months after the court ordered him committed to ELMHS. The majority of his incarceration at East Baton Rouge Parish Prison was spent in solitary confinement, and his treatment was limited to oral medications. He was placed on suicide watch on at least one occasion during this period.

h.   **Plaintiff Dominick Perniciaro, III**

68. Mr. Perniciaro is a 30-year-old man with mental illness. He has been diagnosed with schizoaffective disorder, which manifests in extreme paranoia. Mr. Perniciaro has been hospitalized on numerous occasions since the age of 21, and has attempted suicide on at least two prior occasions.

69. Mr. Perniciaro was arrested by the Jefferson Parish Sheriff's Department in June 2013 following an altercation with a neighbor.

70. During the course of his arrest processing at Jefferson Parish Correctional Center, and while experiencing untreated psychosis, Mr. Perniciaro had an altercation with several correctional officers. Officers subsequently slammed Mr. Perniciaro's face

into a brick cinder block wall, breaking three of his front teeth.  Mr. Perniciaro was charged with additional criminal counts related to this incident.

71.     The 24th Judicial District Court found Plaintiff incompetent to stand trial and on August 22, 2013, he was committed to ELMHS for competency restoration.

72.     After nearly seven months of commitment at ELMHS, on March 21, 2014, Plaintiff was determined to have been restored to competency and was transferred back to Jefferson Parish Correctional Center.

73.     Shortly after his arrival at Jefferson Parish Correctional Center, Plaintiff was determined by the examining psychiatrist and psychologist appointed by the 24th Judicial District Court to be "floridly psychotic."  The psychiatrist and psychologist recommended that he be returned to ELMHS for another competency restoration.

74.     Plaintiff was re-committed and returned to ELMHS on April 15, 2014.

75.     After nearly eight months of commitment at ELMHS, in December 2014, Plaintiff was again determined to be competent.  He was returned to Jefferson Parish Correctional Center.

76.     In February 2015, Mr. Perniciaro's was re-evaluated by the psychiatrist and psychologist appointed by the district court.  Based upon their recommendation, and the agreement of the prosecuting attorneys, the Court, and Plaintiff's criminal counsel, the Court accepted a plea of NGBRI to Mr. Perniciaro's pending criminal charges.

77.     On April 8, 2015, Judge Danyelle Taylor of the 24th Judicial District Court found Mr. Perniciaro NGBRI and ordered him committed to ELMHS.

78.     Mr. Perniciaro remains incarcerated in Jefferson Parish Correctional Center despite being found NGBRI to the criminal charges facing him.

79.     The entirety of Mr. Perniciaro's incarceration at Jefferson Parish Correctional Center has been spent in solitary confinement, with no access to family visits, telephone calls, sunlight, or exercise.  Mr. Perniciaro is not allowed access to any pens or pencils, and so is unable to write to his family or legal counsel.  He is not allowed to leave his cell at all except during the brief period that he is allowed to shower.  He has physical injuries, including a dislocated shoulder sustained during his commitment at ELMHS, which have remained untreated during his incarceration.  His current mental health treatment is limited to oral medications.

   **i.     Plaintiff Scott Frye**

80.     Mr. Frye is a 49-year-old man with a mental illness, namely schizophrenia, who is currently incarcerated in Calcasieu Parish Correctional Center despite being found NGBRI to the criminal charges facing him.

81.     On April 7, 2014, the Calcasieu Parish District Court found Mr. Frye not guilty by reason of insanity to the charge of simple robbery and committed him to ELMHS.

82.     Mr. Frye has not been placed at ELMHS, but has been continuously incarcerated in the Calcasieu Parish Correctional Center since the date of that finding..

83.     No other criminal charges have been filed against Mr. Frye.

   **j.     Plaintiff Ryan Kazami**

84.     Plaintiff Ryan Kazami is a 40-year-old man with a mental illness who is currently incarcerated in Lafayette Parish Correctional Center despite being found NGBRI to the criminal charges facing him.

85.     On March 23, 2015, the Lafayette Parish District Court found Mr. Kazami not guilty by reason of insanity to the charge of terrorizing and committed him to ELMHS.

86.     Mr. Kazami has not been placed at ELMHS, but has been continuously incarcerated in the Lafayette Parish Correctional Center since the date of that finding. Mr. Kazami is currently housed in the medical unit of the correctional center.

87.     No other criminal charges have been filed against Mr. Kazami.

**k.      Plaintiff Francis Mary Watson**

88.     Plaintiff Francis Mary Watson is a 52-year-old woman with a mental illness who is currently incarcerated in Lafayette Parish Correctional Center despite being found NGBRI to the criminal charges facing her.

89.     On December 8, 2014, the Lafayette Parish District Court found Ms. Watson not guilty by reason of insanity to two counts of armed robbery and committed her to ELMHS.

90.     Ms. Watson has not been placed at ELMHS, but has been continuously incarcerated in the Lafayette Parish Correctional Center since the date of that finding. Ms. Watson spent sixteen months of her incarceration in isolation before being transferred to the general population of the correctional center.

91.     No other criminal charges have been filed against Ms. Watson.

**l. Defendants' Unconstitutional Policies and Practices**

92.     The primary purpose for incarcerating individuals in Louisiana correctional facilities is punishment and pre-trial detention. Such facilities do not have the capacity to provide the mental health treatment to individuals found NGBRI.

93.     Defendants' policies, practices, and procedures, including maintaining a waiting list for placement at ELMHS, cause scores of individuals to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGBRI determination and their commitment to a mental health facility.

94.     Only persons with mental illness in Louisiana are intentionally subjected to punishment by incarceration in correctional facilities in the absence of pending criminal charges or a conviction of a criminal offense.

95.     Defendants, at all times relevant to this Third Amended Complaint, have acted under color of state law.

96.     Defendants, at all times relevant to this Third Amended Complaint, have acted and continue to act with deliberate indifference to Plaintiffs' liberty interests.

97.     Defendants intentionally discriminate against persons found NGBRI on the basis of their mental illness by confining them, or causing them to be confined, in Louisiana correctional facilities where they are subjected to punishment and unable to access appropriate mental health services.

98.     Defendants, at all times relevant to this Third Amended Complaint, knowingly and intentionally violated Plaintiffs' constitutional and federal statutory rights.

99.     As a direct and proximate result of the foregoing, Plaintiffs, and the class they represent, have suffered or are likely to suffer deprivation of their liberty by incarceration in correctional facilities, discrimination based on their disabilities, and significant irreparable damage to their mental health.

## VII. CAUSES OF ACTION

**A.     VIOLATIONS OF SUBSTANTIVE DUE PROCESS**

100.    Under the Due Process Clause to the United States Constitution, individuals who have not been properly charged with a crime or convicted may not be punished by incarceration in prison or jail. Jones v. United States, 463 U.S. 354, 369 (1983).

101.    "[D]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972).

102.    For NGBRI acquittees, the purpose of commitment is to provide treatment of their mental illness in a manner that is not punitive, and to protect society from dangerous behavior that may result from that mental illness.

103.    For NGBRI acquittees, when either dangerousness or mental illness ceases to exist, the State has no legitimate interest in commitment.

104.    As set forth in this Third Amended Complaint, Defendant Kliebert's policies, practices, and procedures of maintaining a waiting list for placement at ELMHS, which have caused and continue to cause individuals with mental illness who have been found NGBRI and committed to mental health facilities to instead be confined in correctional facilities, violate those individuals' rights under the Due Process Clause to the United States Constitution.

105.    As set forth in this Third Amended Complaint, Defendant Kliebert's policies, practices, and procedures of maintaining a waiting list for placement at ELMHS that have caused and continue to cause the named Plaintiffs to be incarcerated in

correctional facilities in Louisiana for months at a time following an NGBRI determination and their commitment to a mental health facility, violate their rights under the Due Process Clause to the United States Constitution.

## B.   VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

106.   As qualified persons with disabilities, Plaintiffs are entitled to the protections and benefits of Title II of the Americans with Disabilities Act, which provides that "no qualified individual with a disability shall, by reason of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

107.   Regulations implementing the ADA prohibit a public entity from providing any aid, benefit, or service, directly or through contractual licensing, or other arrangements that (i) Deny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service; (ii) Afford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others; (iii) Provide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others; and (iv) Provide different or separate aids, benefits, or services to individuals with disabilities or to any class of individuals with disabilities than is provided to others unless such action is necessary to provide qualified individuals with disabilities with aids, benefits, or services that are as effective as those provided to others. 28 C.F.R. § 35.130(b)(1)(i–iv).

108.    The ADA's implementing regulations further provide that "a public entity may not, directly or through contractual or other arrangements, utilize criteria or other methods of administration:  (i) that have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability...." 28 C.F.R. § 35.130(b)(3).

109.    As set forth in this Third Amended Complaint, Defendants' policies, practices, and procedures of maintaining a waiting list for placement at ELMHS, which have caused and continue to cause Plaintiffs to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGBRI determination and their commitment to a mental health facility, violate Title II of the ADA.

## C.    VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT

110.    Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance . . . ." 29 U.S.C. § 794(a).

111.    Section 504's regulations also prohibit recipients of federal financial assistance from "utiliz[ing] criteria or methods of administration . . . (i) [t]hat have the effect of subjecting qualified handicapped persons to discrimination on the basis of handicap . . . ." 45 C.F.R. § 84.4(b)(4); 28 C.F.R. § 41.51(b)(3)(i).

112.    As set forth in this Third Amended Complaint, Defendants' policies, practices, and procedures of maintaining a waiting list for placement at ELMHS, which have caused and continue to cause Plaintiffs to remain incarcerated in correctional facilities in Louisiana for months at a time following an NGBRI determination and their commitment to a mental health facility, violate Section 504 of the Rehabilitation Act.

24

WHEREFORE, Plaintiffs and the class they represent pray for judgment against the Defendants as follows:

A.  Certify this action as a class action;

B.  Issue an order granting Plaintiffs and the class they represent permanent injunctive relief prohibiting Defendants from confining persons with disabilities in correctional facilities, following their commitment to a mental health facility;

C.  Issue a declaratory judgment that Defendants' policies, practices, and procedures of continuing to confine persons with disabilities in state correctional facilities, following their commitment to a mental health facility, violate Plaintiffs' rights under the Due Process Clause of the United States Constitution, Section 504 of the Rehabilitation Act of 1973, and Title II of the Americans with Disabilities Act of 1990;

D.  Award Plaintiffs their reasonable attorneys' fees and costs;

E.  Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this 13th day of May, 2015.

*/s/ Ronald K. Lospennato*
Ronald K. Lospennato, Bar No. 32191
Concepcion "Koki" Otero, Bar No. 29372
Nell Hahn, Bar No. 22406
Kathryn E. Fernandez, Bar No. 33829

Advocacy Center
8325 Oak Street
New Orleans, LA 70118
504-208-4679
504-335-2890
rlospennato@advocacyla.org
kotero@advocacyla.org
kfernandez@advocacyla.org

*/s/ Katie M. Schwartzmann*

Katie M. Schwartzmann, Bar No. 30295
Eric A. Foley, Bar No. 34199

Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
katie.schwartzmann@macarthurjustice.org
eric.foley@macarthurjustice.org

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of May, 2015, a copy of the foregoing will be served on the Defendants by the "Notice of Electronic Filing" automatically generated by the Court's Electronic Filing System.  An electronic copy has also been sent to Trey Phillips, First Assistant Attorney General, P.O. Box 94005, Baton Rouge, LA 70804.

_____/s/ Ronald K. Lospennato__

Ronald K. Lospennato, Bar No. 32191

26