# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRANDON COOPER, LOUIS
DAVENPORT, RON GATLIN, KENNY
SWATT, STEPHEN ZERINGUE, and
WILLIAM PITZER,
on behalf of themselves and all other
similarly situated individuals                    CIVIL ACTION NO.: 14-507-SDD-EWD


                        VS.


KATHY KLIEBERT, Secretary of the
Louisiana Department of Health and
Hospitals, in her official capacity; and the
LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS


## CONSOLIDATED WITH


ADVOCACY CENTER and MONICA
JACKSON
                                           CIVIL ACTION NO.: 15-751-SDD-RLB


                        VS.


KATHY KLIEBERT[1], Secretary of the
Louisiana Department of Health and
Hospitals, in her official capacity; and the
LOUISIANA DEPARTMENT OF
HEALTH AND HOSPITALS

---

[1] In their *Joint Status Report* (Rec. Doc. 32 in 15cv751) the Parties note that Dr. Rebekah Gee has replaced Kathy Kliebert as Secretary of the Department of Health and Hospitals ("DHH").

33394

## <u>RULING ON MOTION TO DISMISS</u>[2]

Before the Court is Defendants' *Motion to Dismiss Plaintiffs' Complaint* brought on various Rule 12(b) grounds.[3]   Plaintiffs have filed an *Opposition*.[4]   For the following reasons, the Court denies the Defendants' *Motion*.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

This lawsuit was filed by Plaintiff, Monica Jackson, a pretrial criminal detainee who has been judicially determined incompetent to stand trial, on behalf of herself, and by associational Plaintiff, the Advocacy Center, on behalf of all such pretrial detainees who have not been promptly transferred to the Eastern Louisiana Mental Health System ("ELMHS" or "Facility").   Plaintiffs contend that Defendants, Secretary of the Louisiana Department of Health and Hospitals Rebekah Gee and the Louisiana Department of Health and Hospitals ("DHH"), have refused to accept physical custody of pretrial detainees who have been found incompetent to stand trial, resulting in their unlawful confinement and delayed access to restorative treatment in violation of their due process rights under the Fourteenth Amendment, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. §794.

Defendants deny Plaintiffs' claims asserting that, pursuant to Louisiana law, the administrator of ELMHS is statutorily required to refuse admission to any person to ELMHS, including pretrial criminal defendants judicially found incompetent to stand trial, if admission would result in overcrowding or the Facility would be unable to provide

---

[2] This Motion was originally filed in 15cv751.  Therefore, all Record Documents related to this Motion may be found in 15cv751.
[3] Rec. Doc. 13.
[4] Rec. Doc. 22.

appropriate care or treatment for the individual.[5]  Defendants claim that, in such instances, "the Incompetent individual will be provided the necessary restorative treatment at the facility where he resides."[6]   It is the Defendants' position that, because these pretrial detainees are able to receive treatment while confined in the prison facility awaiting transfer to ELMHS, the Plaintiffs have not been discriminated against or deprived of their due process rights.   Defendants further challenge the Plaintiffs' ability to assert their various claims considering similar litigation was previously litigated and resolved in the Eastern District of Louisiana.

Defendants now seek dismissal of Plaintiffs' claims for lack of associational standing, *res judicata* and collateral estoppel, failure to state a claim, and failure to join an indispensable party.  Defendants also seek dismissal under the doctrine of *forum non conveniens*.  Plaintiffs oppose the Defendants' motion.

## II.   LAW AND ANALYSIS

### A.  Rule 12(b)(1)

Defendants argue that the Advocacy Center lacks associational standing to pursue claims on behalf of mentally incompetent persons who are incarcerated.  Defendants' challenge is to the Court's subject matter jurisdiction which is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.  A Rule 12(b)(1) motion to dismiss is analyzed under the same rubric as a 12(b)(6) motion to dismiss.  The Court must accept all well pleaded facts in the *Complaint* as true and view them in the light most favorable to the

---

[5] La. R.S. 28.25.1.
[6] Rec. Doc. 13-1, p. 4.

plaintiff.[7]  While a 12(b)(6) motion is determined solely on the face of the pleadings, for purposes of a 12(b)(1) motion, the Court may look at evidence in the record.[8]  A motion to dismiss for lack of subject matter jurisdiction should only be granted if it appears that the plaintiff "cannot prove any set of facts" in support of the plaintiff's claims to relief.[9]  In ascertaining the likelihood of whether the plaintiff can "prove any set of facts" in support of his/her claims for relief, the Court may evaluate the *Complaint*, supplemented by undisputed facts, and the Court's resolution of disputed facts.[10]  Furthermore, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."[11]

When an organization, such as the Advocacy Center, brings a lawsuit on behalf of its members, it must establish associational standing by showing that: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."[12] Defendants argue that the Advocacy Center cannot satisfy the first prong because it has

---

[7] *Ass'n of Am. Physicians & Surgeons, Inc. v. Texas Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010)(quoting *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S.Ct. 849, 855, 99 L. Ed. 2d 1 (1988) (citations and internal quotations omitted)).

[8] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009)(quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008)).

[9] *Wagstaff v. United States Department of Education*, 509 F.3d 661, 663 (5th Cir. 2007)(quoting *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 351 (5th Cir. 2003)).

[10] *Ramming v. U.S.*, 281 F.3d 158, 161 (5th Cir. 2001)("Lack of subject matter may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.").

[11] *Id.*

[12] *Hunt v. Washington State Apple Advertising Com'n*, 432 U.S. 333, 97 S.Ct. 2434, 2441, 53 L.Ed. 2d 383 (1977).

33394

not shown that the incompetent individuals are members of the Center.   Instead, Defendants argue that they are constituents, most of whom "are unable to participate in and guide the organization's efforts."[13]  The Court disagrees.

Here, the Advocacy Center has alleged that it was established under the Protection and Advocacy for Individuals with Mental Illness Act ("PAIMI") 42 U.S.C. §§ 10801, *et seq.*[14]  By statute, the Advocacy Center must have an "advisory council" of which "at least 60 percent" of the members must "be comprised of individuals who have received or are receiving mental health services or who are family members of such individuals."[15]  The PAIMI statute further requires that the Advocacy Center have a "governing authority" with a multi-member governing board that consists of "members … who broadly represent or are knowledgeable about the needs of the clients served by the system."[16]  This category "shall be construed to include individuals who have received or are receiving mental health services and family members of such individuals."[17]   In the *Complaint*, the Advocacy Center has alleged that 90% of its advisory council is comprised of members who have received or are receiving mental health services, or are family members of such persons, and that it has a governing authority.[18]  As Judge Vance found in *Advocacy Center for Elderly and Disabled v. Louisiana* when faced with a similar challenge, "PAIMI organizations are required by federal statute to give its constituents a central role in its

---

[13] The Court further finds that Defendants' reliance on the Middle District of Louisiana decision*, Advocacy Center v. Stalder*, 128 F.Supp.2d 358 (M.D.La. 1999), to support its standing argument is misplaced.  Unlike the instant case, the issue before the *Stalder* court was not one of associational standing.

[14] Rec. Doc. 1, p. 4, ¶13. The Advocacy Center also alleged being created under other federal statutes, too; including the Protection and Advocacy of Individual Rights Program of the Rehabilitation Act of 1973, 29 U.S.C. § 794e and the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§ 15041-45.

[15] 42 U.S.C. § 10805(a)(6)(B)-(C).

[16] 42 U.S.C. § 10805(c)(1)(B)(i).

[17] 42 U.S.C. § 10805(c)(1)(B).

[18] Rec. Doc. 1, p. 5, ¶14.

management and activities."[19]   Accordingly, the Court finds that the Advocacy Center's constituents have standing to sue in their own right, and Defendants' challenge is hereby rejected.

### B.  Forum Non Conveniens

Defendants argue that Plaintiffs' lawsuit should be dismissed under the *forum non conveniens* doctrine because the Eastern District of Louisiana would be a more appropriate venue.  The "doctrine of forum non conveniens proceed[s] from [the] premise [that] … [i]n rare circumstances, federal courts can relinquish their jurisdiction in favor of another forum."[20]  This doctrine allows "a court to decline to exercise its jurisdiction if the moving party establishes that the convenience of the parties and the court and the interests of justice indicate that the case should be tried in another forum."[21]  "The *forum non conveniens* determination is committed to the sound discretion of the trial court."[22]  In conducting its analysis, the court must first determine "whether an available and adequate… forum exists."[23]  In making this determination, generally a court will consider: "amenability of the defendant to service of process and availability of an adequate remedy in the alternative forum".[24]  If the Court finds that an available and adequate forum exists, then the Court weighs "certain public and private factors" to determine whether dismissal is warranted.[25]   "The plaintiff's choice of forum is entitled to great weight in the balancing

---

[19] *Advocacy Center for Elderly and Disabled v. Louisiana*, 731 F.Supp.2d 583, 595 (E.D.La. 2010).
[20] *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).
[21] *Karim v. Finch Shipping Co., Ltd.*, 265 F.3d 258, 268 (5th Cir. 2001).
[22] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)(hereinafter "*Piper*").
[23] *In re Air Crash Disaster Near New Orleans, La. On July 9, 1982*, 821 F.2d 1147, 1165 (5th Cir. 1987).
[24] *DTEX, LLC v. BBVA Bancomer, S.A*, 508 F.3d 785, 793 (5th Cir. 2007).
[25] *Karim*, 265 F.3d at 268-69 (citing *Piper*, 454 U.S. at 255).

of factors and, unless the balance strongly favors the defendants, the plaintiff's choice of forum should not be overturned."[26]

The private interest factors, which relate primarily to the convenience of the litigants, are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."[27]   The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law."[28]   The defendant bears the burden of persuading the court that the suit should be dismissed on *forum non conveniens* grounds.[29]

While the Eastern District of Louisiana would be an adequate and available forum to litigate this case, the Court finds that the balance of private and public factors weigh against dismissal.   Although the Plaintiffs are located in New Orleans, the Defendants, defense counsel, and potential DHH and ELMHS witnesses are located within the Middle District.  This Court also has great familiarity with *Cooper v. Kliebert*, the lead case in this consolidated action, and the facts and the law that will govern the case.  Further, as expressed in a recent telephone conference with the Parties, the Court is ready to proceed to trial on August 1, 2016, which defeats any concerns of administrative delays

---

[26] *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986).
[27] *Id.* (citing *Piper*, 454 U.S. at 241, n. 6, 102 S.Ct. at 258, n. 6, 70 L.Ed.2d at 427, n. 6).
[28] *Id.*
[29] *DTEX, LLC*, 508 F.3d at 794 (citing *In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147, 1164 (5th Cir. 1987)(en banc)).

33394

due to Court congestion.  Accordingly, the Court finds that the Defendants have failed to carry their burden and their *Motion* seeking dismissal on *forum non conveniens* grounds shall be denied.

### C.  *Res Judicata* as to the Advocacy Center

Defendants argue that the Advocacy Center is barred from bringing this lawsuit because the claims in this *Complaint*[30] were previously litigated six years ago in the Eastern District of Louisiana in *Advocacy Center for the Elderly and Disabled v. Louisiana Department of Health and Hospitals* ("AC I").[31]   In AC I, pretrial detainees who had been found incompetent to stand trial and had been remanded to Feliciana Forensic Facility claimed that the defendants had violated their Fourteenth Amendment due process rights through their continued confinement in parish jails and failure to timely admit them to Feliciana Forensic Facility for restorative treatment.  The AC I plaintiffs also alleged that they were receiving inadequate mental health treatment in the parish prisons while awaiting their transfer.  District Judge Vance entered a preliminary injunction *Order* on August 9, 2010.[32]   Subsequently, on April 12, 2011, the parties entered into a Consent Decree whereby defendants agreed that, by July 10, 2011, each incompetent pretrial detainee would be admitted to the state hospital within thirty days of the order for inpatient treatment.[33]   For those incompetent pretrial detainees with emergency medical needs,

---

[30] Rec. Doc. 1.
[31] 731 F.Supp.2d 603 (E.D.La. 2010).
[32] Judge Vance granted in part and denied in part the AC I plaintiffs' motion for preliminary injunction.  The motion for preliminary injunction was granted with respect to plaintiffs' as-applied challenged to the continued detention of the incompetent pretrial detainees.  The motion was denied as to plaintiffs' facial challenge to the constitutionality of article 648 of the Louisiana Code of Criminal Procedure and La. R.S. 28:25.
[33] Rec. Doc. 13-3, p. 7.  The Consent Decree was subsequently modified by an Amended Consent Decree on November 15, 2011.  Rec. Doc. 22-1.

33394

they would be admitted within two working days.[34]   The Consent Decree was to remain in effect until July 10, 2014, at which time the case could be dismissed, if the defendants substantially complied with the terms.[35]   On December 8, 2014, Judge Vance found that defendants had substantially complied with the terms of the Consent Decree and dismissed the case with prejudice.[36]

The "rule of *res judicata* encompasses two separate but linked preclusive doctrines: (1) true *res judicata* or claim preclusion and (2) collateral estoppel or issue preclusion."[37]   Although the Fifth Circuit has generally held that a party cannot predicate a Rule 12(b)(6) motion on *res judicata* grounds, because it must be pleaded as an affirmative defense,[38]   "[d]ismissal under Rule 12(b)(6) on *res judicata* grounds may be appropriate when the elements of *res judicata* are apparent on the face of the pleadings."[39] "Federal law determines the *res judicata* effect of a prior federal court judgment."  Under federal law, *res judicata* "has four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions."[40]   The Fifth Circuit has adopted the "transactional test" to evaluate the fourth prong.[41]   Under this test, "the

---

[34] Rec. Doc. 13-3, p. 8.
[35] Rec. Doc. 13-3, p. 9.
[36] Rec. Doc. 13-4.
[37] *Comer v. Murphy Oil USA, Inc.*, 718 F.3d 460, 466 (5th Cir. 2013)(quoting *Test Masters*, 428 F.3d at 571)(emphasis added).
[38] *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570, n.2 (5th Cir. 2005)(citing 5 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure §1357 3rd ed. 2002)).  Because *res judicata* is an affirmative defense, the defendant bears the burden of proof. *Wells Fargo Bank, N.A. v. Samples*, 2015 WL 1470412, *2 (N.D. Tex. Mar. 30, 2015).
[39] *Dean v. Miss. Bd. of Bar Admissions*, 394 Fed. Appx. 172, 175 (5th Cir. 2010)(emphasis added).
[40] *Comer*, 718 F.3d at 467 (quoting *Singh*, 428 F.3d at 571).
[41] *Petro-Hunt, L.L.C. v. U.S.*, 365 F.3d 385, 395 (5th Cir. 2004).

preclusive effect of a prior judgment extends to all rights the original plaintiff had 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'"[42] "What constitutes a 'transaction' or 'series of transactions' is determined by weighing various factors such as 'whether the facts are related in time, space, origin, or motivation [;] whether they form a convenient trial unit [;] and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"[43] The critical issue is "whether the two actions under consideration are based on 'the same nucleus of operative facts,' and not 'the type of relief requested, substantive theories advanced, or types of rights asserted.'"[44]

Although the Court finds that the first three elements necessary for *res judicata* have been satisfied,[45] it is the fourth element that defeats Defendants' argument.  The nucleus of operative facts in the pending litigation differs from that of AC I.  In AC I, the Advocacy Center brought the litigation on behalf of those pretrial detainees on the competency restorative waiting list as of March of 2010.[46]  The Consent Decree at issue in AC I affected all pretrial detainees through December of 2014.  In the current lawsuit, the Advocacy Center has sued on behalf of 22 pretrial detainees who were awaiting competency restorative treatment as of October 23, 2015.[47]  Of those detainees, the longest wait time was 100 days; hence, there would have been no overlap with the

---

[42] *Id.* at 395-96(quoting Restatement (Second) of Judgments §24(1)(1982).

[43] *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 402 (5th Cir. 2009)(quoting *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 313 (5th Cir. 2004)(quoting *Petro-Hunt*, 365 F.3d at 395-96)).

[44] *In re Paige*, 610 F.3d 865, 872 (5th Cir. 2010) (internal citations and quotation marks omitted) (quoting *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000); *United States v. Davenport*, 484 F.3d 321, 326 (5th Cir. 2007)).

[45] Plaintiffs do not dispute that the Advocacy Center was a party in AC I, or that a court of competent jurisdiction rendered an order dismissing the case with prejudice.

[46] Rec. Doc. 13-2, p. 2, ¶3.

[47] Rec. Doc. 1, p. 3, ¶6.

33394

Consent Decree in AC I.[48]  The Advocacy Center is correct in its assertion that Defendants' "course of wrongful conduct" in 2015 forms the basis of this litigation and not their actions in 2010.[49]  Accordingly, Defendants' *Motion* seeking dismissal on *res judicata* grounds shall be denied.

### D.  Collateral Estoppel as to Plaintiff Monica Jackson

Defendants argue that Plaintiff Jackson is estoped from bringing this lawsuit under the doctrine of collateral estoppel or issue preclusion.  The doctrine of collateral estoppel "prevents the same parties or their privies from relitigating issues that were litigated and decided in a prior action."[50]  The requirements of collateral estoppel are: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[51]  Some cases recognize a fourth factor, "whether there are any special circumstances that make it unfair to apply the doctrine."[52]

Interestingly, Defendants fail to apprise the Court of the "identical issue" Jackson is estoped from litigating.  Aside from making the conclusory argument that "[t]he issue 'at stake' for Ms. Jackson is identical to the issue 'at stake' for the named plaintiff in the Previous Litigation," the Defendants fall far short from providing any substantive support for their collateral estoppel argument.[53]  In the *Complaint*, Jackson has asserted claims on her own behalf as a pretrial detainee who, although she was found to be incompetent to stand trial on October 1, 2015, remained confined for over thirty days in Orleans Parish

---

[48] Rec. Doc. 1, p. 3, ¶6, p. 8, ¶30.
[49] Rec. Doc. 22, p. 8.
[50] *Bradberry v. Jefferson Cty., Tx.* 732 F.3d 540, 548 (5th Cir. 2013).
[51] *Id.* (quoting *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005)).
[52] *Id.*
[53] Rec. Doc. 13-1, p. 10.

33394

Jail after being remanded to the state hospital.[54]  Jackson's issue of unlawful detention and delayed access to restorative treatment had not yet occurred at the time AC I was filed, while AC I was pending under the Consent Decree, or at the time AC I was dismissed.  Accordingly, the Court finds that Defendants' *Motion* seeking dismissal based on the doctrine of collateral estoppel shall be denied.

### E.  Rule 12(b)(6) Motion to Dismiss

Defendants contend that Plaintiffs have failed to allege sufficient facts to state a claim arising under the due process clause of the Fourteenth Amendment, the ADA, and the RA.  Defendants argue that they have not discriminated against any pretrial detainees found incompetent to stand trial.  Rather, their delay in placing these pretrial detainees at ELMHS is necessary to prevent overcrowding and to ensure that each individual "receives the appropriate care" while temporarily detained awaiting placement at ELMHS.[55]  Defendants assert that "DHH is not punishing Incompetent individuals and that Plaintiffs receive monitoring and treatment through the Community Forensic System while [a]waiting placement."[56]

At the motion to dismiss stage the Court must accept the well-plead factual allegations as true.  Therefore, the Defendants' simple denial of or disagreement with the factual allegations as plead carries no weight in the Court's determination of whether Plaintiffs have stated a claim.[57]  The Court views the *Complaint* in the light most favorable

---

[54] Rec. Doc. 1, p. 6, ¶¶20-21.
[55] Rec. Doc. 13-1, p. 17.
[56] Rec. Doc. 13-1, pp. 16-17.
[57] In their *memorandum*, Defendants repeatedly argue that they have not discriminated against any pretrial detainees who have been found judicially incompetent to stand trial.  Rec. Doc. 13-1, pp. 17-18. ("Defendants have not discriminated against Incompetent individuals because of any disability"; and "Incompetent individuals are not being excluded or denied benefits due to his or her disability.  Incompetent individuals are also not subjected to discrimination under any program or activity receiving financial assistance.").

to Plaintiffs, resolving all doubts in their favor.[58]  If the facts as plead allow the Court to
conclude that if Plaintiff's claims for relief are "plausible" the *Motion* must be denied.[59]

After reviewing the *Complaint*, the Court finds that Plaintiffs have alleged sufficient
facts to provide notice of their claims and to support their claims at this stage.  Federal
Courts around the country have repeatedly recognized that "an individual has a liberty
interest in being free from incarceration absent a criminal conviction."[60]    In *Oregon
Advocacy Center v. Mink*, the Ninth Circuit further recognized that "[i]ncapacitated
criminal defendants have liberty interests in freedom from incarceration and in restorative
treatment."[61]  Plaintiffs have alleged that, as pretrial detainees who have been found
incompetent to stand trial and who have not been convicted of any crimes, their
substantive due process rights guaranteed by the Fourteenth Amendment have been
violated by Defendants' policies, practices, and procedures.  Specifically, Defendants'
practices have caused Plaintiffs to be unlawfully incarcerated for longer than the
reasonable period of time necessary to determine their competency and have delayed
their access to restorative treatment.  After reviewing the *Complaint* and accepting all
well-plead facts as true, the Court finds that Plaintiffs have sufficiently pled a violation of
their substantive due process rights as guaranteed by the Fourteenth Amendment.

The Fifth Circuit has also explained that "the RA and the ADA are judged under
the same legal standards, and the same remedies are available under both acts."[62]  For

---

[58] *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988).
[59] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[60] *Otero v. Dart*, 2016 WL 74667, *7 (N.D.Ill. Jan. 7, 2016)(quoting *Oviatt By & Through Waugh v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).
[61] *Ore. Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1121 (9th Cir. 2003).
[62] *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). See also, *Bascle v. Parish*, 2013 WL 4434911, at *2 (E.D.La. Aug. 14, 2013)("A *prima facie* case under the RA is operationally identical to the test under the ADA.  Moreover, 'the ADA and Rehabilitation Act generally are interpreted *in pari materia*.' Indeed, the

33394

purposes of Defendants' motion to dismiss Plaintiffs' ADA and RA claims, Plaintiffs must have pled facts of the following three elements: (1) Plaintiffs are qualified individuals under the ADA; (2) Plaintiffs are being excluded from participation in, or, are being denied benefits, services, programs, or other activities for which a public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of their disability.[63]

The Court finds that Plaintiffs have pled that they are qualified individuals due to their mental illness and that DHH is both federally funded and a public entity.[64]  Plaintiffs have further pled that, in spite of their mental incompetency, they are being denied timely access to appropriate mental health treatment while incarcerated in parish jails, because such facilities are unable to provide the restorative mental health care necessary to meet their needs.[65]  They have further alleged that Defendants have refused and continue to refuse the prompt transfer of Pretrial Detainees who have been found incompetent to stand trial from parish jails to ELMHS, which deprives Plaintiffs of their right to restorative treatment.[66] The Court finds that Plaintiffs have satisfactorily pled enough facts "to state a claim to relief that is plausible on its face" arising under the ADA and RA.  Accordingly, Defendants' Rule 12(b)(6) *Motion* shall be denied.

### F.  Rule 12(b)(7)

Defendants argue that Plaintiffs have failed to join an indispensable party to this lawsuit and, therefore, Plaintiffs' claims should be dismissed.  In support of their position,

---

language in both the ADA and the RA is similar, and the remedies, procedures and rights available under the RA are also available under the ADA."(internal citations omitted)).
[63] *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004).
[64] Rec. Doc. 1, p. 9 ¶32; p. 19, ¶66; p. 7, ¶27.
[65] Rec. Doc. 1, p. 10, ¶35; p. 11, ¶40; pp. 13-14, ¶¶45-49; p. 17, ¶63.
[66] Rec. Doc. 1, p. 1, ¶1; p. 2, ¶2; p. 3 ¶¶5-7; p. 6, ¶¶20-21; pp. 8-9, ¶¶29-30; p. 17, ¶64.

33394

Defendants simply contend that they "have no control over the actions of those individuals and entities enforcing" the mental incapacity statutes.[67]   Pursuant to Rule 19 of the Federal Rules of Civil Procedure, "a person must be joined as a party when (1) the person's absence will prevent the court from 'accord[ing] complete relief among existing parties,' or (2) the person has an interest in the subject of the case, and disposing of it in the person's absence will either 'impair or impede the person's ability to protect the interest,' or create a risk of multiple or inconsistent obligations for an existing party because of the interest."[68]   While Rule 12(b)(7) permits dismissal for failure to join a necessary party under Rule 19, "courts are reluctant to grant motions to dismiss of this type."[69] A "Rule 12(b)(7) motion will not be granted because of a vague possibility that persons who are not parties may have an interest in the action.  In general, dismissal is warranted only when the defect is serious and cannot be cured."[70]  The party seeking a Rule 12(b)(7) dismissal bears the initial burden of establishing the necessity of the missing party.[71]  However, when "an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder."[72]   The Court finds that Defendants have failed to satisfy their burden of demonstrating that dismissal on Rule 12(b)(7) grounds is warranted.  On the

---

[67] Rec. Doc. 13-1, pp. 18-19.
[68] *New Hope Hospitality, LLC v. EH National Bank*, 2016 WL 1449518, *2 (N.D. Tex. Apr. 12, 2016)(quoting Fed. R. Civ. P. 19(a)(1)).
[69] 5C The Late Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1359 (3d ed. 2016).
[70] *Id.*
[71] *Hood ex rel. Mississippi v. City of Memphis, TN*, 570 F.3d 625, 628 (5th Cir. 2009)(quoting Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 13098(5th Cir. 2006))..  *See also*, 5C The Late Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure 1359 (3d ed. 2016)("[T]he burden is on the party moving under Rule 12(b)(7) to show the nature of the unprotected interests of the absent individuals or organizations and the possibility of injury to them or that the parties before the court will be disadvantaged by their absence.").
[72] *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986).

33394

most fundamental level, Defendants have failed to identify "who" the indispensable party

is.  Accordingly, Defendants' *Motion* to dismiss on Rule 12(b)(7) grounds is denied.

## III.    CONCLUSION

For the foregoing reasons, the Defendants' *Motion to Dismiss Plaintiffs'*

*Complaint*[73] is hereby DENIED.

Signed in Baton Rouge, Louisiana on July 18, 2016.


_____
**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[73] Rec. Doc. 13 (15cv751).

33394                                    16