# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRANDON COOPER, *et al.*, | * |
| | * |
| Plaintiffs | * CIVIL ACTION NO. 3:14-00507-SDD-RLB |
| | * |
| v. | * JUDGE DICK |
| | * |
| REBEKAH GEE, *et al.*, | * MAGISTRATE JUDGE BOURGEOIS |
| | * |
| Defendants | * |
| *Consolidated with* | * |
| ADVOCACY CENTER and MONICA JACKSON, | * |
| | * |
| Plaintiffs | * CIVIL ACTION NO. 3:15-00751-SDD-RLB |
| | * |
| v. | * JUDGE DICK |
| | * |
| REBEKAH GEE, *et al.*, | * MAGISTRATE JUDGE BOURGEOIS |
| | * |
| Defendants. | * |

## SETTLEMENT AGREEMENT

**I.    Introduction**:

In these consolidated actions, Plaintiffs, Brandon Cooper, Louis Davenport, Ron Gatlin, Kenny Swatt, Stephen Zeringue, William Pitzer, Tyrin Perkins, Dominick Perniciaro III, Scott Frye, and Ryan Kazemi are individuals who have been diagnosed with mental illness and found Not Guilty by Reason of Insanity (NGRI) of a criminal offense. Plaintiff Monica Jackson has been diagnosed with mental illness and was found incompetent to stand trial and ordered committed to Feliciana Forensic Facility, but was incarcerated in correctional facilities in Louisiana following that order. Plaintiff Advocacy Center is a private, federally-funded, non-

1

profit corporation, designated by Louisiana to serve as the State's protection and advocacy system for persons with disabilities and is a party in the instant consolidated cases as an associational plaintiff. Plaintiffs allege that Defendants have refused, and are continuing to refuse, to promptly accept physical custody of individuals found NGRI and Incompetent to Stand Trial who have been ordered to be admitted to an inpatient psychiatric facility for care and treatment. Plaintiffs allege that Defendants' refusal to accept physical custody has resulted and is resulting in prolonged and unconstitutional confinement in parish jails, in violation of Plaintiffs' rights to due process under the United States Constitution, Title II of the Americans with Disabilities Act of 1990, and Section 504 of the Rehabilitation Act of 1973.

The parties mutually desire to settle all of the claims asserted by the Plaintiffs in these consolidated cases without the need for further litigation and have therefore agreed to enter into this Settlement Agreement.

It is, therefore, ORDERED, ADJUDGED, AND DECREED:

1.      This Court has jurisdiction over Plaintiffs' claims against the Defendants set forth in the Complaint.

2.      This Settlement Agreement applies to the individuals defined as follows:

All individuals who, after having been found Not Guilty by Reason of Insanity or Incompetent to Stand Trial are remanded by a court to a mental health facility for treatment pursuant to Louisiana law.

## II.    Definitions:

3.      For the purposes of this Settlement Agreement, the following definitions shall apply unless a contrary meaning is indicated by the text:

    a.  <u>Incompetent Individual</u>: a person who has been found to lack the mental capacity to proceed to trial, is being held in jail, and has been ordered committed to Feliciana Forensic Facility (a.k.a. ELMHS) or other mental health facility pursuant to La. Code Crim. P. art. 648.

    b.  <u>NGRI</u>: a person who has been found Not Guilty by Reason of Insanity ("NGRI") and has been ordered by a court to be committed to a mental health facility pursuant to La. Code Crim. P. art. 654.

    c.  <u>NGRI Order</u>: an order entered by a criminal court subsequent to a finding of NGRI, committing an individual to a mental health facility pursuant to La. Code Crim. P. art. 654.

    d.  <u>Order for Competency Restoration</u>: an order committing an Incompetent Individual to a mental health facility issued pursuant to La. Code Crim P. art. 648(A)(2)(a).

    e.  <u>Mental health facility</u>: The Feliciana forensic facility at ELMHS designated by  La. R.S. 28:25.1 and any other facility to which NGRI or Incompetent Individual may be committed by an NGRI Order or an Order for Competency Restoration.

    f.  <u>Jail</u>: A parish or municipal detention facility in which NGRI and Incompetent Individuals are held, or may be held, pending admission to a mental health facility pursuant to an Order of Commitment or an Order

for Inpatient Treatment. This may include DOC facilities or facilities owned or operated by third-party contractors who have contracted with Parish Sheriffs to house pretrial detainees.

g.  Waiting list: the list of individuals described in paragraph 4 below.

h.  Diversion from the waiting list: Release from jail to a placement in the community.

i.  Sanity Commission: a commission appointed by a State court pursuant to La. Code Crim. P. art. 644 to examine a criminal defendant whose mental capacity to proceed to trial is in question, and to make findings concerning his competency to proceed to trial; or pursuant to Art. 650 in cases in which a defendant enters a combined plea of "not guilty and not guilty by reason of insanity" in order to make an examination as to the defendant's mental condition at the time of the offense.

j.  Sanity Commission Report: A report prepared by the Sanity Commission and submitted to the Court.

k.  District Forensic Coordinator (DFC): a mental health professional employed by the Louisiana Department of Health with at least a master's degree in social work, psychology or related field, such as counseling or nursing, and who has been trained by and is under the active supervision of the Medical Director of Defendant's Forensic Program or other Board-certified forensic psychiatrist.

l.  Brief Psychiatric Rating Scale (BPRS): a standardized 24-item psychiatric rating scale used to rate psychiatric symptoms and behaviors. The BPRS comprises 24 items that can be rated from not present (1) to extremely severe (7).

4

o.  <u>CAGE-AID questionnaire</u>: a brief standardized questionnaire that is a widely used method of screening for alcoholism, adapted to include other types of substance abuse.

p.  <u>Behavioral Health Assessment</u>: a face-to-face assessment by a psychiatrist, licensed psychologist, or District Forensic Coordinator for mental illness and addiction problems, using the Brief Psychiatric Rating Scale (BPRS) for mental health symptoms and the CAGE-AID for substance abuse issues. Also included in the term "Behavioral Health Assessment" is a review of any sanity commission report; medical and mental health history, if available; jail medical and mental health records; and assessment of other factors bearing on the acuity of the NGRI or Incompetent Individual's need for mental health and substance abuse treatment, including whether the NGRI or Incompetent Individual is receiving medication, whether the NGRI or Incompetent Individual is compliant with his or her medication, efficacy and side effects of medication, physical health needs, and extent to which he or she has received jail-based competency restoration services. The Behavioral Health Assessment will result in a determination as to whether an NGRI or Incompetent Individual has an Emergency Mental Health Need, as defined below.

q.  <u>Incompetent or NGRI Individual with Emergency Mental Health Needs</u>: an Incompetent Individual or NGRI who has a BPRS total score that is 50 or greater; who is determined by a psychiatrist designated by the ELMHS Chief of Staff to need immediate hospital treatment; or who has engaged, or is likely to engage, in acts of serious self-harm, acts of violence toward others, or significant acts of violence toward property. These individuals shall be admitted pursuant to Paragraph 8 of this Agreement.

**III.    Actions Required of Defendants**:

4.    Defendants shall maintain an updated cumulative list of all NGRI and Incompetent Individuals who are or have been housed in parish jails in Louisiana awaiting transfer to the forensic unit at ELMHS or other mental health facility or placement, on or after the date of the entry of this Settlement Agreement. The summary or list shall include, for each NGRI  and Incompetent Individual:

a.    The NGRI or Incompetent Individual's name and docket number.

b.    Whether the person is an NGRI or Incompetent Individual.

c.    The court that entered the NGRI Order or Order for Competency Restoration.

d.    The date of the Order.

e.    The date that LDH was notified of the Order.

f.    The dates and results of the Behavioral Assessment and whether the person was classified as an NGRI or Incompetent Individual with Emergency Mental Health Needs.

g.    The jail or other facility in which the NGRI or Incompetent Individual is being held, if known.

h.    The status of any paperwork that must be completed, pursuant to Louisiana Code of Criminal Procedure 648.1 and Louisiana Code of Criminal Procedure 654.1 prior to admission of the NGRI or Incompetent Individual to a mental health facility or community placement.

i.    The date of admission of the NGRI or Incompetent Individual to the forensic  unit  at ELMHS or other mental health facility or placement.

j.    Date of any NGRI or Incompetent Individual's removal from the list due to diversion or other reasons.

6

k.    The reasons for the NGRI or Incompetent Individual's removal from the list, including identification of the facility or other setting to which the NGRI or Incompetent Individual was transferred.

5.    Defendants shall maintain their current system for receiving Orders from criminal courts. Defendants previously notified all criminal courts in Louisiana that Orders should be sent promptly to ensure individuals can be quickly assessed. If any court sends an Order more than two days after it is signed, Defendants follow up with that court via letter to reinforce the importance of the timeliness of transmission.

6.    Defendants shall provide all NGRI Incompetent Individuals a Behavioral Health Assessment, as defined above, within five (5) calendar days of notification of an order for inpatient treatment or order of commitment. If the Behavioral Health Assessment is conducted by a DFC, as opposed to a psychiatrist or psychologist, the DFC must send the BPRS and CAGE-AID test results and documentation, and all other documentation described above that has been obtained, to the Forensic Aftercare Clinic (FAC) Medical Director, or another psychiatrist on staff designated by the Eastern Louisiana Mental Health System's (ELMHS) Chief of Staff, to interpret the results of the Behavioral Health Assessment in order to determine if the client needs emergency services.

7.    No later than two hundred forty-five days (245) from the date of this Order, Defendants shall have admitted all NGRI and Incompetent Individuals who are on the waiting list to ELMHS, another mental health facility, or community residential program, as of the date of this Order.

8.    Following the signing of this Order, Defendants shall admit all new NGRI or Incompetent Individuals with Emergency Mental Health Needs to a Mental Health

7

Facility within two (2) business days following completion of a Behavioral Health Assessment.

9. No later than two hundred forty-five days (245) from the date of this Order, Defendants shall admit all NGRI or Incompetent Individuals to the forensic unit at ELMHS or other mental health facility, or to an appropriate community based program within fifteen (15) calendar days following receipt of an Order, except that if Defendants demonstrate that unusual and exigent circumstances make it is impossible for them to admit an NGRI or Incompetent Individual within fifteen (15) calendar days, Defendants may have up to thirty (30) calendar days to admit the NGRI or Incompetent Individual. If the monthly reporting provisions below demonstrate admission times regularly exceeding 15 calendar days, the Plaintiffs may, at their option, call a meeting with Defendants to devise a remedial action plan to bring admission times within the 15-day threshold. Such a meeting shall not limit Plaintiffs' enforcement rights under paragraph 23.

10. Within ninety (90) days of this Order, Defendants shall implement procedures to help provide NGRI or Incompetent Individuals who are incarcerated in parish jails with expedited admission in the event of emergent mental health needs. Such procedures shall include, at a minimum, the following:

   a. Defendants shall establish and publicize to each sheriff or other personnel responsible for parish jails the name, telephone number, and email address of DHH personnel to contact in the cases concerning an Incompetent Individual or NGRI with Emergency Mental Health Needs. This publication shall further instruct each sheriff or other personnel responsible for parish jails of how to report an emergency to DHH

personnel and shall include a description of the factors that substantiate the emergency.

b.   Within forty-eight (48) hours of the report of an emergency to LDH, the ELMHS Chief of Staff or his Designee shall make the determination as to whether there is an actual emergency, and whether to admit the NGRI or Incompetent Individual to a Mental Health Facility on an expedited basis or take other action except when such reports occur between the close of business on Friday and 12:00 a.m. Sunday in which case determinations shall be made within seventy-two (72) hours.

11.   Defendants will continue their current intake assessment procedures as well as their post-admission assessment procedures to ensure appropriate placement for each individual. In the event of a discrepancy between Defendants' recommendation for an individual's placement and the court's order regarding that individual's placement, Defendants will provide the Plaintiffs with the individual's name and the information listed in Paragraph 4 of this agreement.

12.   Within one hundred and eighty (180) days of this Order, Defendants shall confer and meet to develop a plan for providing less restrictive placement options in which NGRI and Incompetent Individuals can, with the appropriate permission of the criminal court, receive clinically appropriate competency restoration or mental treatment placement options.  The parties will discuss potential legislative proposals to address needs or issues brought forth in this meeting. The implementation of any such plan shall be subject to concurrence of LDH executive management and budgetary appropriation by the legislature.

13.   In developing the plan described in paragraph 12, Defendants shall coordinate

9

a meeting of Defendants, Plaintiffs' counsel, Plaintiffs' expert, Dr. Joel Dvoskin, and any stakeholders Defendants deem necessary to discuss (a) needed research and analysis beyond that identified in the preceding paragraph, and (b) necessary elements of the strategic plan. Defendants shall consider, in addition to the funding of new placements identified in paragraph 18, opportunities to divert NGRI and Incompetency Individuals from the criminal justice system and to improve efficiencies in existing operations. To facilitate that meeting, Defendants, in addition to the information contained in paragraph 4 of this agreement, will provide to Plaintiffs' counsel relevant data in Defendants' possession regarding patient wait times and recidivism rates for persons placed on conditional release or returned to jail to stand trial after a determination that his or her competency has been restored.

14.    Plaintiffs shall seek alternate methods of funding Dr. Dvoskin's consultation, including but not limited to searching and applying for any grants. In the event alternate funding cannot be found, Defendants agree to pay Dr. Dvoskin his standard hourly rate of four hundred dollars ($400) per hour as well as travel expenses for a total of up to thirty-thousand dollars ($30,000). Dr. Dvoskin will not bill Defendants for any travel time.

15.    Defendants agree as follows to allocate necessary resources to create new placement options, in addition to and not in lieu of current placement opportunities, at clinically and legally suitable locations. Said locations will include community-based settings. Defendants agree to allocate resources to provide less restrictive placement alternatives to NGRI or Incompetent Individuals currently housed at ELMHS or incarcerated in parish jails and to prevent future NGRI or

Incompetent Individuals from being unnecessarily confined in a Mental Health Facility or jail, or detained in jail beyond the time periods provided for in this agreement.  To this end:

    a.    Within  two hundred forty-five (245) days from the date of this Order,  Defendants  shall increase the number of available beds at ELMHS by an amount necessary to accommodate the placement of individuals within the time frame established in Paragraph 9 of this Agreement;

    b.    Within two hundred forty-five (245) days from the date of this agreement, Defendants shall develop a plan to create supportive housing opportunities with appropriate mental health services for NGRI and Incompetent Individuals in locations throughout the Louisiana, which shall include, but not be limited to, New Orleans, Baton Rouge, Lafayette, Lake Charles, and Shreveport, including the possibility of an increase in community based beds.

16.    Jail-based competency restoration and mental health treatment provided in jails do not constitute new placement options required by the preceding paragraph.

**IV.    Reporting provisions**:

17.    Defendants shall submit a report to Plaintiffs' counsel on the first working day of each month beginning November 1, 2016. The report shall contain the information set forth in Paragraph 4 above, as well as the number of NGRI and Incompetent Individuals disaggregated by category of detention, gender, and the facility to which each Individual was admitted, and a description of any unusual and exigent circumstances that resulted in a delay in placement in excess of 15 days as

established in Paragraph 9. Such report shall also contain the name of any NGRI or Incompetent Individual for whom Defendants have received a report of a mental health emergency pursuant to paragraph 12 above, the facility in which the NGRI or Incompetent Individual was held at the time of the report, a description of the factors that were provided as substantiating the emergency, the identity of the ELMHS Chief of Staff or his Designee who made the determination as to whether there is an actual emergency, the time and date of such determination, and a description of any action taken by Defendants with regard to the claimed emergency.

18. Any current or future individual(s), as defined in Paragraph 2, shall have the right to seek enforcement of this Settlement Agreement in accordance with the procedures set forth herein, regardless of whether he or she was a named Plaintiff in this action.  In the event that NGRI or Incompetent Individuals seek to enforce this settlement based on the belief that Defendants have failed to discharge any obligations under this settlement, they will give written notice of such failure to Defendants' counsel, specifying the grounds that demonstrate such failure, and the Defendants will have thirty (30) days from receipt of such notice to come into or establish compliance with this settlement.  If an individual believes that the alleged failure has not been cured within the thirty (30) day period, they may seek in this Court specific performance of this settlement, together with attorneys' fees and/or costs recoverable under 42 U.S.C. §1988, but not contempt of court. The sole exception to the obligation of NGRI or Incompetent Individuals to provide the written notice required by this paragraph is a circumstance in which an alleged failure to comply with a term of this agreement warrants immediate injunctive relief, in which case defendants will receive the appropriate notice required when such

relief is sought.

19.   The reporting provisions in this agreement shall terminate after four (4) continuous years of Defendants' substantial compliance with the terms of this agreement.

## V.   ATTORNEYS' FEES AND COSTS

20.   Plaintiffs are a prevailing party. In full and final settlement of this matter, and within 90 days of the execution of this Settlement Agreement, Defendants will issue Plaintiff a settlement payment in the amount of $466,000 that will be inclusive of all attorneys' fees and costs incurred in connection with this action, up to and including the date of the entry of this Settlement Agreement.

21.   The parties agree that Plaintiffs may recover attorneys' fees under §1988 after final approval of this Settlement Agreement and satisfaction of the initial claim for attorneys' fees referred to in Paragraph 20 above, subject to the provisions of Section V of this Agreement.

22.   Such "future" claims for fees are limited to fees and costs for work performed in obtaining Defendants' compliance with the Settlement Agreement; obtaining attorney's fees merited under the Agreement; seeking a modification of the Settlement Agreement over Defendants' objection (if the Court modifies the Settlement Agreement at Plaintiff's Request), and/or opposing a modification requested by Defendants if the Court denies (or denies, in part) Defendants' request for a modification. If the Court denies Defendants' request for modification in part, Plaintiffs are only entitled to fees for the part(s) denied.

23.   In the absence of a filing for judicial enforcement or modification of the Settlement Agreement, Plaintiffs may not recover attorneys' fees. In the event that such a

motion is filed and Plaintiffs are the prevailing party, Plaintiffs' reserve the right to seek a reasonable award of fees for all work done in connection with the particular motion. Defendants reserve the right to oppose any such request.

24. The Parties agree that Plaintiffs are entitled to reasonable attorneys' fees if Defendants are found out of compliance by the Court after Plaintiffs file a motion for judicial enforcement or modification of the Settlement Agreement, provided that Plaintiffs' have given Defendants' notice and an opportunity to come into compliance pursuant to Paragraph 18 of this Settlement Agreement prior to filing their motion.

25. Reasonable attorneys' fees shall be awarded only to counsel of record and/or to any paralegals employed by counsel of record, the Advocacy Center, and/or the MacArthur Justice Center. (The person(s) claiming reimbursement of attorneys' fees shall hereinafter be referred to as "Claimant(s).")

26. In accordance with precedent of the U.S. Fifth Circuit Court of Appeals, §1988 attorneys' fees and costs can only be awarded for the work of a legal assistant or paralegal if that work is legal, as opposed to clerical. Work that is legal in nature includes, for example, factual investigation, locating and interviewing witnesses, assistance with depositions, interrogatories and document production, compilation of statistical and financial data, checking legal citations and drafting correspondence. Activities that are purely clerical in nature include, for example, typing, copying, filing, or delivering pleadings. Pure clerical or secretarial work may not be billed at an attorney's or paralegal's rate.

27. The cost of services performed by paralegals or other persons supervised by counsel of record and/or the Advocacy Center are to be included in the assessment and award

14

of attorneys' fees if the following criteria are met:

    a.  The services performed must be legal in nature;

    b.  The performance of such services must be supervised by an attorney;

    c.  The qualifications of the person performing the services must be specified in the application or motion requesting an award of fees in order to demonstrate that the person is qualified by virtue of education, training, or work experience to perform substantive work;

    d.  The nature of the services performed by the person must be specified in the application/motion requesting an award of fees in order to permit a determination that the services performed were legal rather than clerical in nature;

    e.  The amount of time expended by the person in performing the services must be reasonable and must be set out in the motion; and

    f.  The amount charged for the time spent by the person must reflect reasonable community standards of remuneration.

28.    Costs available under 28 U.S.C. §1920 will be reimbursed whenever Plaintiffs are entitled to recover attorneys' fees and costs as described above.

29.    Other costs will only be reimbursed if the evidence accompanying the claim shows that they are of the type of costs that would normally be reimbursed by a fee-paying client and that the costs were necessarily incurred in the litigation.

30.    Mileage for necessary travel will be reimbursed at the rate established annually (on a fiscal calendar) by the State Division of Administration and will be reimbursed at the rate in effect at the time of travel.

31.    Attorneys' fees for travel time will be paid at 50% of the claimant's billable rate.

32.     Counsel of record for the Plaintiffs, at the time the instant Settlement Agreement is entered, bill at the following rates (which are fixed for the calendar year 2016): Ronald Lospennato, $375/hour; Ellen Hahn, $375/hour; Katie Schwartzmann, $350/hour; Eric Foley, $240/hour; Kathryn Fernandez, $240/hour; Laura Thornton, $200/hour.

33.     The billable rates of the above-named counsel may increase annually (beginning January 1, 2017) in accordance with commensurate increase in the relevant legal market (Baton Rouge, Louisiana).

34.     However, counsels' billable rates (for purposes of claims in this case under §1988) shall not increase more than $25.00 in a calendar year.

35.     Billable rates for any legal personnel other than current counsel of record, as listed above in paragraph 37, must comport with the prevailing rates in the relevant legal market (Baton Rouge, Louisiana), and may increase annually (beginning January 1, 2017) in accordance with commensurate increases in the relevant legal market, but not to exceed $25.00 in a calendar year.

36.     Any annual increases by attorneys other than current of record, as listed above in paragraph 37, shall not exceed $25.00 in a calendar year.

37.     Any annual increases by non-lawyers shall not exceed $12.50 in a calendar year.

38.     Any future claims for attorneys' fees and costs and appropriate documentation supporting the claim shall be presented to counsel for defendants within thirty (30) days of entry of the applicable Judgment or Order, unless the parties agree on, or the Court by order permits, a longer period of time.

39.     The evidence accompanying any and all claims for attorneys' fees and costs must expressly show and, if requested by defendants, certify under penalty of perjury, that all costs and hours claimed were incurred in this case and that no cost or hour claimed has been

previously reimbursed in this litigation or any other litigation against the State of Louisiana, any of its agencies, officials, and/or employees.

40.    If the parties cannot amicably agree on a future claim of attorneys' fees and costs pursuant to paragraph 38 above, it shall be the responsibility to the Plaintiffs to document, via time and date stamped e-mail to defense counsel, the official end to the negotiation.

41.    In the event that the parties cannot amicably resolve a future claim for attorneys' fees and costs, Plaintiffs must file a Motion for Attorneys' Fees and Costs within thirty (30) days of the end of the negotiation, as described in paragraph 40 above.

42.    Defendants have and reserve their right to question and/or challenge the hours billed by any claimant, exercise of billing judgment by any claimant, and necessity of costs requested by any claimant.

43.    Defendants have and reserve their rights to question and/or challenge the reasonableness of the billable hourly rates of any claimant.

## CAP ON ATTORNEYS' FEES AND COSTS

44.    In light of the four (4) year limit on this Settlement Agreement and so the State may budget accurately, the parties have agreed to a maximum amount of attorneys' fees and costs that may be awarded during the course of this litigation.

45.    The total amount of attorneys' fees that may be awarded in this case after final approval of this Settlement Agreement and satisfaction of the initial claim for attorneys' fees referred to in Paragraph 20 above shall not exceed $300,000.

46.    Counsel for Defendants shall include in each Receipt, Release, and Indemnity Agreement signed by Plaintiffs' counsel as described above, an accounting of how much has been paid in attorneys' fees and costs up to and including the sum received on that date and the remaining balance on the cap.

17

## VI.    Miscellaneous

47.    This Settlement Agreement represents the entire agreement between the parties.

48.    This Settlement Agreement is a settlement of disputed claims and shall not be considered to be an admission of liability by any party.

49.    Each party to this Settlement Agreement was assisted by counsel, understands the meaning and consequences of the Settlement Agreement, and executes the Settlement Agreement of his, her, its, or their own free will.

50.    This Court shall retain jurisdiction to enforce this Settlement Agreement until this matter is dismissed after four (4) continuous years of Defendants' substantial compliance with this Settlement Agreement.

51.    Each party to this Settlement Agreement has cooperated in the preparation and drafting of this Settlement Agreement. Accordingly, the Settlement Agreement shall  not  be construed more strictly against any party than it is against any other party.

52.    The claims compromised, settled, and resolved by this Settlement Agreement include all claims that were raised in the Original or Amended Complaints filed in this action, as well as all claims precluded by governing law, on behalf of the Plaintiffs defined in Section I above. This agreement does not compromise, settle or resolve, and shall in no way impair, any claims that may arise after the end of this Settlement Agreement.

53.     In consideration of the commitment contained herein, and the benefits provided or to be provided hereunder, this Settlement Agreement shall fully resolve, extinguish, and finally and forever bar, and the Plaintiffs' hereby release, all claims described in paragraph 51 above. Upon final approval by the court, this Settlement Agreement

shall be fully binding on, and fully extinguish and release the claims of, all Plaintiffs, and may be plead as a full and complete defense to any subsequent action or other proceeding that arises out of the claims released and discharged by this Settlement Agreement.

54.    Nothing in this Settlement Agreement is intended to affect any rights of any party or non-party other than to the extent specifically addressed by the terms of this Settlement Agreement.


SO ORDERED this_____day of_____, 2016, in Baton Rouge, Louisiana.

_____
SHELLY D. DICK
UNITED STATES DISTRICT JUDGE

Approved:

s/ Ronald K. Lospennato

**Ronald K. Lospennato, Bar No. 32191**
**Kathryn E. Fernandez, Bar No. 33829**
**Laura Thornton, Bar No. 36053**
Advocacy Center
8325 Oak Street
New Orleans, LA 70118 504-208-4679
504-335-2890
rlospennato@advocacyla.org
nhahn@advocacyla.org
kfernandez@advocacyla.org
lthornton@advocacyla.org

s/ Katie Schwartzmann

**Katie Schwartzmann, Bar No. 30295**
**Eric Foley, Bar No. 34199**
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER
4400 S. Carrollton Ave.
New Orleans, LA 70119 Telephone: (504) 620-2259
E-mail: katie.schwartzmann@macarthurjustice.org

s/ Nell Hahn

**Nell Hahn, Bar No. 22406**
ADVOCACY CENTER OF LOUISIANA
600 Jefferson Street, Suite 812
Lafayette, LA 70501
Telephone: (337) 237–7380, ext. 11
Facsimile: (337) 205-6166
E-mail: nhahn@advocacyla.org

Dated: <u>September 1, 2016</u>

Approved:


s/ Kimberly Sullivan_____
KIMBERLY SULLIVAN, La. Bar Roll No. 27540
NEAL ELLIOTT, La. Bar Roll No. 24084
JENNA GERMANY YOUNG, La. Bar Roll No. 25942
STEPHANIE BORGHARDT, La. Bar Roll No. 33465
RYAN ROMERO, La. Bar Roll No. 35987
Louisiana Department of Health
Bureau of Legal Services
628 North 4th Street (70802)
P.O. Box 3836
Baton Rouge, Louisiana  70821-3836
(225) 342-1128 (Telephone); (225) 342-2232 (Facsimile)


 Dated:  September 1, 2016