UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRANDON COOPER, et al.,** | * |
| Plaintiffs | * CIVIL ACTION NO. 3:14-00507-SDD-RLB |
| v. | * CHIEF JUDGE DICK |
| **COURTNEY N. PHILLIPS, et al.,** | * MAGISTRATE JUDGE BOURGEOIS |
| Defendants | * |
| *Consolidated with* | * |
| **ADVOCACY CENTER and MONICA JACKSON,** | * |
| Plaintiffs | * CIVIL ACTION NO. 3:15-00751-SDD-RLB |
| v. | * CHIEF JUDGE DICK |
| **COURTNEY N. PHILLIPS, et al.,** | * MAGISTRATE JUDGE BOURGEOIS |
| Defendants. | * |

**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR CONTINUED REPORTING AND JURISDICTION OVER THE SETTLEMENT AGREEMENT AND NOTICE OF NEGOTIATIONS RELATED TO A SUPPLEMENTAL AGREEMENT**

NOW INTO COURT, by and through undersigned counsel comes Plaintiff Disability Rights Louisiana (DRLA)[1] and consolidated Plaintiffs, Brandon Cooper, Louis Davenport, Ron Gatlin, Kenny Swatt, Stephen Zeringue, William Pitzer, Monica Jackson, Tyrin Perkins, Dominick Perniciaro, III, Scott Frye, and Ryan Kazemi (a.k.a. Ryan Kasami).[2] Plaintiff DRLA is a private,

---

[1] Formerly the Advocacy Center.
[2] These individuals are consolidated plaintiffs, see ECF No. 65 and ECF No. 150, who were either found incompetent to proceed or NGRI and were awaiting mental health care treatment placement at the time of filing. These individual plaintiffs' criminal cases do not remain in the same procedural posture as they were at the time of

federally funded, non-profit corporation, designated by Louisiana to serve as the State's protection and advocacy system for persons with disabilities and is a party in the instant consolidated case as an associational plaintiff.

On November 16, 2016, this Court signed a Settlement Agreement[3] to resolve the consolidated actions alleging that Defendants Rebekah Gee[4] and Louisiana Department of Health (LDH)[5] were failing to promptly provide requisite mental health placements for people found incompetent to stand trial (hereinafter "incompetent") or people found not guilty by reason of insanity (hereinafter "NGRI"). The Settlement Agreement provides for, *inter alia*:

- a procedure for coordinating with criminal courts regarding orders related to incompetent and NGRI individuals;

- Behavioral Health Assessments (BHAs) conducted by a psychiatrist, licensed psychologist, or District Forensic Coordinators (DFCs), within a specified timeframe, for NGRI and incompetent individuals to assess the acuity of mental illness and addiction problems;

- timelines for transferring incompetent and NGRI individuals from jail to mental health placements including expedited admission of individuals with emergency mental health needs, as determined by the BHA;

- intake and post-admission procedures to ensure appropriate treatment placements;

---

filing, but as plaintiffs with standing at the time of entry of the Settlement Agreement, they continue as plaintiffs in efforts to enforce and maintain the terms of the Settlement Agreement.
[3] ECF No. 200.
[4] Rule 25(d) of the Federal Rules of Civil Procedure provides for the automatic substitution of a public officer's successor "when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Accordingly, Dr. Courtney N. Phillips, who is serving as the successor Secretary of the Louisiana Department of Health since April 2020, is automatically substituted for Dr. Rebekah Gee in the caption.
[5] Formerly Louisiana Department of Health and Hospitals.

2

- development of less restrictive placement options for NGRI and incompetent individuals;
- maintenance of lists and regular reporting to verify compliance regarding incompetent and NGRI individuals in jails awaiting mental health placements, and timeliness of transfer and BHAs.

This Court "retain[s] jurisdiction to enforce this Settlement Agreement until this matter is dismissed after four (4) continuous years of Defendants' substantial compliance with this Settlement Agreement."[6] The parties agree that Defendants have been unable to maintain substantial compliance with the Settlement Agreement including providing BHAs and placements of incompetent and NGRI individuals within the timelines required by Paragraphs 6, 8 and 9 of the Settlement Agreement due to the ongoing COVID-19 pandemic.[7]

The parties also agree that the COVID-19 pandemic was and remains the major driver of the failure to maintain substantial compliance with the Settlement Agreement. At the beginning of the pandemic, in March and April 2020, Eastern Louisiana Mental Health System (ELMHS) suffered a widespread infection from COVID-19 of nearly 20% of the patient population. Based on information received from Defendants on November 6, 2020, COVID-19 caused the death of eleven (11) patients, just under 2% of the patient population at ELMHS. Jails entered periods of lockdown restricting visitor access and halting transports. This combination of factors made previous systems of patient evaluation and treatment of people found incompetent and NGRI dangerously impractical and caused significant increases to the wait list of individuals awaiting transfer to a mental health placement. The March 2020 reports[8] from Defendants reflected a wait

---

[6] ECF No. 200 at 18, Para. 50.
[7] ECF No. 200 at 7–8.
[8] Exhibit 1, Redacted Summary Sheet of March 2020 Report.

3

list of sixteen (16) people found incompetent and one (1) person found NGRI incarcerated and awaiting transfer when ELMHS stopped accepting admissions in mid-March. By April 15, 2020, Defendants reported there were twenty-two (22) people found incompetent and one (1) person found NGRI incarcerated in local jails awaiting mental health treatment. The overwhelming majority of these people had already waited longer than the 15-day time limit required by Paragraph 9 of the Settlement Agreement. In fact, most wait times on the April 15, 2020 wait list exceeded the thirty (30) calendar day limit provided for "unusual and exigent circumstances" under Paragraph 9 of the Settlement Agreement.

In mid-April 2020, Louisiana Department of Health (LDH) informed Plaintiffs' counsel that admissions to ELMHS and other community placements had been frozen in response to the unprecedented public health crisis caused by COVID-19. LDH proposed a temporary stay of the Settlement Agreement. Plaintiffs requested LDH provide information related to the development of a plan to comply with the terms of the Settlement Agreement and supporting documentation considering the conditions created by COVID-19.[9] LDH responded with some, but not all of the requested information.[10] After further discussion, Plaintiffs re-urged the request for a proactive remedial plan from LDH for returning to substantial compliance with the Settlement Agreement, and requested outstanding and additional information in July 2020.[11]

ELMHS reported that admissions began again in August 2020 on a limited basis. Despite the resumption of admissions to ELMHS, the wait list remains extensive. The September 2020 reports[12] provided by LDH included fifty-two (52) people found incompetent and three (3) people

---

[9] Exhibit 2, May 20, 2020 Letter to LDH.
[10] Exhibit 3, June 5, 2020 Letter to DRLA and MacArthur Justice Center.
[11] Exhibit 4, July 15, 2020 Letter to LDH.
[12] Exhibit 5, Redacted Summary Sheet of September 2020 Report.

found NGRI on the wait list.[13] Forty-five (45) out of the fifty-two (52) people found incompetent and all three (3) people found NGRI had been waiting over fifteen (15) days from the date a court order was received.[14] The September 2020 reports also list people who were placed off the wait list. Twenty nine (29) people found incompetent were placed off the wait list, and twenty-five (25) of these people had been on the list for longer than fifteen (15) days from the date a court order was received. All three (3) people found NGRI who were placed off the wait list also waited longer than fifteen (15) days from the date a court order was received.

To be clear, Plaintiffs are not and have never advocated for LDH to abandon testing and distancing measures in favor of clearing and preventing treatment wait lists. However, new procedures must be developed, including determining mechanisms for providing treatment to people found incompetent and people found NGRI in safer non-congregate settings and detailed protocols for providing treatment during peaks of the pandemic.

Additionally, LDH reported that BHAs resumed in July 2020. However, details of how BHAs are being conducted, and how DFCs are working around the issues of jail closures have not been resolved.[15] In order to come into compliance with the Settlement Agreement, LDH must develop detailed protocols with local jails for how to determine the acuity of people found

---

[13] The September 2020 report for individuals found incompetent included a total of eighty-one (81) names, and twenty-nine (29) of these people were placed off the wait list. The September 2020 report for individuals found NGRI included a total of six (6) names, and three (3) of these people were placed off the wait list.

[14] As raised elsewhere, the acuity of people on the waitlist is not being assessed consistently through BHAs including a period of time when BHAs ceased completely. The lack of consistent BHAs raises the possibility that Defendants may also be consistently noncompliant with the 2-business day timeline for emergency admissions required by Paragraph 8 of the Settlement Agreement. This possibility is supported by the September 2020 report of those found incompetent where even among those who did receive BHAs, all six (6) individuals labelled "emergency admit" waited beyond the 2-business day timeline as of the print date of the report (October 6, 2020).

[15] See, e.g., Exhibit 6, list of jails reflecting limitations in DFC access.

incompetent and people found NGRI in light of COVID-19 conditions including lockdowns, and provide timely treatment based on the level of acuity.

Given the wait lists and continued inconsistencies in providing BHAs, LDH has not been in substantial compliance with the provisions of the Settlement Agreement since March 2020. Because Defendants have been unable to maintain substantial compliance due to the current unprecedented COVID-19 health crisis, the parties agree that the reporting provisions of the Settlement Agreement and this Court's jurisdiction should not terminate on November 16, 2020.

The advent of COVID-19 was an unprecedented and unanticipated global event. Because the parties agree that Defendants have been unable to maintain substantial compliance with the Settlement Agreement, rather than involve the Court in contentious litigation, the parties are continuing negotiations to reach an agreement to supplement the Settlement Agreement. The parties anticipate that this supplemental agreement will outline immediate steps that LDH can take towards achieving substantial compliance with the Settlement Agreement in light of the conditions created by COVID-19.

The Plaintiffs therefore request that this Court continue the reporting provisions and the Court's jurisdiction over the enforcement of the original Settlement Agreement beyond November 16, 2020, until such time an agreement may be reached by the parties or negotiations reach an impasse requiring the intervention of the Court.

Respectfully Submitted,

/s/ Ronald Lospennato

Ronald K. Lospennato, Bar No. 32191
Evelyn Chuang, Bar No. 38993*
Disability Rights Louisiana (formerly known as the Advocacy Center)
8325 Oak Street
New Orleans, LA 70118
Ph: 504-208-4679
Fax: 504-335-2890
rlospennato@disabilityrightsla.org
echuang@disabilityrightsla.org

/s/ Eric Foley

Eric Foley, Bar No. 34199
Elizabeth Cumming, Bar No. 31685*
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.
New Orleans, LA 70119
Ph: 504-620-2259
Fax: 504-208-3133
Eric.Foley@macarthurjustice.org
Elizabeth.cumming@macarthurjustice.org

*Counsel for Plaintiffs.*

*Motions to enroll pending at ECF Nos. 206, 207.