UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRANDON COOPER, et al., On Behalf of Themselves and All Other Similarly Situated Individuals | CIVIL ACTION |
| | NO. 14-507-SDD-RLB |
| VERSUS | |
| | Consolidated with |
| COURTNEY N. PHILLIPS, Secretary of The Louisiana Department of Health and Hospitals, in her official capacity, and the DEPARTMENT OF HEALTH AND HOSPITALS | NO. 15-751-SDD-RLB |
| | Pertains to both cases |

## ORDER

Before the Court is Plaintiffs' Motion to Reopen Discovery and Rule to Show Cause Why Defendants Should Not be Held in Contempt ("Motion to Reopen Discovery"). (R. Doc. 217). The motion is opposed. (R. Doc. 221). Plaintiffs filed a Reply. (R. Doc. 227).

**I.    Background**

In these consolidated actions, Plaintiffs, Brandon Cooper, Louis Davenport, Ron Gatlin, Kenny Swatt, Stephen Zeringue, William Pitzer, Tyrin Perkins, Dominick Perniciaro III, Scott Frye, and Ryan Kazemi are individuals who have been diagnosed with mental illness and found Not Guilty by Reason of Insanity ("NGRI") of a criminal offense. (R. Doc. 203 at 1). Plaintiff Monica Jackson has been diagnosed with mental illness and was found incompetent to stand trial and ordered committed to Feliciana Forensic Facility, but was incarcerated in correctional facilities in Louisiana following that order. (R. Doc. 203 at 1). Plaintiff Advocacy Center (now Disability Rights Louisiana) is a private, federally-funded, non-profit corporation, designated by Louisiana to serve as the State's protection and advocacy system for persons with disabilities and is a party in the instant consolidated cases as an associational plaintiff. (R. Doc. 203 at 1-2).

Plaintiffs allege that Defendants have refused, and are continuing to refuse, to promptly accept physical custody of individuals found NGRI and Incompetent to Stand Trial who have been ordered to be admitted to an inpatient psychiatric facility for care and treatment. (R. Doc. 203 at 2). Plaintiffs allege that Defendants' refusal to accept physical custody has resulted and is resulting in prolonged and unconstitutional confinement in parish jails, in violation of Plaintiffs' rights to due process under the United States Constitution, Title II of the Americans with Disabilities Act of 1990, and Section 504 of the Rehabilitation Act of 1973. (R. Doc. 203 at 2).

On September 2, 2016, the parties moved for entry of a Court-approved settlement agreement ("Settlement Agreement" or "Consent Decree"). (R. Doc. 196). The Court entered the Settlement Agreement into the record on November 17, 2016. (R. Doc. 203). Under Paragraph 50 of the Settlement Agreement, the Court retained jurisdiction to enforce the Settlement Agreement "until this matter is dismissed after four (4) continuous years of Defendants' substantial compliance with this Settlement Agreement." (R. Doc. 203 at 18).

Given the arrival of the COVID-19 pandemic in Louisiana, beginning in March 2020, Plaintiffs requested information regarding delays and cessations in transfers, as well as infection control efforts at Eastern Louisiana Mental Health System ("ELMHS"), and sought implementation of a remedial action plan under Paragraph 9 of the Settlement Agreement.[1] (*See* R. Docs. 217-3, 217-4, 217-5, 217-6). Defendants responded by providing certain information, and stated that they had commenced the implementation of a plan approved by state epidemiology to resume admissions to ELMHS on a limited basis. (R. Doc. 217-7, 217-8).

---

[1] Under Paragraph 9 of the Settlement Agreement, "[i]f the monthly reporting provisions below demonstrate admission times regularly exceeding 15 calendar days, the Plaintiffs may, at their option, call a meeting with Defendants to devise a remedial action plan to bring admission times within the 15-day threshold." (R. Doc. 203 at 8, ¶ 9).

On November 16, 2020, Plaintiff filed an Unopposed Motion for Continued Reporting and Jurisdiction Over the Settlement Agreement and Notice of Negotiations Related to a Supplemental Agreement. (R. Doc. 208). Among other things, the parties represented that "Defendants have been unable to maintain substantial compliance with the Settlement Agreement including providing [Behavioral Health Assessments ("BHAs")] and placements of incompetent and NGRI individuals within the timelines required by Paragraphs 6, 8 and 9 of the Settlement Agreement due to the ongoing COVID-19 pandemic." (R. Doc. 208 at 2). Plaintiffs requested the Court to "continue the reporting provisions and the Court's jurisdiction over the enforcement of the original Settlement Agreement beyond November 16, 2020, until such time an agreement may be reached by the parties or negotiations reach an impasse requiring the intervention of the Court." (R. Doc. 208 at 4). The district judge granted the motion, stating that "the Court's jurisdiction over the settlement agreement and the reporting provisions therein shall remain in effect pending the parties' negotiations." (R. Doc. 210).

On February 22, 2021, Plaintiffs circulated a proposed draft supplement to the Settlement Agreement, which outlines specific actions to assist Defendants in returning to compliance with the Settlement Agreement and the development of supporting documentation. (R. Doc. 217-10). The parties then negotiated the terms of this proposed supplement. (R. Doc. 217-1 at 12-14; *see* R. Docs. 217-10, 217-11, 217-12, 217-13, 217-14). Plaintiffs assert that Defendants' "redlined, detailed counter proposal" provided on May 7, 2021 "made clear that they had no interest in negotiating a supplemental settlement agreement in good faith." (R. Doc. 217-1 at 14).

On June 12, 2021, Plaintiffs filed the instant Motion to Reopen Discovery. (R. Doc. 217). There is no dispute that the Louisiana Department of Health and Hospitals ("LDH") remained in substantial compliance with the Settlement agreement from the onset of the Settlement

3

Agreement in November 2016 to March 2020. There is also no dispute that LDH is currently not in compliance with Paragraphs 6, 8, 9, 15 of the Settlement Agreement, which respectively require Defendants to do the following:

- Provide all NGRI or Incompetent Individuals a Behavioral Health Assessment ("BHA") within five (5) calendar days of notification of an order for inpatient treatment or order of commitment.  (R. Doc. 203 at 7, ¶ 6).

- Admit all new NGRI or Incompetent Individuals with Emergency Mental Health Needs to a Mental Health Facility within two (2) business days following completion of a BHA. (R. Doc. 203 at 7-8, ¶ 8).

- Admit all NGRI or Incompetent Individuals to the forensic unit at Eastern Louisiana Mental Health System ("ELMHS") or other mental health facility, or to an appropriate community-based program within fifteen (15) calendar days following receipt of an Order. (R. Doc. 203 at 8, ¶ 9).

- Create new placement options, in addition to and not in lieu of current placement opportunities, at clinically and legally suitable locations – including community-based settings – to prevent unnecessary detention of NGRI and Incompetent Individuals in jails or confinement in Mental Health Facilities. (R. Doc. 203 at 10-11, ¶ 15).

(R. Doc. 217 at 2-3; R. Doc. 221 at 1-2, 17-18).

Plaintiffs argue that the parties' "efforts to confect an agreement designed to assist the Defendants in returning to compliance with the goals of the Settlement Agreement in light of the COVID-19 pandemic and the shifts in hospital functioning attendant on social distancing, quarantine and other infection control measures" have failed. (R. Doc. 217 at 3). Accordingly, Plaintiffs request that the Court re-open discovery to allow Plaintiffs to seek information related to the following categories of discovery:

- NGRI Individuals who were discharged to community placements.

- Tracking COVID-19 testing, vaccinations, quarantines, contract tracing, and other infection control measures employed at ELMHS and community placements, and for NGRI and Incompetent Individuals on the waitlist awaiting transfer to ELMHS or other mental health facility or to an appropriate community-based program.

- Policies and procedures related to tracking BHA provision at all jails within Louisiana.

- Auditing or reviewing of ELMHS' intake, post-admission assessment, and discharge policies and procedures.

- Defendants' planning efforts to address or resolve the waiting lists of NGRI and Incompetent Individuals in local jails awaiting transfer to a mental health placement.

- Halting or limiting admission and / or discharge to and from ELMHS and/or community placements.

- Patient flow between local jails, ELMHS and community placements.

- Planning for creation of additional placements, including budget requests, Requests for Proposals, and assessments of potential placement sites.

(R. Doc. 217 at 4-5). Plaintiffs also seek a hearing "for a rule to show cause why Defendants should not be held in contempt for failure to comply with the Settlement Agreement." (R. Doc. 217 at 6).

In opposition, Defendants argue that they should not be held in contempt because LDH's compliance issues arise "solely from restrictions imposed due to the unforeseeable, unprecedented world-wide COVID-19 pandemic," and LDH had otherwise "been in substantial compliance for 3.5 years until it had to follow Center for Disease Control and Prevention ("CDC") guidelines for congregate settings, as well as local quarantine protocols and mandates to lessen the spread of COVID-19 to protect the public, including employees working in congregate settings and individuals in congregate settings." (R. Doc. 221 at 1-2). Defendants argue that substantial compliance with the Settlement Agreement became impossible in light of the restrictions on the various components of the criminal justice system emplaced during the COVID-19 pandemic, and provide significant details regarding their efforts to comply with the Settlement Agreement. (R. Doc. 221 at 3-19). Defendants argue that Plaintiffs are not entitled to additional discovery in light of Defendants' efforts at communication, the irrelevance of certain discovery sought with respect to the terms of the Settlement Agreement, and the impossibility of

5

performance. (R. Doc. 221 at 19-24). Finally, Defendants argue that LDH has acted in good faith and should not be held in contempt. (R. Doc. 221 at 24-25).

In reply, Plaintiffs argue that the COVID-19 pandemic is not a "fortuitous event" under Louisiana law that would relieve Defendants of their obligations under the Settlement Agreement and that Defendants have failed to provide information critical to assessing compliance with the Settlement Agreement. (R. Doc. 225).

## II.     Law and Analysis

### A.     Impossibility of Performance

As a preliminary issue, Defendants assert that Plaintiff's requests for post-judgment discovery should be denied because the COVID-19 pandemic constitutes a "fortuitous event that makes performance impossible" under Louisiana Civil Code article 1873. (R. Doc. 221 at 18-19, 23-24).

Consent decrees are construed according to "general principles of contract interpretation." *Frew v. Janek*, 780 F.3d 320, 327 (5th Cir. 2015). There is no dispute that Louisiana law applies to the interpretation of the Settlement Agreement. The Settlement Agreement does not contain a *force majeure* provision, so the Court will look to the relevant Louisiana law on impossibility of performance.

Under Louisiana law, "[a]n obligor is not liable for his failure to perform when it is caused by a fortuitous event that makes performance impossible. An obligor is, however, liable for his failure to perform when he has assumed the risk of such a fortuitous event." La. Civ. Code. Art. 1873. "A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen." La. Civ. Code Ann. art. 1875. Nevertheless, "[t]he nonperformance of a contract is not excused by a fortuitous event where it may be carried into

6

effect, although not in the manner contemplated by the obligor at the time the contract was entered into." *Payne v. Hurwitz*, 978 So. 2d 1000, 1005 (La. App. 1st Cir. 2008)(citing *Dallas Cooperage & Woodenware Co. v. Creston Hoop Co.*, 109 So. 844, 844 (1926)). "In other words, if the fortuitous event prevents the obligor from performing his obligation in the manner contemplated at the time of contracting, he must pursue reasonable alternatives to render performance in a different manner before he can take advantage of the defense of impossibility." *Id*. (citing *West v. Cent La. Limousine Serv., Inc.*, 856 So.2d 203,205 (La. App. 3rd Cir. 2003)). "An obligor is not released from his duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event." *Id*. (citing *Schenck v. Capri Constr. Co.*, 194 So.2d 378, 380 (La. App. 4th Cir. 1967).

In determining whether to allow post-judgment discovery, the Court need not reach the issue of whether the COVID-19 pandemic, and corresponding government shutdowns, was an unforeseen, fortuitous event that rendered Defendants' performance under the Settlement Agreement impossible. The issue before the Court is whether to allow Plaintiffs to conduct post-judgment discovery in light of Defendants' admitted failure to perform, not whether the COVID-19 pandemic excused such performance. Defendants have not sought modification of the terms of the Settlement Agreement, whether under Rule 60(b) or otherwise, in light of the COVID-19 pandemic.

The record indicates that the parties have been negotiating how to handle compliance with the Settlement Agreement in light of the COVID-19 pandemic for over a year. While Defendants' arguments regarding impossibility of performance may ultimately support modification of the Settlement Agreement, or provide a defense to a finding of contempt, they do not preclude a ruling requiring post-judgment discovery regarding Defendants' failure to

perform. Indeed, post-judgment discovery may bear on whether and to what extent Defendants' defense of impossibility of performance is merited if raised in an appropriate motion.

### B. Post-Judgment Discovery

A federal district court possess the power to enforce its judgments, including consent decrees. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 432 (2004) ("Federal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, that decree may be enforced."); *United States v. Alcoa, Inc.*, 533 F.3d 278, 286 (5th Cir. 2008) ("[D]istrict courts have the power and ordinarily must hold parties to the terms of a consent decree."). "The rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138 (2014).

A district court may enforce its judgments by allowing post-judgment discovery. *Caliste v. Cantrell*, No. 17-6197, 2020 WL 814860, at *3 (E.D. La. Feb. 19, 2020). Rule 69(a)(2) of the Federal Rules of Civil Procedure provides that "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2). "Post-judgment discovery serves as an important tool to monitor a party's compliance with the court's order." *Caliste*, 2020 WL 814860, at *3 (citing *Brumfield v. Dodd*, No. 71-1316, 2013 WL 360572, at *3 (E.D. La. Jan. 30, 2013)).

Notwithstanding Defendants' detailed explanations regarding the issues crated by the COVID-19 pandemic, there is no dispute that Defendants are not in compliance with Paragraphs 6, 8, 9, 15 of the Settlement Agreement. Allowing Plaintiff to conduct limited post-judgment discovery with respect to the bases for Defendants' non-compliance with the Settlement

Agreement would "aid [in] the judgment or execution" of the Settlement Agreement. Fed. R. Civ. P. 69(a)(2). Having considered the record, the Court finds that there is good cause to allow post-judgment discovery in light of Defendants' failure to comply with the Settlement Agreement. *See Caliste*, 2020 WL 814860, at *4 (finding "good cause" to allow post-judgment discovery under Rule 69(a)(2) where the plaintiffs sought to demonstrate that the defendant had violated the terms of a consent decree).

"While post-judgment discovery is broad, it is not without limits." *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 259 (5th Cir. 2019) (district judge did not abuse discretion in limiting post-judgment discovery in light of proportionality requirement of Rule 26(b)(1)). The Court will limit discovery to the purported non-compliance with Paragraphs 6, 8, 9, 15 of the Settlement Agreement in light of the COVID-19 pandemic and the reasons for such non-compliance. Such discovery is relevant to the issue of whether judicial enforcement or modification of the Settlement Agreement is warranted in light of the ongoing COVID-19 pandemic, and whether a finding of contempt is warranted in light of Defendants' non-compliance with the terms of Paragraphs 6, 8, 9, 15 of the Settlement Agreement. Plaintiffs are cautioned to narrowly draft their discovery requests and not seek information already provided by Defendants.

### C. Finding of Contempt

District courts have wide discretion in how to enforce consent decrees and implement remedies for their violation, including a finding of contempt for failing to meet deadlines set by the consent decree. *Alcoa*, 533 F.3d at 286.

"The movant in a civil contempt proceeding bears the burden of establishing by clear and convincing evidence: (1) that a court order was in effect; (2) that the order required certain

9

conduct by the respondent; and (3) that the respondent failed to comply with the court's order." *Petroleos Mexicanos v. Crawford Enters., Inc.*, 826 F.2d 392, 401 (5th Cir. 1987). Clear and convincing evidence is defined as the "weight of proof which 'produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts' of the case." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)). "When a party violates a court order without objecting to it, asking the court to modify or vacate it, or even informing the court why it cannot or will not obey it, the court may hold the party in contempt without first deciding whether the disobedience was justified." *Seven Arts Pictures, Inc. v. Jonesfilm*, 512 F. App'x 419, 422 (5th Cir. 2013)

    Having granted Plaintiffs' request to conduct post-judgment discovery, the Court will not reach the issue of whether Defendant should be held in contempt. "Instead of granting both requests at once, a more sensible approach is to allow discovery in order to determine whether a contempt finding is warranted." *Caliste*, 2020 WL 814860, at *5. A finding of contempt would be premature until more conclusive evidence emerges through post-judgment discovery. *Id.*; *see Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) ("The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous.") (citing *Int'l Longshoreman's Assoc. v. Phila. Marine Trade Assoc.*, 389 U.S. 64, 76, 88 (1967)). Nevertheless, the Court reserves the authority to issue a contempt finding in the event evidence emerges that a party "failed to comply with the court's order." *Petroleos*, 826 F.2d at 401.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Plaintiffs' Motion to Reopen Discovery and Rule to Show Cause Why Defendants Should Not be Held in Contempt (R. Doc. 217) is **GRANTED IN PART and DENIED IN PART**. The parties may conduct post-judgment discovery within the scope of Rule 26(b)(2) of the Federal Rules of Civil Procedure. All post-judgment discovery shall be completed by **December 1, 2021.** The parties are encouraged to continue the negotiation of a reasonable and appropriate modification of the Settlement Agreement in light of the COVID-19 pandemic. If warranted, Plaintiffs may renew their request to find Defendants in contempt after the close of post-judgment discovery.

Signed in Baton Rouge, Louisiana, on September 27, 2021.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**