UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| BRANDON COOPER, et al., | * |
| Plaintiffs | * CIVIL ACTION NO. 3:14-00507-SDD- RLB |
| v. | * JUDGE DICK |
| COURTNEY N. PHILLIPS, et al., | * MAGISTRATE JUDGE BOURGEOIS |
| Defendants | * |
| *Consolidated with* | * |
| ADVOCACY CENTER and MONICA JACKSON, | * |
| | * CIVIL ACTION NO. 3:15-00751-SDD-RLB |
| Plaintiffs | * |
| v. | * JUDGE DICK |
| | * MAGISTRATE JUDGE BOURGEOIS |
| COURTNEY N. PHILLIPS, et al., | * |
| Defendants. | * |

## SUPPLEMENTAL STIPULATED ORDER

I. Incorporation of Settlement Definitions ............................................................................ 2
II. Continued Reporting and Jurisdiction ............................................................................. 2
III. Alternative Behavioral Health Assessments .................................................................. 3
IV. Review and Modify Procedures at Eastern Louisiana Mental Health System (ELMHS) and Other Placements to Reduce the Patient Population .................................................. 5
V. Alternatives to ELMHS including the Expansion of Less Restrictive Placement Options such as Community-Based Settings ................................................................................ 8
VI. Resolution and Prevention of Waiting List Backlogs .................................................. 13
VII. COVID-19 Policies and Procedures ........................................................................... 15
VIII. Requests for Additional Information ........................................................................ 16
IX. Reporting Provision Deadlines .................................................................................... 16
X. Attorney Fees and Costs ............................................................................................... 17
XI. Miscellaneous .............................................................................................................. 18

The Parties agree that since March 2020, Defendants have been unable to substantially comply with the Settlement Agreement due to the effects of COVID-19. See Rec. Doc. 208. Therefore, considering the foregoing <u>Joint Motion for Entry of Supplemental Stipulated Order</u>, the <u>Joint Motion for Entry of Supplemental Stipulated Order</u> is hereby GRANTED such that this <u>Supplemental Stipulated Order</u> shall SUPPLEMENT the Settlement Agreement signed on November 16, 2016 (hereinafter "Settlement") (Rec. Doc. 200), and the Settlement remains in full force and effect until Defendants have maintained substantial compliance with the Settlement and Supplemental Stipulated Order for a period of two years pursuant to Paragraph 2 of this Supplemental Stipulated Order, except as MODIFIED below:

I. **Incorporation of Settlement Definitions**

1. All definitions provided in the Settlement remain the same and shall be incorporated into this Supplemental Stipulated Order. <u>Settlement</u>, Rec. Doc. 200, ¶ 3.

II. **Continued Reporting and Jurisdiction**

2. Under the Settlement, this Court would have retained jurisdiction to enforce the Settlement until this matter is dismissed after four (4) continuous years of Defendants' substantial compliance with the Settlement. <u>Settlement</u>, ¶ 50.

3. The Parties agree to amend the Settlement so that the Court's jurisdiction to enforce the Settlement and this Supplemental Stipulated Order shall continue until Defendants have maintained substantial compliance with the Settlement and Supplemental Stipulated Order for two (2) years. The two (2) years shall begin on the date the Parties agree that Defendants have reached substantial compliance with the Settlement and this Supplemental Stipulated Order. In order to reach substantial compliance:

   a. Defendants must demonstrate three consecutive months in which they have met the following goals: (1) no Incompetent Individuals or NGRI clients have waited longer than thirty days for transfer to ELMHS; (2) 90% of Incompetent Individuals or persons deemed NGRI are admitted to ELMHS within the applicable admission timeline under Paragraphs 8 or 9 of the Settlement (i.e., two (2) business days or fifteen (15) calendar days); and (3) 90% of Behavioral Health Assessments of Incompetent Individuals and NGRI occur within five (5) calendar days of receipt of an order for inpatient treatment or commitment—as required by Paragraph 6 of the Settlement.

4. Should the Parties be unable to agree after meeting in good faith to confer regarding whether the Defendants have achieved substantial compliance with all provisions of the Supplemental Stipulated Order and Settlement, Defendants may seek a declaration from the Court that Defendants attained substantial compliance and identifying the date on which the two (2) year period commenced.

5. The reporting provisions under the Settlement and this Supplemental Stipulated Order shall continue for the duration of the Court's jurisdiction to enforce the Settlement and this Supplemental Stipulated Order.

### III. Alternative Behavioral Health Assessments

6. The Parties agree to allow a limited exception to the in-person requirement for Behavioral Health Assessments (BHAs) through alternative virtual means in order to facilitate compliance with the timeframe under Paragraph 6 of the Settlement, in the event an in-person BHA cannot be conducted due to extenuating circumstances. See Settlement, ¶¶ 3(p), 6. Defendants shall develop and implement a statewide

contingency plan within forty-five (45) calendar days from the effective date of this Supplemental Stipulated Order to conduct BHAs using alternative virtual means that includes video-conferencing for jails that are capable of allowing virtual BHAs. Whenever LDH has an Incompetent Individual or person deemed NGRI ordered into its custody from a jail that is incapable of allowing virtual BHAs, LDH will contact the relevant Sheriff's Office and / or Court in a good-faith effort to arrange for that client's transport to a location with capability to conduct a virtual BHA. Defendants will use alternative virtual means to conduct BHAs only if, after reasonable efforts to safely conduct in-person BHAs, such assessments are not possible due to COVID-19 restriction(s) and only for the duration of the COVID-19 restriction(s) preventing in-person assessments. To this end, the contingency plan for BHAs shall, at a minimum, include all of the following:

a. A list of jails in Louisiana which have held an ELMHS patient in the last calendar year identifying the COVID-19 restriction(s), if any, that may prevent in-person BHAs. For each jail, the plan shall identify the nature of the restriction(s) and anticipated duration of the restriction(s). This list shall identify each of the listed jails ability for conducting BHAs by alternative virtual means and provide the dates on which Defendants obtained this information from the listed jails. If Defendants are unable to obtain information from a jail regarding its technological capabilities for conducting virtual BHAs despite a good faith and reasonable effort to contact the jail, Defendants shall provide the dates on which Defendants attempted to obtain this information, the name and title of jail staff Defendants contacted or attempted to contact, and the reason the information was not obtained. Defendants shall

    update the information in the contingency plan by contacting each jail at least every six months and on receipt of notice from any jail(s) with updated information. Updated lists shall describe all dates where Defendants offered and provided assistance to any jail pursuant to the procedures under Subparagraph (b), the type of assistance offered and provided, and the outcome of such assistance.

    b. A statement that after receipt of notice from a jail that COVID-19 restrictions are being implemented and thus preventing in-person BHAs, Defendants will implement virtual BHAs if the jail is capable.

    c. Defendants' counsel shall notify Plaintiffs' counsel of the names of any jails that have limited or no capability to allow virtual BHAs and the contact information of the jail staff or officials with whom Defendants have discussed these capabilities within sixty (60) calendar days of the effective date of this Supplemental Stipulated Order. If a jail notifies LDH or LDH learns of changes to a jail's procedure or capability, Defendants' counsel shall notify Plaintiffs' counsel within ten (10) calendar days of such notification.

7. Defendants shall continue to ensure employment of sufficient District Forensic Coordinators (DFCs) to staff each jail in order to comply with the timeline under Paragraph 6 of the Settlement and to execute the contingency plan described under Paragraph 6 of this Supplemental Stipulated Order.

## IV. Review and Modify Procedures at Eastern Louisiana Mental Health System (ELMHS) and Other Placements to Reduce the Patient Population

8. In order to achieve compliance with Defendants' existing obligations in Paragraphs 8–11 and 13 of the Settlement in light of the conditions and compliance issues related to COVID-19, Defendants will review and either modify or propose modifications to

relevant authorities to procedures to reduce the patient population at ELMHS and at any other placements for which LDH currently has a contract for NGRI or Incompetent Individuals. To this end:

a. Within one hundred and eighty (180) calendar days from the effective date of this Supplemental Stipulated Order, Defendants will complete a comprehensive review (culminating in the report described below) of intake, post-admission assessment, furlough, discharge, and conditional release and discharge procedures at ELMHS and at any other placements for which LDH holds a CEA Agreement.

b. These patient population reduction procedures shall include, at a minimum:

   i. processes for identifying, assessing, and releasing individuals who are clinically eligible for less restrictive placements or full discharge, including assessments based on mental condition or capacity, and dangerousness to self or others, and a regular process of auditing assessments and treatment plans and developing corrective action plans to address barriers to release.

   ii. furlough processes that may be used to facilitate the efficient release of individuals.

   iii. maintenance of a list of all NGRI, Incompetent Individuals, and individuals found unrestorably incompetent under La. Code Crim P. art. 648(B)(3) (or separate lists for each type of legal status) who are clinically eligible for outpatient or community-based treatment, or full discharge, including their legal status, outreach efforts to criminal justice and other stakeholders to facilitate release, wait times to access

        outpatient or community-based services, wait times to full discharge, reasons for any wait time prior to conditional or full discharge, and any reasons for why the individual was not placed or discharged despite being on this list.

      **iv.** a regular process of periodically reviewing procedures to continuously maximize the efficiency of procedures to reduce the patient population at ELMHS and at all other placements for NGRI or Incompetent Individuals.

c. In order to document this comprehensive review described in Subparagraph (b) and assess progress resulting from this review, Defendants shall provide a one-time report of this review to Plaintiffs within the timeframe in Subparagraph (a) (180 days) identifying each placement reviewed; describing the procedures reviewed at each placement; the method of review; date(s) of review; determinations regarding which procedures can and cannot be shortened, streamlined, or otherwise modified to maximize the efficiency of its existing operations to reduce the patient population, to ensure socially distant treatment, and to comply with all applicable statutory and other legal requirements; the reasons and data upon which such determinations are made; the steps (including whether additional research is needed) required to modify each procedure or propose such modification(s) to relevant authorities; and a reasonable timeline to modify each procedure or propose such modification(s) to relevant authorities.

d. Defendants shall conduct subsequent reviews on an annual basis and attest to Plaintiffs that such reviews have been completed. Defendants will produce to

7

Plaintiffs a document enumerating the procedures that they will follow in conducting their annual reviews, but Defendants will not be required to produce the report discussed in the preceding paragraph on an annual basis. Defendants will provide to Plaintiffs an annual attestation that the review has been completed. Plaintiffs may request documentation produced in the course of the annual reviews pursuant to the provisions of Section VIII "Requests for Additional Information" of this supplemental agreement.

V. **Alternatives to ELMHS including the Expansion of Less Restrictive Placement Options such as Community-Based Settings**

10. In light of the conditions and compliance issues related to COVID-19, Defendants agree to establish a work group with stakeholders, for the purpose of reviewing prior recommendations, creating new recommendations, and exploring Local Governing Entity (LGE) involvement for possible community bed options for NGRI Individuals and possible community bed restoration options for Incompetent Individuals, with appropriate permission from the criminal court, to receive clinically appropriate competency restoration and/or mental health treatment. The Parties will discuss potential process recommendations to address needs or issues brought forth by this work group. The Parties acknowledge that any potential plan is subject to the necessary court approval as to the NGRI and Incompetent Individuals and implementation of any plan is subject to budgetary appropriation from the Louisiana Legislature. The initial work group meeting will take place within one hundred twenty (120) calendar days from the effective date of this Supplemental Stipulated Order. A plan (hereinafter "stakeholder plan") based on a one (1) year schedule shall be developed by Defendants and provided to Plaintiffs and their counsel within thirty (30) calendar days of the initial

work-group meeting and shall include anticipated outcomes and target timelines for quarterly intervals throughout the year.

11. The initial meeting with a stakeholders work group convened by Defendants within 120 days from the effective date of this Supplemental Order that shall focus on obtaining stakeholder input for the development of the initial one (1) year plan. Thereafter, Defendants shall convene meetings with the stakeholders work group at quarterly intervals, or on a more frequent or less frequent basis as needed, throughout the year beginning from the date of implementation of the plan or subsequent plan(s). On the agreement of the stakeholders work group, additional meetings may be convened, or the work group can agree that a quarterly interval meeting is not necessary.

12. Stakeholders include individuals who are involved with or who have direct experience in or expertise in the criminal justice system, public health, and forensic and broader mental health system. This work group shall include the following stakeholders: CEO of ELMHS or a designee, the Assistant Secretary of Office of Behavioral Health (OBH) or a designee, LDH Legal, Disability Rights Louisiana (DRLA), the state judiciary, District Attorneys, and Public Defenders. Additional stakeholders may be included as needed. Stakeholders for the original workgroup will be identified by name, title, and purpose prior to the commencement of the first stakeholder meeting. Any individual sought to be added as a stakeholder after the first meeting takes place shall be upon the mutual agreement of the Parties. Any additional stakeholders to be added shall be identified by name and purpose at least five (5) business days before any subsequent meeting.

13. Defendants shall be responsible for maintaining documentation related to these work group meetings including preparing and circulating agendas, if needed, compiling attendance lists, and documenting themes, recommendations, and discussions for each work group meeting.

15. The agenda(s) for the work group may include the following:

    a. Strategies for identifying and developing less restrictive alternatives to ELMHS with the purpose of expanding community placement options.

    b. Identification and assessment of current placement options, including documentation of COVID-19 policies and procedures, testing and infection data, availability, capacity, vaccination and booster data, and other issues related to moving individuals into less restrictive placements. LDH will develop policies and procedures to continually update and assess such information on a regular basis and address issues related to moving individuals into less restrictive placements.

    c. Identification of strategies to reduce or eliminate barriers to expanding less restrictive options for restoration and NGRI populations such as changes that require legislative proposals, additional research and analysis, and/or outreach procedures to relevant entities, including:

        i. Funding and statutory changes to implement an expansion of community-based treatment options including outpatient competency restoration and other mental health treatment services.

        ii. Procedures to facilitate the placement of Incompetent Individuals in outpatient competency restoration services, including:

1. A system for determining in a timely manner when a criminal court orders a mental examination under La. Code Crim. P. art. 643.

2. A system requiring DFCs or their representatives to inform the criminal court about an individual's potential eligibility for outpatient competency restoration services, and the availability of such services.

3. A system for tracking and monitoring an individual's progress through the outpatient competency restoration service, and providing periodic updates to the criminal court through the DFC.

4. A timetable for providing DFCs with training, approved by Plaintiffs' counsel on the terms of the Supplemental Stipulated Order.

5. A system for monitoring the performance of DFCs in implementing the terms of the Supplemental Stipulated Order.

iii. Funding and developing supportive housing opportunities with appropriate mental health services for NGRI and Incompetent Individuals in locations throughout Louisiana, which shall include, but shall not be limited to, New Orleans, Baton Rouge, Lafayette, Lake Charles, and Shreveport, including increasing community-based beds.

iv. A system for requiring outpatient or community-based service providers, through contractual means with Defendants, to accept referrals from ELMHS in accordance with the individual's eligibility based on ELMHS'

        clinical assessments and wait list tracking as developed under Section IV of this Supplemental Stipulated Order.

   v. Funding and securing beds at other Mental Health Facilities besides ELMHS, including private hospitals, by an amount necessary to accommodate the placement of individuals who need hospital-level care within the timeframes established in Paragraphs 8–10 of the Settlement and in light of quarantining procedures and social-distancing needs.

   vi. Providing technical assistance to criminal courts and other stakeholders to support the implementation of outpatient competency restoration services and community-based mental health treatment services, such as:

      1. Determining eligibility for outpatient competency restoration services and community-based mental health treatment services.

      2. The conditions for and availability of outpatient competency restoration services and community-based mental health treatment services.

d. Throughout the implementation period of the plan or any subsequent plan(s), Plaintiffs' counsel may request, with sufficient advance notice, that Defendants provide additional information specific to the plan only, and specifically regarding implementation of those activities identified within the plan. . Any disagreements under this Subparagraph shall be subject to Paragraph 18 of the Settlement.

e. Within thirty (30) calendar days of finalizing the plan between the Parties, its schedule, any supplements, or any subsequent plans, Defendants' counsel shall file such document(s) into the record for this case. Defendants shall implement the

provisions of the plan, supplements, and any subsequent plans developed in accordance with this provision of the Supplemental Stipulated Order within a reasonable timeframe.

## VI. Resolution and Prevention of Waiting List Backlogs

16. Defendants will take steps to immediately resolve the current backlog and prevent future backlogs for the waiting list of NGRI and Incompetent Individuals awaiting transfer to ELMHS or other Mental Health Facility, or to an appropriate community-based program. Such steps include facilitating the provision of non-jail based treatment alternatives to ELMHS and / or release of individuals on the waiting list, which include but are not limited to, contacting relevant parties to the criminal proceedings and other relevant entities to discuss the need for and possibility of modifying court orders or other action(s).

17. To monitor Defendants' efforts at compliance in light of conditions related to COVID-19, Defendants shall report the following information with the reports under Section IX of this Supplemental Stipulated Order:

    a. Rates of admission during the reporting period.

    b. Bed availability during the reporting period.

    c. Estimated date of substantial compliance with admission timelines under Paragraphs 8–10 of the Settlement.

    d. Total number of individuals on the waiting list and total number of individuals removed from the waiting list for the relevant reporting period.

    e. Each individual's place on the waiting list with the anticipated date of admission, name, date of birth, client ID, parish jail (or other facility) where held.

f.  The criminal charge(s) for each individual on the waiting list including the title of the charge(s), statutory provision(s), and whether each charge is a misdemeanor or felony.

g.  The date of the Order.

h.  The date Defendants were notified of the Order.

i.  The name of the court-ordered placement.

j.  The date(s) of all BHAs, results of all BHAs including but not limited to all BPRS score(s), date(s) of all physician consult(s), and type of admit (i.e., 15 days or 2 days). LDH will note in its monthly reporting whenever a jail is closed to DFCs such that they could not perform BHAs in-person.

k.  The date(s) and result(s) of any and all COVID-19 tests, the entity administering the test, and the date(s) the Defendants were notified of each testing result.

l.  COVID-19 vaccination status of the individual, date(s) of vaccine administration, and entity administering the vaccine.

m.  The potential family or other community supports available to each individual on the waiting list if released from jail or ELMHS custody, as may be reported to ELMHS by the individual or a third party.

n.  For each individual on the waiting list, an account of Defendants' progress in removing that individual from the waiting list including Defendants' efforts, the outcome, relevant dates, and any discrepancies between the Defendants' recommendation and the court's order for an individual's placement as required under Paragraph 11 of the Settlement.

    o. The same information will be provided for individuals who have been removed from the waiting list during the relevant reporting period except that the date of removal from the waiting list will be included instead of the place on the waiting list and anticipated date of admission, and the name of the placement where each individual was admitted or other reason(s) for removal from the waiting list will be included instead of the name of the court-ordered placement.

**VII. COVID-19 Policies and Procedures**

18. ELMHS will follow all recommended protocols through the guidance from the Louisiana Office of Public Health (OPH) and the Centers for Disease Control and Prevention (CDC) for congregate settings.

19. Defendants' counsel will inform Plaintiffs' counsel about any known prospective changes and / or implemented changes relating to COVID-19 that would affect admission or discharge procedures for ELMHS for NGRI or Incompetent Individuals within one (1) business day of Defendants' counsel receiving information that a change is likely expected or that a change was implemented, whichever is sooner.

20. Each week, Defendants' counsel will provide Plaintiffs' counsel with the following information: ELMHS' COVID-19 patient status, hospitalizations, and deaths.

21. Defendants' counsel will provide this weekly reporting under Paragraph 20 to Plaintiffs' counsel beginning on the first Friday following the effective date of this Supplemental Stipulated Order and for the duration of this Court's jurisdiction over the Settlement and this Supplemental Stipulated Order.

22. Defendants' counsel shall also inform Plaintiffs' counsel about ELMHS' current COVID-19 testing, vaccination, and booster policies, and testing schedules for staff

and patients within ten (10) business days of the effective date of this Supplemental Stipulated Order and update Plaintiffs' counsel on any changes to these policies and schedules within five (5) business days of the change for the duration of this Court's jurisdiction over the Settlement and this Supplemental Stipulated Order.

**VIII.   Requests for Additional Information**

23. Plaintiffs' counsel may make reasonable requests for additional information or documents to verify compliance with the Settlement Agreement and this Supplemental Stipulated Order. Defendants will provide responsive information within a reasonable timeframe. However, Defendants may object to disclosing any information or documents pursuant to a request. In case of an objection, the Parties shall meet and confer to try to resolve the issue in good faith. If the Parties cannot come to a resolution, Plaintiffs and their counsel may utilize the procedure under Paragraph 18 of the Settlement.

**IX.    Reporting Provision Deadlines**

24. Paragraph 17 of the Settlement requires Defendants to submit a report to Plaintiffs' counsel on the first working day of each month beginning November 1, 2016. Settlement, ¶ 17. This deadline shall be modified as follows: Defendants' counsel will submit the report described under Paragraph 17 of the Settlement by the 15th of each month.

25. Defendants' counsel will provide the current waiting list, used in the course of ELMHS' normal business practice, to Plaintiffs' counsel on the first working day of each month beginning on the month following the effective date of this Supplemental

Stipulated Order. Defendants' counsel shall also provide the current waiting list upon request from Plaintiffs' counsel.

## X. Attorney Fees and Costs

26. Under Section V, and in particular, Paragraphs 22–23 and 38–39 of the Settlement, the Parties agree that Plaintiffs are entitled to recover attorneys' fees and costs for work performed in obtaining Defendants' compliance with the Settlement. Within thirty (30) calendar days of entry of this Supplemental Stipulated Order, Plaintiffs' counsel will provide Defendants' counsel with an itemized accounting of attorneys' fees and costs, including appropriate documentation supporting the accounting, incurred in connection with obtaining Defendants' compliance with the Settlement. Within thirty (30) calendar days of receipt of the itemized accounting, Defendants' counsel will provide a response to Plaintiffs' counsel as to any itemized fee or cost with which it does not agree. If necessary, the Parties may conduct a telephone status conference to discuss any disputes over the itemized fees or costs. If an agreement cannot be reached between the Parties as to any claims for fees or costs, Plaintiffs' counsel may seek relief from the Court pursuant to Paragraphs 40–41 of the Settlement. Any payment of attorneys' fees will be inclusive of all attorneys' fees and costs incurred from March 11, 2020, up to and including the effective date of this Supplemental Stipulated Order.

27. Pursuant to Paragraphs 44–45 of the Settlement, the Parties have agreed to a maximum amount of attorneys' fees and costs that may be awarded during the course of litigation. The total amount of attorneys' fees that may be awarded in this case after final approval of the prior Settlement and satisfaction of the initial claim for attorneys' fees shall not exceed $300,000.

## XI. Miscellaneous

28. The enforcement procedure under Paragraph 18 of the Settlement applies to this Supplemental Stipulated Order.

29. Any and all provisions of the Settlement that are not inconsistent with the language of this Supplemental Stipulated Order remain in effect.

30. This Supplemental Stipulated Order becomes effective on the date it is signed by all Parties.

SO ORDERED this ___2nd___ day of ___May___, 2023, in Baton Rouge, Louisiana.

SHELLY D. DICK
UNITED STATES DISTRICT JUDGE

Approved:

*/s/ J. Dalton Courson*

J. Dalton Courson, Bar No. 28542
Ronald K. Lospennato, Bar No. 32191
Disability Rights Louisiana (formerly the Advocacy Center)
8325 Oak Street
New Orleans, LA 70118
Ph: 504-208-4679
Fax: 504-335-2890
dcourson@disabilityrightsla.org
rlospennato@disabilityrightsla.org

/s/ Eric Foley

Eric Foley, Bar No. 34199
Elizabeth Cumming, Bar No. 31685
Roderick & Solange MacArthur Justice Center
4400 S. Carrollton Ave.,
New Orleans, LA 70119
Ph: 504-620-2259
Fax: 504-208-2259
Eric.Foley@macarthurjustice.org
Elizabeth.Cumming@macarthurjustice.org

Dated: April 26, 2023


Approved:


/s/ Jenna G. Young
Jenna G. Young, Bar No. 25942
Kimberly Sullivan, Bar No. 27540
Krystal A. Brown, Bar No. 31593
Louisiana Department of Health
Bureau of Legal Services
628 North 4th Street (70802)
P.O. Box 3836
Baton Rouge, LA 70821-3836
Ph: 225-342-1128
Fax: 225-342-2232

Dated: April 26, 2023